FILED IN CLERK'S OFFICE
U S D C  Atlanta

JUN 24 2008

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**VERONZA L. BOWERS, JR.,**

      **Petitioner,**

  **v.**

**LOREN GRAYER, WARDEN,**

      **Respondent.**

No.

MEMORANDUM OF LAW IN
SUPPORT OF PETITION FOR A
WRIT OF HABEAS CORPUS

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR A WRIT OF HABEAS CORPUS

A. Stephens Clay
Georgia Bar No. 129400
C. Allen Garrett, Jr.
Georgia Bar No. 286335
KILPATRICK STOCKTON LLP
1100 Peachtree Street; Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*Pro hac vice* applications to be
submitted for:

Bryan Gaynor
(California SBN 47875)
1160 G Street, Suite A
Arcata, California 95521
Telephone: (707) 826-8544
Facsimile: (707) 826-8545

Charles D. Weisselberg
(California SBN 105015)
University of California, Berkeley
School of Law
Berkeley, CA 94720-7200
Telephone: (510) 643-8159
Facsimile: (510) 642-3856

Thomas W. Stoever, Jr.
Arnold & Porter LLP
(Colorado Bar No. 25434)
370 Seventeenth Street, Suite 4500
Denver, CO 80202
Telephone: 303-863-2328
Facsimile: 303-832-0428

Theodore D. Frank
Arnold & Porter LLP
(D.C. Bar No. 23903)
555 12th Street, N.W.
Washington, D.C. 20004
Telephone: 202-942-5790
Facsimile: 202-942-5999

*Attorneys for Petitioner VERONZA L. BOWERS, JR*

## TABLE OF CONTENTS

I.    HABEAS CORPUS RELIEF MUST BE GRANTED WHERE THE
      PAROLE COMMISSION'S ACTIONS ARE ARBITRARY AND
      CAPRICIOUS, INCONSISTENT WITH THE PAROLE ACT AND ITS
      REGULATIONS, OR OTHERWISE VIOLATE THE DUE PROCESS
      CLAUSE .................................................................................................... 1

II.   THE COMMISSION ACTED UNLAWFULLY BY FAILING TO
      RELEASE MR. BOWERS ON MANDATORY PAROLE IN FEBRUARY
      AND JUNE 2005 ................................................................ ............ 6

      A.    The Commission Improperly Reopened Mr. Bowers' Case In
            February 2005 ..................................................................................... 6

            1.    The Commission Violated Section 2.28(f) of its Rules
                  When it Reopened the Case Without Having Received
                  Any New and Significant Information................... ................... 7

            2.    By Reopening Mr. Bowers' Parole, The Commission
                  Violated the Remand Order and the Due Process Clause........ 12

      B.    The Commission's Consideration of the Attorney General's
            "Request for Review" Was Unlawful ................................................ 17

            1.    There Was No Authority for the Commission to Consider
                  the Attorney General's June 2005 "Request for Review" ....... 17

                  a)    There was no statutory authority for the Attorney
                        General's "Request for Review" .................................... 19

                  b)    There was no regulatory authority for the Attorney
                        General's "Request for Review" .................................... 25

            2.    The Attorney General's "Request for Review" Was
                  Devoid of Substance ................................................................ 28

US2000 10908409 ;

III.  IN RESCINDING MR. BOWERS' PAROLE, THE COMMISSION
      FAILED TO ACT AS A NEUTRAL DECISION-MAKER, IMPROPERLY
      EXPANDED THE SCOPE OF THE PROCEEDING, AND MADE
      ARBITRARY AND RESULT-ORIENTED DECISIONS .......................... 31

      A.  Commissioner Spagnoli's Actions Tainted the Commission's
          Decision-Making Process and Produced a Decision Improperly
          Affected by Political Pressure ............................................ 32

          1.  Commissioner Spagnoli Lacked Any Semblance of
              Impartiality ....... ................................. ................. ..... 32

          2.  Commissioner Spagnoli's Bias Tainted the Entire
              Proceeding .............................................................. 40

      B.  The Commission improperly converted a special
          reconsideration appeal into a de novo proceeding ......................... .... 42

      C.  The Commission Denied Mr. Bowers' Rights to a Fair and
          Unbiased Hearing Devoid of Political Influence ............................... 48

          1.  The Commission's Acted in Response to Political
              Pressure .................................................................... 49

          2.  Denying Mr. Bowers' Parole Was Result-Oriented and
              Unsupportable On the Record.................................... 55

              a)    Likelihood of Committing A Crime .............................. 58

              b)    Serious Violation of Prison Rules.................................. 65

IV.   THE COURT SHOULD GRANT THE PETITION FOR A WRIT OF
      HABEAS CORPUS AND ORDER MR. BOWERS RELEASED ON
      MANDATORY PAROLE ........................................................... 70

      A.  Ordering Mr. Bowers' Release on Parole Will Restore Him to
          his Status Before the Commission Unlawfully Rescinded His
          Parole ................................................................................ 70

US2000 19908409 1

B.    Ordering Mr. Bowers' Release Is the Only Adequate Remedy In Light of the Commission's Actions in This Case ........................... 73

V.    CONCLUSION ............................................................................................ 76

US2000 10908409 *

## Table of Authorities

*Aetna Life Insurance Co v. Lavoie,*
    475 U.S. 813 (1986)............................................................................................ 42

*Atchison, Topeka & Santa Fe R R. v Wichita Board of Trade,*
    412 U.S. 800 (1973)............................................................................................ 68

*Barnhart v Sigmon Coal Co ,*
    534 U.S. 438 (2002)............................................................................................ 21

*Beck v Ohio,*
    379 U.S. 89 (1964)............................................................................................. 15

*Berkshire Employees Ass'n of Berkshire Knitting Mills v NRLB,*
    121 F.2d 235 (3rd Cir. 1941) ............................................................................ 42

*Billiteri v. United States Board of Parole,*
    541 F.2d 938 (2d Cir. 1976)............................................................................... 74

*Board of Pardons v Allen,*
    482 U.S. 369, 374 (1987)................................................................................. 4, 5

*Bono v. Benov,*
    197 F.3d 409 (9th Cir. 1999) ............................................................. 11,72,73,75

*Boumediene v. Bush,*
    2008 U.S. LEXIS 4887 (U.S. June 12, 2008)................................................... 47

*Bowers v. U S. Parole Comm'n,*
    1993 U.S. App. LEXIS 17097 (9th Cir. 1993) .................................................. 37

*Bowers v U S Parole Comm'n,*
    Case No. 5:01-cv-429-Oc-10GRJ (M.D. Fla. July 28, 2003)............................. 3

*Bush v Gore,*
    531 U.S. 98 (2000)................... ...................... ............................................... 49

US2000 10508409 1

*Butler-Johnson Corp. v. NLRB*
  608 F.2d 1303 (9th Cir. 1979)............................................................................ 61

*Carlin v  Wong,*
  ___ F. Supp. 2d ___, 2008 WL 728891 (N D. Cal. 2008)................................. 65

*Chaney Creek Coal Corp. v  Federal Mine Safety & Health Review*
  *Comm'n,*
  866 F.2d 1424 (D.C. Cir. 1989)......................................................................... 61

*Cinderella Career & Finishing Schools, Inc  v  FTC,*
  425 F.2d 583 (D.C. Cir. 1970)........................................................................... 42

*Commodity Futures Trading Comm'n v. Schor,*
  478 U.S. 833 (1986)............................................................................................ 27

*Dare v  U S. Parole Comm'n,*
  212 Fed. Appx. 144 (3d Cir. 2007)............................................. ....................... . 67

*D B  v. Lawson,*
  354 F.3d 315 (4th Cir. 2004) ............................................................................. 65

*Devenpeck v  Alford,*
  543 U.S. 146 (2004)........................................................................................... 14

*Disimone v. Browner,*
  121 F.3d 1264 (9th Cir. 1997) ........................................................................... 13

*Drayton v  McCall,*
  584 F.2d 1208 (2d Cir. 1978)............................................................................... 4

*Dye v  U S. Parole Comm'n,*
  558 F.2d 1376 (10th Cir. 1977) ............ ..................................................... 35, 58

*Fagan v  Washington,*
  942 F.2d 1155 (7th Cir. 1991) .............. ................... ....................................... 72

US2000 10908409 1

*Fardella v. Garrison,*
   698 F.2d 208 (4th Cir. 1982) .............. ............................................ 44

*Farnsworth v Edwards,*
   947 F.2d 948, 1991 WL 218007 (7th Cir. 1991) ............................................. 67

*Flores v. Stock,*
   715 F.Supp. 1468 (C.D. Cal. 1989) ............................................................ 61, 65

*Galante v  U S. Parole Comm'n,*
   466 F.Supp. 1266 (S.D.N.Y. 1979) .... ...................................................... 10, 16

*Gambino v  Morris,*
   134 F.3d 156 (3rd Cir. 1998) ...................................................................... 64

*Glumb v  Honsted,*
   891 F.2d 872 (11th Cir. 1990) ...................................................... 3, 75

*Greater Boston Television Corp. v  FCC,*
   444 F.2d 841 (D.C. Cir. 1971)...................................................................... 68

*Green v  McCall,*
   822 F.2d 284 (2d Cir. 1987)...................................  ............................ 4, 14, 15, 47

*Greenholtz v  Inmates of Neb  Penal  & Corr  Complex,*
   442 U.S. 1 (1979)...................................................................... .... 4

*Gutierrez de Martinez v  Lamagno,*
   515 U.S. 417 (1995)...................................................................... 55

*Hamdi v  Rumsfeld,*
   542 U.S. 507 (2004)...................................................  ............ 15

*Hampton v  Hanrahan,*
   600 F.2d 600 (7th Cir. 1979), 446 U.S. 754 (1980) ........................................ 59

US2000 10983469 1

*Hewitt v. Helms*,
   459 U.S. 460 (1983)........................................................................................... 4

*Hobson v. Wilson*,
   737 F.2d 1 (D.C. Cir. 1984)............................................. .................................. 59

*Hortonville Joint School Dist. v Hortonville Educ. Assoc.*,
   426 U.S. 482 (1976)........................................................................................... 39

*In re Application of Gault*,
   387 U.S. 1 (1967)............................................................................................... 58

*Jones v FBI*,
   41 F.3d 238 (6th Cir. 1994) .............................................................................. 59

*Kastigar v United States*,
   406 U.S. 441 (1972)........................................................................................... 76

*Kentucky Department of Corrections v Thompson*,
   490 U.S. 454 (1989)............................................................................ ............... 5

*King v. Warden, United States Penitentiary*
   551 F.2d 996, 999 (5th Cir. 1977)..................................................................... 22

*Lanier v Fair*,
   876 F.2d 243 (1st. Cir. 1989)............................................................................. 4

*Mars v. Mounts*,
   895 F.2d 1348 (11th Cir. 1990) ........................................................................ 72

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)............ ........ ..................................................................... 14

*McCallum v. Reilly*,
   2007 U.S. Dist. LEXIS 62824 (N.D. W.Va. Aug. 4, 2007) ........................ 36, 40

US2000 10908408 1

*McCallum v. Reilly,*
  2007 U.S. Dist. LEXIS 55157 (N.D. W.Va. July 27, 2007)............................. 39

*McGill v. Reilly,*
  2008 U.S. Dist. LEXIS 27561 (N.D. W.Va. Apr. 4, 2008) ................................. 3

*Miller v. Johnson,*
  515 U.S. 900 (1995) ..................................................................................... ........ 6

*Minnesota ex rel Pearson v Probate Court of Ramsey Cty ,*
  309 U.S. 270 (1940) ........................................................................................... 15

*Misasi v U S Parole Comm'n,*
  835 F.2d 754 (10th Cir. 1987) ......................................................................... 65

*More v Ross,*
  687 F.2d 604 (2nd Cir. 1982)........................................................................... 61

*Morgan v Illinois,*
  504 U.S. 719 (1992)......................................................................................... 41

*In re Murichison,*
  349 U.S. 133 (1955)............................................................................ 30, 32, 39

*NEC Corp v. United States,*
  151 F.3d 1361 (Fed. Cir. 1998)........................................................................ 39

*NLRB v Goya Foods of Florida,*
  525 F.3d 1117 (11th Cir. 2008) .................................................................. 27, 65

*NLRB v United Food and Commercial Workers Union,*
  484 U.S. 112 (1987)..................................................... ......... ....................... 6

*Nunes v Mueller,*
  350 F.3d 1045 (9th Cir. 2003) ..................................................................... 16, 71

*O'Bremski v. Maass,*
915 F.2d 418 (9th Cir. 1990), *cert. denied,* 489 U.S. 1096 (1991) ................... 32

*Olin v. Wakinekona,*
461 U.S. 283 at 249 (1983)................................................. ................................... 5

*Parker v. Bowen,*
788 F.2d 1512 (11th Cir. 1986) .................................................. 61, 65

*Parness v. U.S. Parole Comm'n,*
488 F.Supp. 102 (S.D.N.Y. 1980)..... .................................... 10, 73, 75

*Penasquitos Village, Inc. v. NLRB,*
565 F.2d 1074 (9th Cir. 1977) ....... .................................................. 61

*Peters v. Hobby,*
345 U.S. at 336-37 (1955)................................................................. 23

*Pillsbury Co. v. Federal Trade Comm'n,*
354, F.2d 952 (5th Cir. 1966) ........................................... 55

*Pope v. U.S. Parole Comm'n,*
647 F.2d 125 (10th Cir. 1981) ........................................... 22

*Ready v. U.S. Parole Comm'n,*
483 F. Supp. 1273 (M.D. Pa. 1980)................................. 44

*Russello v. United States,*
464 U.S. 16 (1983).......................................................... 21

*Rust v. Sullivan,*
500 U.S. 173 (1991)....... ..................... ............. . ............................... 6

*Schiselman v. U.S. Parole Comm'n,*
858 F.2d 1232 (7th Cir. 1988) ........................................... 12

US2900 10968409 1

*Schiselman v U S. Parole Comm'n,*
    1238-9  (2d Cir. 1981).................................................................................. 44, 46

*Service v  Dulles,*
    354 U.S. 363 (1957)......................................................................................... 24

*Singer v  Court of Common Pleas,*
    879 F.2d 1203 (3d Cir. 1989)........................................................................... 72

*Southern Pac. Commc'ns v  American Tel. & Tel. Co ,*
    740 F.2d 980 (D.C. Cir. 1984).......................................................................... 39

*Stivers v  Pierce,*
    71 F.3d 732 (9th Cir. 1995) ............................................................................. 41

*Stroud v. U.S Parole Comm'n,*
    668 F.2d 843 (5th Cir. 1982) ............................................................................. 3

*Sullivan v. Hudson,*
    490 U.S. 877 (1989).......................................................................................... 13

*United States ex rel  Accardi v  Shaughessy,*
    347 U.S. 260 (1954).................... ................................................. ......... 50, 54

*United States v  Bowers,*
    534 F.2d at 188 (1976) ..................................................................................... 59

*United States v. Morgan,*
    313 U.S. 409 (1941).......................................................................................... 39

*United States v  Witkovich,*
    353 U.S. 194 (1957).................................................................... .............. ................ 6

*United States v. Wong Kim Bo,*
    472 F.2d 720 (5th Cir. 1972) ........................................................................... 21

US2900 1090%409 1

*Wallace v. Christensen,*
    802 F.2d 1539 (9th Cir. 1986) ........................................................................ 75

*Ward v Village of Monroeville,*
    409 U.S. 57 (1972)...... ................................................................................... 30

*Withrow v Larkin,*
    421 U.S. 35 (1975)........................................... ............................................. 30, 32

*Wolff v. McDonnell,*
    418 U.S. 539 (1974)........................................................................................ 13, 48

*Young v. U S. Parole Comm'n,*
    682 F.2d 1105 (5th Cir. 1982) ......................................................................... 3

*Yuanliang Liu v United States DOJ,*
    455 F.3d 106 (2d Cir. 2006)............................................................................. 49

*Zadvydas v. Davis,*
    533 U.S. 678 (2001)........................................... ........................................... 6

*Zannino v Arnold,*
    531 F.2d 687 (3d Cir. 1976)... ........................................................................ 3, 64, 65

## FEDERAL STATUTES

28 C.F.R. § 2.17 ........................................................... ............................... passim

28 C.F.R. § 2.20 ............................................................................................... 2

28 C.F.R. § 2.22 ............................................................................................... 35

28 C.F.R. § 2.26 ............................................................................................... passim

28 C.F.R. § 2.28 ............................................................................................... passim

28 C.F.R. § 2.54 ............................................... ........................................... 25

US2005 10908409 1

61 Fed. Reg. 13763 (Mar. 28, 1996).........................................................................26

5 U.S.C. § 552a(b)(1)........................ .......................................................35

18 U.S.C. § 4202 ........................................................................ .........50

18 U.S.C. § 4203(b)(3).............................................................................7

18 U.S.C. § 4206 ...................................................................... passim

18 U.S.C. § 4215 ...................................................................... passim

28 U.S.C. § 2241 ...................................................................... 2

28 U.S.C. § 2243 ......................................................................71

H. Rep. 94-648 (1976) ...........................................................................49

H. Rep. No 94-184, 94th Cong., 1st Sess.(1975)............................................ 18,21,50

S. Rep. No. 94-369, 94th Cong., 1st Sess.(1975) .............................................. 18, 50

S. Rep. No. 94-648, 94th Cong., 2d Sess. 21 (1976).......... ............................ ...... 21

US2000 10998409.1

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR A WRIT OF HABEAS CORPUS

**I.   HABEAS CORPUS RELIEF MUST BE GRANTED WHERE THE PAROLE COMMISSION'S ACTIONS ARE ARBITRARY AND CAPRICIOUS, INCONSISTENT WITH THE PAROLE ACT AND ITS REGULATIONS, OR OTHERWISE VIOLATE THE DUE PROCESS CLAUSE**

Notwithstanding Mr. Bowers' outstanding institutional record and the requirements of the Parole Commission and Reorganization Act ("Parole Act"), it took a court order to force the U.S. Parole Commission even to consider Mr. Bowers for release on mandatory parole. After the Commission was ordered to consider Mr. Bowers for release, the Commission put him through protracted proceedings in which every parole hearing examiner made favorable findings and recommended his release. As a result of these findings and others in the agency's record, Mr. Bowers was twice granted parole by the Commission. But his hopes for released were smashed when the Commission twice retarded his release and reopened his case. As subsequent and belated disclosures have revealed, Mr. Bowers was denied parole because of the unlawful actions of Commissioner Deborah A. Spagnoli and because the agency was unable to resist pressure from the Attorney General of the United States.

The Petition for a Writ of Habeas Corpus and Exhibits show that, Commissioner Spagnoli was determined to deny Mr. Bowers parole, using whatever means were available to achieve that result.  Inserting herself into a parole matter assigned to another Commissioner, she used the Commission's processes to delay Mr. Bowers' release and, when that did not succeed, she solicited the intervention of the Attorney General.  Pushed by Commissioner Spagnoli and pressured by former Attorney General Alberto Gonzales, the Commission ultimately bowed to that pressure when it overturned its two previous grants of mandatory parole, and then searched for reasons to justify its arbitrary decision.  In so doing, the Commission ignored the record, violated its governing statute, its own regulations, and the District Court's Order mandating further proceedings ("Remand Order"), as well as Mr. Bowers' due process right to an unbiased decision based on the record and the law, without political interference. Each of these violations, standing alone, is a ground for habeas corpus relief under 28 U.S.C. § 2241.  Each requires this Court to grant the petition for writ of habeas corpus and order Mr. Bowers released on mandatory parole.

Habeas corpus relief is appropriate where the Parole Commission has exceeded its statutory or regulatory authority, acted arbitrarily or capriciously, or

2

violated the Due Process Clause.[1]  A Court must reverse if the Commission

engaged in "flagrant, unwarranted, or unauthorized action that constitute[] an

abuse of the Commission's discretion."[2]  As the District Court held in connection

with Mr. Bowers' previous habeas corpus petition, "[a]n action of the Commission

is arbitrary and capricious, or an abuse of discretion, when it is irrational, based

upon impermissible considerations, or when it fails to comply with the

Commission's own rules and regulations." Exhibit 19 at 5(*Bowers v. U S  Parole

Comm'n* , Case No. 5:01-cv-429-Oc-10GRJ, at 5 (M.D. Fla. July 28, 2003)

(citation omitted)).[3]

A critical feature of this case is that Mr  Bowers was twice granted

mandatory parole release dates.  Thus, as distinguished from most parole-related

habeas corpus petitions which involve decisions not to grant discretionary parole,

this case involves a challenge to Commission decisions *rescinding* grants of

*mandatory* parole.  These are both vital distinctions.  For, unlike a prisoner who

merely nurses a future hope of discretionary parole, a person "who ha[s] been

granted an early release date," such as Mr. Bowers, "ha[s] a justifiable expectation

---

[1] *See Stroud v  U S  Parole Comm'n*, 668 F.2d 843, 846 (5th Cir. 1982); *Young v
U S. Parole Comm'n*, 682 F.2d 1105, 1108 (5th Cir. 1982).

[2] *Glumb v. Honsted*, 891 F.2d 872, 873 (11th Cir. 1990).

[3] *Accord Zannino v  Arnold*, 531 F.2d 687, 690 (3d Cir. 1976); *McGill v  Reilly*,
No. Sioscv4.6, 2008 U.S. Dist. LEXIS 27561, at *3 (N.D. W.Va. Apr. 4, 2008).

3

of achieving his liberty on that date."[4]  As the Second Circuit poignantly explained,

"a parole grantee although not yet free like a parolee has the taste of freedom in his

mouth, the smell of freedom in the air, the touch of freedom within his grasp."[5]  As

such, Mr. Bowers' interest in his release on parole is protected by the Due Process

Clause.

   In addition to the liberty interest established by setting Mr. Bowers' release

dates, the Parole Act itself gives Mr. Bowers a protectable due process interest.

Section 4206(d) of the Parole Act, 18 U.S.C. § 4206(d), provides that prisoners in

Mr. Bowers' situation *shall* be released on mandatory parole *unless* the

Commission finds that "he has seriously or frequently violated institution rules and

regulations or that there is a reasonable probability that he will commit any

Federal, State or local crime."  The Supreme Court has repeatedly held that a

parole statute such as Section 4206(d) creates a protected liberty interest when it

"uses mandatory language ('shall') to 'creat[e] a presumption that parole release

will be granted' when the designated findings are made."[6]  *Pardons v. Allen,* 482

U.S. 369, 377-78 (1987) (quoting *Greenholtz v  Inmates of Neb  Penal & Corr*

---

[4] *Green v  McCall*, 822 F.2d 284, 287 (2[d] Cir. 1987), *reaff'g Drayton v  McCall,*
584 F.2d 1208 (2d Cir. 1978).

[5] *Drayton, supra* at 1219.  *See also Lanier v  Fair,* 876 F.2d 243 (1st Cir. 1989)
(inmate at half-way house had a protected liberty interest under Massachusetts
parole statutes).

[6] *See also* Hewitt v. Helms, 459 U.S. 460, 471-72 (1983).

*Complex,* 442 U.S. 1, 12 (1979) (footnote omitted)).   The statute at issue in *Allen,* just like Section 4206(d), required release on parole *unless* certain adverse findings were made.[7]  As the Court held, "despite the necessarily subjective and predictive nature of the parole-release decision," statutes with this mandatory language and structure "create[] an 'expectancy of release,' which is a liberty interest entitled to [due process] protection."[8]  Thus, in addition to the liberty interest created by the Commission's actions in setting parole release dates for Mr. Bowers, Section 4206(d) itself establishes an interest protected by the Due Process Clause.

Because Mr. Bowers has a constitutionally-protected interest in his parole, this case is substantially different than most ordinary habeas corpus petitions challenging the denial of discretionary parole on grounds that the Commission's actions violated the Parole Act or its regulations.  Mr. Bowers was deprived of his liberty interest without due process and the Court may readily grant relief for this reason.  However, it may not be necessary for the Court to decide the constitutional questions raised here.  The record also unequivocally establishes numerous

---

[7] *Board of Pardon v. Allen, supra* at 374.

[8] *Id.* at 371.  *See Kentucky Department of Corrections v  Thompson,* 490 U.S. 454, 462-63(1989) ("a State creates a protected liberty interest by placing substantive limitations on official discretion.  *Olin v  Wakinekona,* 461 U.S. at 249. ... the most common manner in which a State creates a liberty interest is by establishing 'substantive predicates' to govern official decision-making, ... and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met.")

violations of the Parole Act and the Commission's regulations—and each of these violations is a sufficient ground for relief—though it is important to note that the constitutionally-protected interests at stake should also influence the Court's construction of the statutes and regulations.  The statutes and regulations should be construed so as not to violate the Due Process Clause.[9]

## II.    THE COMMISSION ACTED UNLAWFULLY BY FAILING TO RELEASE MR. BOWERS ON MANDATORY PAROLE IN FEBRUARY AND JUNE 2005

### A. The Commission Improperly Reopened Mr. Bowers' Case In February 2005

On February 17, 2005, Commissioners Spagnoli and Cushwa, who had not previously participated in the review of Mr. Bowers' parole request, ordered Mr. Bowers' case reopened.  As a result, Mr. Bowers was not released on mandatory parole the following day, as he was previously ordered to be.  The two Commissioners concluded that the Commission had received "new and significant" information which warranted reopening the case, but the record firmly establishes

---

[9] The Supreme Court has long counseled against constructions that unnecessarily raise "issues touching liberties that the Constitution safeguards." *United States v. Witkovich*, 353 U.S. 194, 201 (1957);. *see also Zadvydas v. Davis*, 533 U.S. 678, 689-90 (2001) (applying this principle and limiting the reach of an immigration detention statute, so as not to raise an unnecessary conflict with the Fifth Amendment's Due Process Clause); *Miller v. Johnson*, 515 U.S. 900, 923 (1995) ("we have rejected agency interpretations to which we would otherwise defer where they raise serious constitutional questions") (citation omitted); *Rust v Sullivan*, 500 U.S. 173, 190-91 (1991) (applying the same principle to regulations).

that no such information ever came to the Commission.  Consequently, the

decision to reopen the case and the Commission's failure to release Mr. Bowers on

February 18 violated the Parole Act, the Commission's rules, Judge William

Terrell Hodges' Remand Order, and the Due Process Clause.  Section IV, *infra*,

addresses the remedy for these violations in detail.  But, briefly, the Court should

grant the petition and order Mr. Bowers released on mandatory parole.  That would

effectively reinstate the valid final order granting Mr. Bowers' parole, which was

in place before his case was unlawfully reopened.

> 1. The Commission Violated Section 2.28(f) of its Rules When it
>    Reopened the Case Without Having Received Any New and
>    Significant Information

The Parole Act does not address the circumstances in which the Commission

may reopen a case and modify a grant of parole.  Instead, those procedures were

adopted by the Commission pursuant to its rulemaking powers.[10]  In recognition of

an inmate's substantial liberty interest in an established release date, the

regulations significantly constrain the Commission's ability to reopen a case and

---

[10] The Parole Act authorizes the Commission to "modify" an order paroling a
prisoner "pursuant to the procedures set out in [the Parole Act]."  18 U.S.C. §
4203(b)(3).  While nothing in the Act specifically authorizes the Commission to
reopen a final decision granting parole, the statute allows the Commission to
promulgate such rules and regulations "as are necessary to carry out a national
parole policy and the purposes of [the Act.]"  18 U.S.C. § 4203(a)(1).  So:
4203(a)(1).

rescind an already-granted parole date. Under Section 2.28(f) of its rules, on

which the Commission relied in reopening Mr. Bowers' case in February 2005:

> Upon *receipt* of *new and significant adverse information* that is
> not covered by paragraphs (a) through (e) . . . , a Commissioner
> may refer the case to the National Commissioners with his
> recommendation and vote to schedule the case for a special
> reconsideration hearing. Such referral shall automatically
> retard the prisoner's scheduled release date until a final decision
> is reached in the case.[11]

The U.S. Parole Commission's Rules and Procedures Manual ("USPC Manual")

explains further that "[t]he term 'new and significant information' includes (1)

documentary or other evidence not contained in the Commission's file at the time

the decision in question was made" and "(2) discovery of an objectively definable .

. . error in a previous decision that affected the determination of the guideline

range applicable to the prisoner."[12]  If the case is reopened on this basis, the Notice

of Action "must specify the adverse nature of the new information and the

documentary material must be sent promptly to the institution" for disclosure to the

---

[11] 28 C.F.R. § 2.28 (f) (emphasis added).  Sections 2.28(a)-(e) do not apply here.
They provide that a Regional Commissioner may reopen a case when there is new
information favorable to an inmate, institutional misconduct, a prisoner has
received new additional sentences or a new conviction, or an inmate does not have
an appropriate plan for release.  Unless otherwise stated, all citations to the
Commission's rules are to those in effect during 2005.
[12] *Id.*, § 2.28-02(g).

inmate.[13]  Under the plain language of the regulation, the Commission's authority

to reopen a case is triggered only by the actual *receipt* of information—which must

be both *new* and *significant*—and the substantive nature of that information must

be promptly disclosed to the inmate.

None of these important requirements was met here.  Although

Commissioners Spagnoli and Cushwa reopened the case based on a letter received

from Mrs. Lee on February 17, the record clearly shows that it did not provide *any*

new or significant information.  Rather, Mrs. Lee simply told the Commission that

she might provide some information in the future.  The Commission's summary of

that letter stated:

> [Mrs. Lee] asserted that she had not been notified of your recent
> mandatory parole hearing.  She *indicated that she desired* to
> provide additional information to the Commission.  She stated
> that she *could provide* information regarding your conduct in
> prison and the probability that you will commit future crimes if
> released.

Exhibit 37 at 1(emphasis added).  The Commission's Notice of Action, which

advised Mr. Bowers of the adverse information, confirms the point.  It did not

include any allegedly new information.  *See* Exhibit 34.

In reopening the case solely on the basis of Mrs. Lee's future "desire[] to

provide additional information," the Commission violated Section 2.28(f) of its

---

[13] *Id.*, § 2.28-02(f).

9

rules. That section's plain language permits the Commission to reopen a case only *upon receipt* of new and significant adverse information. It does not permit the Commission to reopen a case based upon the mere promise that some evidence will be provided in the future. The Commission itself has recognized the importance of that limitation and has refused to reopen a case where a prosecutor wrote a letter to the Commission alleging that a prisoner "was quite possibly engaged in criminal conduct." The Commission concluded that it "was not presented with a preview of the evidence which would be available to it should [the] case be reopened."[14]

Nor did the Commission have any reason to believe that Mrs. Lee might provide new and significant information about Mr. Bowers even if given additional time. The Commission had already held seven parole hearings to assess Mr. Bowers' conduct in prison and his suitability for release. Mrs. Lee had previously submitted letters in connection with those hearings strongly opposing Mr. Bowers' parole, including arguing that his 1990 letter to her demonstrated that he posed a threat. The Commission had already made express findings concerning these claims. *See* Exhibit 67, 11. There was thus every reason to expect that, as

---

[14] *Parness v U.S Parole Comm'n*, 488 F.Supp. 102, 103-04 (S.D.N.Y. 1980). *see also Galante v U.S Parole Comm'n*, 466 F. Supp. 1266, 1271 n.14(S.D.N.Y. 1979) (refusing to reopen a case due to insufficient information from a U.S. Probation Officer).

occurred in *Bono v Benov*,[15] a new letter from the victim's family would movingly reiterate previous arguments, but provide nothing new or significant.[16]

As a matter of fact, nothing new or significant was offered. After the case was unlawfully reopened, Mrs. Lee wrote once again to the Commission as did another confidential source. These letters, which reiterated claims about Mr. Bowers' 1990 letter to Mrs. Lee and his escape attempt, *see* Exhbit EE, were vetted by the Commission's examiner at the March 21 special reconsideration hearing. He concluded that they did not contain anything "new and significant," and that "*[t]hese issues are old*; the Commission has addressed them and they are not relevant to the subject's current mindset and behavior." Exhibit 39 at 6 (emphasis added).[17] His decision that the material was not relevant and could not be

---

[15] 197 F.3d 409 (9th Cir. 1999).

[16] As the Court said about a similar letter in *Bono*:

> From the moment Bono entered the federal parole system, the Commission was aware that the Border Patrol Agent had left behind a family, who would be deeply affected by his murder. Although the letter provides a moving account of the difficulties faced by the victim's daughter as she grew up fatherless, it does not provide any information that was not before the Commission at the time Bono's original presumptive parole date was determined.

*Id.* at 421.

[17] The misunderstanding about the 1990 letter to Mrs. Lee had been exhaustively considered by the Commission. *See* Exhibits 8; 10 at 3-5; 12 at 2; 13 at 2; & 11 at 1. The 1979 escape attempt was also old news, which referenced it at almost every opportunity, starting with Mr. Bowers' initial parole hearing in 1983 (*see* Exhibit 1

considered reflects court holdings that that information cannot be "new" within the meaning of Section 2.28(f) if it had been considered by the Commission previously and the agency chose to disregard it.[18]

In sum, because it did not receive any new and significant information, the Commission had no authority under its rules or the statute to reopen Mr. Bowers' case. The decision to grant mandatory parole on February 18 should have been allowed to stand.

### 2. By Reopening Mr. Bowers' Parole, The Commission Violated the Remand Order and the Due Process Clause

The District Court's October 26, 2004 Remand Order instructed the Commission to conduct an immediate file review and hold any "mandatory parole consideration hearing within sixty (60) days from the date of this Order" or by December 25, 2004. *See* Exhibit 25 at 7. While the Commission's December 21, 2004 hearing was timely, the March 21, 2005 proceeding manifestly was not. The Remand Order provided no exceptions for holding additional hearings after

---

at 2) and right up to his mandatory parole hearing in 2004 (*see* Exhibit 28 at 2), which gave rise to the special reconsideration hearing. Likewise, Mr. Bowers' claim of being a "political prisoner" was not new. *See* Exhibit 41 at 4. As a matter of fact, he raised his claim of innocence and being "unjustly convicted" at his initial parole hearing in 1983. *See* Exhibit 1 at 2 & 4. At his 1991, 1993, and 1998 hearings, the examiners all addressed this issue in detail. *See* Exhibits 2 at 3; 7 at 1; & 12 at 2.

[18] *Schiselman v. U.S. Parole Comm'n*, 858 F.2d 1232, 1238 (7th Cir. 1988).

December 25. If the Commission was interested in considering what Mrs. Lee (or anyone else for that matter) had to say about this case, it should have made sure to do so at the December hearing. However, even assuming *arguendo,* that the Remand Order allowed the Commission to holding proceedings after December 25 if warranted under its rules, that Order clearly did not permit the Commission to reopen the case in a manner not authorized by its rules.[19] Any other reading would render the Court's order a virtual nullity.

Reopening the case based on the speculative promise of future information also violated Mr. Bowers' due process rights. Due process requires that the Commission apply the "procedures appropriate under the circumstances" so that Mr. Bowers' mandatory parole date would not be "arbitrarily abrogated." *Wolff v McDonnell*, 418 U.S. 539, 557 (1974). That measure of protection was not afforded to Mr. Bowers. The specific dictates of due process in a given case involve consideration of three separate factors: (1) the interest affected by the government action; (2) the risk of an erroneous deprivation of such interest via the disputed procedure and the value of the proposed procedural safeguard; and (3) the government's interest, including any burden caused by the proposed procedural

---

[19] *Sullivan v. Hudson,* 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent adminstrative proceeding is itself legal error, …"); *Cf Disimone v Browner,* 121 F.3d 1262, 1269 (9th Cir. 1997).

safeguard.[20] All three factors compel the conclusion that the Commission must receive substantive information before rescinding a mandatory parole date.

First, inmates who have already been given a specified parole date have a significant and constitutionally-protected interest in attaining their liberty at that time.[21] The mandatory parole statute, of course, provides an additional basis for that liberty interest.

Second, the risk that that important interest will be improperly deprived is intolerably high where a case is reopened based only on the speculative promise of future information. This case proves the point. Once the Commission actually heard from Mrs. Lee and another source, the information was not, as the examiner concluded, "new and significant"—yet Mr. Bowers still lost his freedom. And the value of this basic procedural safeguard has long been acknowledged. Since the earliest days of the Republic, the courts have required that probable cause actually exist before liberty is lost. Mere suspicion is not enough for an arrest, nor is a promise that the justifying facts will be made known to the government at some point in the future.[22] Due process precludes depriving a person of his or her

---

[20] *See Mathews v Eldridge*, 424 U.S. 319, 335 (1976).

[21] *See Green v McCall, supra.*

[22] *See, e.g , Devenpeck v Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause [to arrest] exists depends upon the reasonable conclusion to be drawn *from the facts known to the arresting officer at the time of the arrest*") (emphasis

freedom, even in a civil commitment matter, by the mere promise of forthcoming information. In *Minnesota ex rel Pearson v Probate Court of Ramsey County.*, 309 U.S. 270, 272, 275 (1940), the Supreme Court upheld a civil commitment statute because the law required that "before proceedings are instituted the facts shall first be submitted to the county attorney who if he is satisfied that good cause exists shall prepare a petition to be executed by a person having knowledge of the facts...." All of these are reasons why, as the Court of Appeals has explained, a "federal parole grantee. . . [who] has had his early release date set . . . must be accused of specific wrongdoing or confronted with specific adverse information in order for the Commission to consider rescission of that date."[23]

Finally, the burden of requiring that the Commission actually receive the relevant information before setting aside a granted parole is so negligible as to be nonexistent. The government has no legitimate interest in depriving a person of their liberty interest based only on the mere promise of future evidence, especially where, as here, there is no reasonable basis for assuming that probative evidence

---

added); *Beck v Ohio*, 379 U.S. 89, 96 (1964) ("When the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers *at the moment of the arrest* would warrant a man of reasonable caution in the belief that an offense has been committed"); (quotation and citation omitted; emphasis added). Even an alleged enemy combatant held at Guantánamo Bay "must receive notice of the factual basis for his classification." *Hamdi v Rumsfeld*, 542 U.S. 507, 533 (2004) (plurality opinion).
[23] *Green v McCall*, 822 F.2d at 292.

15

will be forthcoming.  Thus, all three factors compel the conclusion that Mr.

Bowers' due process rights were violated here.

*          *          *

Regardless whether this Court determines that the Commission acted

improperly under the Constitution, the Remand Order, or the Commission's own

regulations, the result is the same.  Refusing to release Mr. Bowers on the basis of

the speculative (and ultimately unmet) promise of future new information rendered

the Commission's action in reopening this case in February void.[24]  Prior to the

Commission's unlawful action, there was a valid final order granting mandatory

parole.  Correcting this error requires that Mr. Bowers be released now so that he

can be "put . . . back in the position he would have been in if the . . . violation

never occurred." [25]

---

[24] *See, e g  Galante v  U S. Parole Comm'n*, 466 F. Supp. 1266, 1270 (D. Conn. 1979) (holding that the "Commission's failure to meet the minimum due process standards applicable to" its regulatory proceedings rendered its decision "void").
[25] *Nunes v  Mueller,* 350 F.3d 1045,1058 (9th Cir. 2003) (citation and quotations omitted).

**B. The Commission's Consideration of the Attorney General's "Request for Review" Was Unlawful**

    1. There Was No Authority for the Commission to Consider the Attorney General's June 2005 "Request for Review"

Though the Commission acted improperly by reopening the case in February 2005, it nonetheless granted Mr. Bowers a mandatory parole date, June 21, 2005, at the conclusion of that process. That action granting mandatory parole was a final decision of the full Commission treating the case as an "original jurisdiction" matter. Notwithstanding the finality of that decision, on June 9 the Attorney General—encouraged and guided by Commissioner Spagnoli—personally intervened and sought further review. While claiming to act "[p]ursuant to the Rules and Procedures of the United States Parole Commission," Exhibit 54, he did not cite to any, and there are none.

Neither the Parole Act nor the Commission's rules authorize the Attorney General to appeal or seek reconsideration of a decision by the full Commission. The limitation on the government's right to appeal or seek reconsideration enforces Congress's decision, as codified in Section 4202 of the Act, to create the Commission as an "independent" agency. The legislative history of the Act makes it clear that, while the agency is attached to the Department of Justice for administrative purposes, Congress intended that the Commission would be

17

"independent for policy-making purposes" and that "its decision-making machinery . . . [would be] independent so as to *guard against influence in case decisions*."[26] Congress also provided for Presidential appointment of the Commission members in order to "emphasize the Commission's independence from the Department."[27]

Since the Attorney General has no supervisory role over the Commission, a request by the Attorney General to "render a new decision" does not require the Commission to reopen a case. In fact, it does not *even justify* the Commission reopening a case, *unless* the Parole Act and the Commission's rules authorize the Attorney General's participation and the request meets the requirements for whatever relief is sought.

As shown below, there is no provision in the Parole Act or the Commission's regulations that authorize the Attorney General to seek review of an original jurisdiction decision made by the full Commission. Thus, by considering the Attorney General's unauthorized "Request for Review" in this matter, the Commission violated its governing statute, its own regulations, the Remand Order, and the Due Process Clause. As with the unlawful decision to reopen Mr. Bowers' case in February, the remedy for these violations is to grant the petition and order

---

[26] S. Rep. No. 94-369, 94th Cong., 1st. Sess. 14, 20 (1975) (emphasis added).

[27] H. Rep. No 94-184, 94th Cong., 1st. Sess. 2 (1975).

18

Mr. Bowers released on mandatory parole, which would effectively reinstate the

May 2005 final order granting parole.

> a) There was no statutory authority for the Attorney General's
> "Request for Review"

Section 4215(c) is the sole provision that authorizes the Attorney General to

seek review of a parole decision.  It states:

> The *National Appeals Board* may review *any decision of a
> regional commissioner* upon the written request of the
> Attorney General filed not later than thirty days following
> the decision and, by majority vote, shall reaffirm, modify,
> or reverse the decision within sixty days of the receipt of
> the Attorney General's request. [28]

Yet, that is not what the Attorney General sought here.  Regional Commissioner

Mitchell's decision to grant mandatory parole was made on January 13, and a

Notice of Action issued on January 18.  If the Attorney General had wished to seek

review of the Regional Commissioner's decision, he should have filed an appeal

within thirty days, or by February 17.

The Attorney General instead sought to appeal the May 13 original

jurisdiction decision of the full Commission, not the decision of a single Regional

Commissioner.  By the time the Attorney General entered the case in June, all of

the other members of the Commission had already reviewed Regional

---

[28] 18 U.S.C. § 4215(c) (emphasis added).

Commissioner Mitchell's decision (except Commissioner Fulwood, who had recused himself) and had decided, albeit by a 2-2 decision, to grant Mr. Bowers mandatory parole. At that point, the decision was final and there was no basis, under either the statute or the regulations, for the Attorney General to request that the full Commission revisit a final decision that it had already reached as a collective body.

The narrow scope of the Attorney General's right to appeal under Section 4215(c) is confirmed by contrasting it with Section 4215(a), which governs appeals by inmates. Under Section 4215(a), an inmate may appeal "[w]henever parole release is denied . . ., parole conditions are imposed or modified . . . , parole discharge is denied . . ., or parole is modified or revoked."[29] Section 4215(a) thus expressly affords inmates a right to appeal in circumstances where Section 4215(c) does not authorize the Attorney General to appeal. Inmates are not limited to appealing only those decisions made by a single Regional Commissioner. This difference in statutory language matters. "[W]hen 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the

---

[29] 18 U.S.C. § 4215(a) (citations to statutes omitted).

disparate inclusion or exclusion.'"[30]  If Congress wanted to give the Attorney

General a broader right to appeal, it could and would have done so.

This limitation on the Attorney General's right to appeal is consistent with

and implements Congress' decision to insulate the Commission from political

pressure and assuring greater due process protection for parole candidates.  As the

Conference Report on the Parole Act explains, the Act was passed to "provide an

infusion of procedural protections into the Federal Parole system at the initial

determination stage *as well as the appellate* and revocation *levels*."[31]  That

understanding was repeated in the Senate Report: "It is the intent of [Congress]

that parole decisionmaking be independent of, and not governed by, the

investigative and prosecutorial functions of the Department of Justice."[32]  As this

case demonstrates, allowing the Attorney General to appeal a decision reached by

the full Commission undermines Congress's mandate that the Commission's

substantive decisions should be divorced from the Attorney General's influence.

Allowing the Attorney General to appeal or seek reconsideration of a full

Commission decision is inconsistent with the purpose of the Commission's

---

[30] *Barnhart v  Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (quoting *Russello* v. *United States,* 464 U.S. 16, 23 (1983) and *United States* v. *Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972)).

[31]  H.R. Rep. 94-184, Part 2, 94th Cong. 1st Sess. 1 (1975) (emphasis added).

[32]  S. Rep. No. 94-648, 94th Cong., 2d Sess. 21 (1976).

original jurisdiction process.  As the Fifth and Tenth Circuits have explained, the

original jurisdiction process was designed to provide "confidence in the integrity"

of the Commission's decisions by providing for a "broader consensus" in those

cases "where there is more likely to be public or private pressure."[33]  In light of

this purpose, it is not surprising that Congress would limit the Attorney General's

right to appeal only to those cases where a single Regional Commissioner's

decision should be reviewed by a larger group of Commissioners.  However,

authorizing an appeal from the full Commission is unnecessary to assure the

integrity of the Commission's decisionmaking process.  The Commission is not a

court in which the government appears as an ordinary litigant, and in which it may

appeal adverse decisions as an ordinary litigant.  The Department of Justice

participates in parole hearings as an "interested party," just like victim-witnesses

and others.[34]  By allowing the Attorney General to appeal only decisions made by

regional commissioners, the statute allows the Attorney General to vindicate the

government's interest in assuring the integrity of the decision-making process.

Once the Commission itself invokes its "original jurisdiction," as it did in the

---

[33] *Pope v  U S  Parole Comm'n*, 647 F.2d 125, 126 (10th Cir. 1981) (per curiam)
(quoting *King v  Warden, U.S Penitentiary*, 551 F.2d 996, 999 (5th Cir. 1977)).
[34] *See* USPC Manual, § 2.13-11.

instant case, that interest is fully served and there is no need for the Attorney General to intervene.

Since the Attorney General's legitimate interest was fully vindicated when the Commission considered the matter under its "original jurisdiction" procedures, there was no need to permit him to seek reconsideration of the full Commission's decision, especially given the risk of the very kind of political pressure Congress intended to avoid when it enacted the Parole Act. Here, by entertaining his petition and bowing to such political pressure, the Commission undermined, rather than assured, public confidence in the integrity of the parole process.

There is nothing anomalous or untoward with such an asymmetrical review structure where—as here—there is a risk of governmental overreaching and a threat to the independence of an agency. In *Peters v Hobby*, 349 U.S. 331 (1955), the Supreme Court upheld just such a structure in circumstances that are comparable to those here. In that case, Mr. Peters had been charged with disloyalty but was cleared following a hearing before a board of inquiry within his agency. Subsequently, the Civil Service Commission's Loyalty Review Board, an appellate body, reviewed the case on its own motion and barred Mr. Peters from

23

government service.[35]  However, the Executive Order establishing the Loyalty

Review Board only authorized appeals to the Loyalty Review Board by an

*employee* who was recommended for dismissal; there was no corollary appeal

authorized when an employee was cleared.  The Supreme Court held the Board's

action "invalid," and expunged the holding,[36] stating:

> This safeguard [limiting the right of further review] was . . .
> perhaps one of the most important[] afforded an accused
> employee under the Order.  Its effect was to leave the initial
> determination of his loyalty to his co-workers in the department
> . . . He was thus assured that his fate would not be decided by
> political appointees who perhaps might be more vulnerable to
> the pressures of heated public opinion.  To sanction the
> abrogation of this safeguard . . . in the face of the [Executive]
> Order's language . . . would be to sanction administrative
> lawlessness.  Agencies, whether created by statute or Executive
> Order, must of course be free to give reasonable scope to the
> terms conferring their authority.  But they are not free to ignore
> plain limitations on that authority.[37]

The same analysis and result applies here.  The Parole Act authorizes only the

parole candidate to file appeals or petitions for reconsideration of decisions made

by the full Commission; there is no comparable right granted the Attorney General.

---

[35] *See Peters v. Hobby, supra.* at 336-37.

[36] *Id.* at 348-49.

[37] *Id.* at 346; *see also Service v  Dulles*, 354 U.S. 363, 386-87 (1957) (once the
appropriate agency official made a determination of loyalty favorable to the
employee, the case was closed and the regulations left the Secretary of the agency
*functus officio* with respect to the case.)

The Commission's action entertaining the Attorney General's "Petition for Review" and rescinding Mr. Bowers' mandatory parole date is invalid.

> ### b)  There was no regulatory authority for the Attorney General's "Request for Review"

Unsurprisingly, the Commission's rules follow the statute and afford the Attorney General only a limited right to appeal.  Section 2.54 provides: "The Attorney General, within thirty days after entry *of a Regional Commissioner's decision*, may request in writing that the National Appeals Board review such decision."[38]  Section 2.26(f), which sets out the procedures for any such appeal, similarly states:

> Upon the written request of the Attorney General *seeking review of a decision of a Regional Commissioner*, which is received within 30 days of such decision, the National Appeals Board shall reaffirm, modify, or reverse the Regional Commissioner's decision within 60 days of receipt of the Attorney General's request.[39]

Both of these rules mirror the language in Section 4215(c) of the Parole Act.

In conformity with the statute, an inmate's appeal is not so limited.  Section 2.26(a) of the rules permits an inmate to appeal "*any decision* to grant . . ., rescind, deny, or revoke parole, except that any appeal of a Commission decision pursuant

---

[38] 28 C.F.R. § 2.54 (emphasis added).
[39] 28 C.F.R. § 2.26(f) (emphasis added).

to § 2.17 shall be submitted as a petition for reconsideration under § 2.27."[40]

Since Section 2.17 pertains to original jurisdiction cases, this regulatory language

expressly contemplates that an *inmate* may seek reconsideration of an original

jurisdiction decision.  In contrast, Section 2.26(f), which governs appeals by the

Attorney General, omits any reference to petitions for reconsideration in original

jurisdiction cases.  Thus, the Commission's rules preserve the same asymmetry

that is set forth in the Parole Act.[41]  The rules do not allow the Commission to

consider an Attorney General's appeal or petition for review of a decision already

reached by the full Commission.

Any doubt concerning this reading is dispelled by the lack of any rules for

handling an Attorney General's request for further review of an original

---

[40] 28 C.F.R. § 2.26(a)(1) (emphasis added).

[41] Section 2.27—which describes the process for handling petitions for
reconsideration filed by inmates in original jurisdiction matters—does not require a
different result.  The rule is purely procedural, and does not contain even the
slightest suggestion that it somehow confers any appeal rights on the Attorney
General.  The history of the rule confirms this fact.  When the Commission
amended the regulation to replace original jurisdiction appeals with petitions for
reconsideration, the agency wrote that "the appeal from such [original jurisdiction]
decisions that is available to prisoners under 28 C.F.R. § 2.27 is replaced by a
petition for reconsideration."  61 Fed. Reg. 13,763 (Mar. 28, 1996) (emphasis
added).  Paroling, Recommitting , and Supervising Federal Prisoners: Original
Jurisdiction Cases, 61 Fed. Reg. 13, 763 (Mar. 28, 1996) (to be redefined at 28
C.F.R. pt. 2) (emphasis added).

jurisdiction decision.[42]  If further review had been contemplated under the Parole

Act or the Commission's regulations, surely the Commission's regulations would

have established the procedures for handling such an appeal, just as they prescribed

the procedures for inmate challenges to full Commission decisions.  There would

have been no need to create wholly new ad hoc rules to handle the Attorney

General's "Request for Review" in this matter.  *See* Exhibit 61.  The absence of

any rules to address the Attorney General's request and the Commission's apparent

conclusion that the request was not covered by any of its existing regulations is

compelling evidence that the Commission exceeded its authority in considering the

Attorney General's request.[43]  That conclusion is further supported by the fact that

---

[42] That conclusion is also evidenced by the inability of the Attorney General and
the Commission to even figure out what the Attorney General should (or did) file
in this matter.  Commissioner Spagnoli secretly urged him to file an *appeal* under
Section 4215(c).  *See* Exhibit 53 at 3.  The Attorney General submitted a
*Memorandum*.  *See* Exhibit 54.  The Commission issued a Notice of Action,
calling it a *petition for reconsideration*.  *See* Exhibits 56 & 57.  In Chairman
Reilly's letter of August 9, 2005 and in the ad hoc procedures designed to handle
the case, the matter is referred to as the *Attorney General's Request for Review*.
*See* Exhibits 65 & 61

[43] *See NLRB v  United Food and Commercial Workers Union,* 484 U.S. 112, 123 &
n. 20 (1987); *Commodity Futures Trading Comm'n v  Schor,* 478 U.S. 833, 844-46
(1986).

no such appeal or petition for reconsideration has been filed in the three decades

prior to the Attorney General's request here.[44]

### 2. The Attorney General's "Request for Review" Was Devoid of Substance

Even assuming *arguendo* that the Attorney General's "Request for Review"

was authorized, the Attorney General did not provide *any* legitimate reasons for

reopening and reconsidering this case. Thus, the Commission violated its own

rules in reopening the case in light of the facial invalidity of the Request.

Section 2.26(e) of the Commission's rules provides that a parole decision

may be appealed:[45]

> upon the following grounds: (1) that the guidelines were
> incorrectly applied . . .; (2) That a decision outside the
> guidelines was not supported by the reasons or facts as
> stated; (3) That especially mitigating circumstances . . .
> justify a different decision; (4) That a decision was based
> on erroneous information, and the actual facts justify a
> different decision; (5) That the Commission did not
> follow correct procedure in deciding the case, and a
> different decision would have resulted if the error had not
> occurred; (6) There was significant information in
> existence but not known at the time of the hearing; (7)

---

[44] The Commission's unauthorized actions also violated the Remand Order. That Order did not contemplate that the Commission would conduct further proceedings not authorized under the governing statute and rules.

[45] The Parole Act does not contain any requirements for appealing an order granting or denying a parole. It only provides for an appeal to the National Appeals Board. 18 U.S.C.§ 4215.

> There are compelling reasons why a more lenient
> decision should be rendered on grounds of compassion.[46]

In his June 9 Memorandum, the Attorney General alleged *none* of these

seven permissible grounds. He presented no new information;[47] he pointed to no

legal or factual errors in the Commission's earlier decision; and he did not allege

that the Commission had failed to follow correct procedures. Instead, he merely

requested that the Commission—which had already given "*full consideration of all*

*relevant factors*"—"review and consider the Veronza L. Bowers matter and render

a new decision."[48] While he suggested that such further review "may address any

factual and/or legal ambiguities in the initial decision," his one paragraph

Memorandum did not indicate what those theoretical ambiguities might be. The

only concrete reason offered by the Attorney General was that the Commission

was "split 2-2-1" and "[f]urther review will give each of the five Commissioners

the opportunity to clarify their positions."

None of the Attorney General's suggestions was facially valid. While the

Attorney General may not have liked the outcome of the vote, the Commissioners'

---

[46] 28 C.F.R. § 2.27.6(e)(g)-(7).

[47] As a practical matter, we must conclude that the Attorney General never
presented any new information. Under the Commission's ad hoc procedures, if
any new information was raised, the Commission was required to remand for a
hearing. *See* Exhibit 61. No such hearing was ordered.

[48] Exhibits 54 & 51 (emphasis added).

respective positions were crystal clear.  The Commission had even addressed the

"split" exhaustively before issuing its ruling, to the point of requesting that the

agency's General Counsel to prepare a legal opinion as to the effect of the 2-2-1

vote.[49]  As the agency's General Counsel determined:  "[T]he Commission has had

the opportunity to exercise its discretionary judgment based on an expanded

administrative record and has not found, by the required majority vote, that one of

the permissible reasons for denying mandatory parole exists."[50]  Thus, "the

Commission must grant Bowers mandatory parole in order to comply with 18

U.S.C. § 4206(d)."[51]

Consequently, even if one assumes some authority for the "Request for

Review," the Attorney General raised none of the grounds for appeal recognized in

the Commission's own rules.  As a result, there was no lawful basis for the

Commission to reconsider the case.  Indeed, as explained in Section III, *infra*, the

Attorney General's request was a manifest effort to change the result without any

legitimate basis in law or fact—it was the exercise of the very political power that

Congress intended to preclude when it adopted the Parole Act, and which the Due

---

[49] *See* Exhibit 49 at 2.

[50] *Id*. at 2 (footnote omitted).

[51] *Id*. at 1.  Nor did the Attorney General have a good faith basis to suggest that Commissioner Fulwood might reconsider his recusal.  Any effort by the Attorney General to pressure Commissioner Fulwood into reconsidering his recusal would raise even more serious due process concerns.

Process Clause forbids.[52] The "Request for Review" should have been respectfully returned to the Attorney General or denied, and Mr. Bowers should have been released on mandatory parole as scheduled on June 21, 2005.

*       *       *

As we have shown, there was no authority for the Attorney General's request for review, and he made no facially legitimate arguments. By reopening the case and failing to release Mr. Bowers in June 2005, the Commission violated the Parole Act, its regulations, the Remand Order and the Due Process Clause. As we explain more fully in Section IV, *infra*, the remedy is to grant the petition, set aside the invalid action, and order Mr. Bowers release on mandatory parole, which will return him to the *status ante quo*.

## III. IN RESCINDING MR. BOWERS' PAROLE, THE COMMISSION FAILED TO ACT AS A NEUTRAL DECISION-MAKER, IMPROPERLY EXPANDED THE SCOPE OF THE PROCEEDING, AND MADE ARBITRARY AND RESULT-ORIENTED DECISIONS

Even though the Attorney General's "Request for Review" was unauthorized and did not cite any of the enumerated permissible grounds for review, the Commission nonetheless decided to reopen Mr. Bowers' case and not release him in June 2005. Driven by a Commissioner who was overtly biased, the agency

---

[52] *See, e g.. Withrow v. Larkin,* 421 U.S. 35 (1975); *Ward v Vill of Monroeville,* 409 U.S. 57 (1972); *In re Murchison.* 349 U.S. 133 (1955).

launched into a proceeding unmoored from the decisional and procedural guideposts established by the Parole Act and its rules, and produced an arbitrary and result-oriented decision.

### A. Commissioner Spagnoli's Actions Tainted the Commission's Decision-Making Process and Produced a Decision Improperly Affected by Political Pressure

1. Commissioner Spagnoli Lacked Any Semblance of Impartiality

As an agency charged with an adjudicatory function, the Commission has a fundamental duty to act as an unbiased decision-maker. "A fair trial in a fair tribunal is a basic requirement of due process."[53] This demands both "an absence of actual bias" and efforts "to prevent even the probability of unfairness."[54] The core due process requirement of a fair trial in a fair tribunal "applies to administrative agencies which adjudicate as well as to court."[55] Commissioner Spagnoli's conduct manifestly deprived Mr. Bowers of this most basic right.

From the start of her involvement in this matter, Commissioner Spagnoli's actions demonstrated a lack of impartiality. The record shows that she did whatever she could to prevent Mr. Bowers from being released on mandatory

---

[53] *In re Murchison, supra* at 136.

[54] *Id.*

[55] *Withrow v Larkin, supra* at 46; *see also O'Bremski v. Maass,* 915 F.2d 418, 422 (9th Cir. 1990), *cert denied,* 489 U.S. 1096 (1991) (inmate entitled to have parole release date considered by tribunal free from bias and prejudice).

parole, regardless of the facts, the Commission's governing procedures, or her duty

to act as a neutral decision-maker. Even before she wrote her pernicious

memorandum to the Attorney General, Commissioner Spagnoli took the following

extraordinary measures contrary to the Commission's rules to prevent Mr. Bowers'

release:

- In February 2005, she took the lead in reopening Mr. Bowers' case, *see* Exhibit 35, even though Commission staff had suggested that Regional Commissioner Mitchell, who was assigned to the case, should handle the matter. *See* Exhibit 32.

- She then departed from precedent by reopening the case without having actually received any information, much less the "new and significant" information required under Section 2.28(f).

- After the special reconsideration hearing was completed, Commissioner Spagnoli was the first Commissioner to designate the case as an original jurisdiction matter, *see* Exhibit 42, even though the Commission's rules provide that only "the Regional Commissioner may designate that a case should be decided as an original jurisdiction case."[56]

These actions show a Commissioner insinuating herself into a case over

which she had no responsibility in order to assure, as her subsequent conduct made

manifest, that Mr. Bowers would not be released on parole. Had Commissioner

Spagnoli not reopened the case, and had she not participated in designating it as an

---

[56] 28 C.F.R. § 2.17(n).

original jurisdiction matter, she would not have been able to vote on Mr. Bowers'

mandatory parole. Instead, Mr. Bowers would have been released based on the

decision by Regional Commissioner Mitchell and the recommendations of the

hearing examiners. Her measures to thwart his release, particularly when coupled

with her later actions, establish an unmistakable bias and an injudicious desire to

deny Mr. Bowers parole.

These actions alone require this Court to grant this habeas corpus petition,

but Commissioner Spagnoli's conduct was not limited merely to reopening the

case or having it designated as an original jurisdiction matter. When her efforts to

convince her fellow Commissioners to deny parole were unsuccessful, she secretly

implored the Attorney General to intervene. In her clandestine memorandum, she

wrote:

> This memo will present relevant facts, possible procedural or
> legal errors and potential appeal issues in this case. I will not
> however, reach a conclusion with regard to whether the
> Attorney General should appeal the Parole Commission's
> decision to grand [sic] mandatory parole to defendant because if
> the Attorney General so decides, all Commissioners will
> participate in reviewing the case on Appeal. *My position*,
> however, *denying mandatory to this defendant and the reasons
> for doing so* will be apparent [57]

---

[57] Exhibit 53 at 3 (emphasis added).

By telling the Attorney General her "position," Commissioner Spagnoli crossed the line from neutral decision-maker to advocate. Indeed, her *sua sponte* disclosure of confidential agency information to support her "position" appears to violate the federal Privacy Act.[58] Commissioner Spagnoli's call to the Attorney General to appeal so that he would "get[] credit for doing so with crime victims and law enforcement," Exhibit 53 at 14, also injected impermissible extra-record reasons into the case, which precluded Mr. Bowers' from getting a fair hearing. As the Court of Appeals for the Tenth Circuit has held, it is not the role of the Commission or an individual Commissioner to "function as an adversary to the prisoner."[59]

Just as troubling, Commissioner Spagnoli was aware that her actions were inappropriate as she affirmatively kept them secret. Under the Commission's rules, Commissioner Spagnoli should have placed her Memorandum to the Attorney General in the Commission's file on June 1,[60] where it would have been

---

[58] The Privacy Act generally prohibits disclosure of records to an actor outside of the agency that maintains the records, which here is the Parole Commission. *See* 5 U.S.C. § 552a(b)(1). While records may be disclosed to another agency for law enforcement purposes, the other agency must first request the records. *See* 5 U.S.C. § 552a(b)(7).

[59] *Dye v. U.S Parole Comm'n*, 558 F.2d 1376, 1378 (10th Cir. 1977).

[60] 28 C.F.R. § 2.22 governs communications with the Commission. The Commission's Manual has specific rules and procedures for documenting all

available to her fellow Commissioners and eventually to Mr. Bowers' counsel,
who filed numerous requests for documents with the agency.[61] Her failure to do so
attests to her desire to avoid questions about her impartiality, thereby preserving
her ability to vote against Mr. Bowers should the Attorney General follow her
advice and file an appeal.[62] This conclusion is confirmed by her action in not
disclosing the memorandum two months later, when Chairman Reilly made the
unusual request of his fellow Commissioners that they "make sure that the
[Bowers] file contains a copy of any incoming or outgoing correspondence that
you have concerning the case. . . . Please give Mr. Theissen all such documentation
that you have." Exhibit 62. Despite this direct request from the head of her
agency, Commissioner Spagnoli again withheld her memorandum. Exhibit 79 at 1.

While remaining silent about her efforts to have the Attorney General
intervene, Commissioner Spagnoli continued to press her case against Mr. Bowers.
On October 5, the day before the Commission meeting on the Attorney General's
request, she circulated a memorandum to her fellow Commissioners in which she
distorted the record, disregarded a direct court order and completely ignored

contacts with officials and others outside of the agency. *See* USPC Manual, §
2.22-01 to-10.

[61] *See* Exhibits 36, 52, 58 & 66.

[62] *See McCallum v. Reilly*, No. 1:04cv142, 2007 U.S. LEXIS 62824, at *16 (N.D.
W.Va. Aug. 24, 2007) (examiner's knowledge that the regulations prohibited his
actions raises questions about his motive and impartiality).

contrary findings made by hearing examiners. She did so again during the

meeting. These are some of the most telling examples of her misconduct:[63]

- Commissioner Spagnoli's October 5 memorandum repeated an argument first raised in her April 19 memorandum. In both, she included in her description of Mr. Bowers' disciplinary record an infraction that the U.S. Court of Appeals expressly ordered the Commission not to consider.[64] In the Court of Appeals, the government conceded that Mr. Bowers had been wrongfully punished on the basis of an unsubstantiated and unreliable accusation from an unnamed informant, and that the Commission's use of the infraction violated the Due Process Clause.[65] Although Commissioner Spagnoli acknowledged that her agency had been expressly ordered to disregard this infraction, she disobeyed the order. She wrote that "the Commission was instructed to disregard this finding because the defendant's due process rights were violated—not because he didn't commit the act." Exhibit 73 at 6. Remarkably, she persisted in violating the Ninth Circuit's order even after Mr. Bowers' counsel obtained Commissioner Spagnoli's April 19 memorandum and objected to her use of the unfounded allegations. *See* Exhibit 68 at 10, n. 7.

- In her June 1 memorandum to the Attorney General, her October 5 memorandum to the Commission and her comments at the October 6 meeting, Commissioner Spagnoli repeatedly raised the issue of Mr. Bowers' 1990

---

[63] In the event the Court concludes that an evidentiary hearing is required to consider this matter, we would expect to establish a complete catalogue of Commissioner Spagnoli's improper comments and statements.

[64] *See* Exhibits 43 at 3; & 73 at 6.

[65] *See Bowers v U S. Parole Comm'n*, No. 91-55010, 1993 U.S. App. LEXIS 17097, at *1-2 (9th Cir. 1993); *see also* Exhibit 6 (related District Court Order).

letter to Mrs. Lee.[66]  She asserted that Mr. Bowers contacted Mrs. Lee "in an effort to intimidate and terrorize her."  Exhibit 73 at 10.  At the October 6 meeting, Commissioner Spagnoli again claimed that Mr. Bowers "clearly tried to intimidate" Mrs. Lee, and declared that she would use her "independent judgment" to determine whether this was a serious infraction meriting the denial of parole.  Exhibit 74 at 19-20.  Yet the Commission (and the Bureau of Prisons) had long ago found that the letter was not "threatening or intimidating in any manner" and, further, that it was "the type of letter that the inmate represented it to be." Exhibit 10 at 3.

- In contrast to the language contained in documents written by the hearing examiners who actually met Mr. Bowers and were thus able to make credibility-based determinations, Commissioner Spagnoli consistently characterized Mr. Bowers as "sneaky" and "manipulative," using a sharp and derogatory tone, and assuming an air of self-righteousness.[67]  Her overt bias also led her to disregard (and, more cynically, use against Mr. Bowers) his many years of unblemished institutional conduct.  For instance, she wrote to the Attorney General:  "The defendant is a smart man.  He knows that if he violates the institution rules he will not get paroled, so of course his current behavior is indicative of positive institutional adjustment."  Exhibit 53 at 12.

Even without an evidentiary hearing, this record fully establishes that

Commissioner Spagnoli acted not just with the "appearance" of bias (which the

Commission admits), but with actual bias.  An adjudicator displays actual bias

---

[66] *See* Exhibits 53 at 8; 73 at 10, & 74 at 12, 19.  *See* Petition for Writ of Habeas Corpus, ¶65-66.

[67] *See e g.*, Exhibits 53 at 8; & 73 at 5.

when her mind is "irrevocably closed" on a disputed issue,[68] or she "is not 'capable of judging a particular controversy fairly on the basis of its own circumstances.'"[69] Commissioner Spagnoli's actions clearly evince just such a closed mind.

In *McCallum v  Reilly*,[70] the magistrate judge recommended granting McCallum's habeas corpus petition after finding that (a) an executive hearing examiner overrode a recommendation made by two other examiners, (b) convinced the Regional Commissioner—who had already adopted the panel's recommendation—to change his mind, and (c) wrote a letter suggesting that the hearing examiner was attempting to revoke parole "not on the facts of the case, but because [he] believed that the petitioner was a dangerous individual."[71]  The magistrate judge found that these actions were not justified under the Commission's rules, that the "proceedings, as a whole, were not fair and impartial," were "not conducted by a neutral and detached hearing body," and "were fundamentally unfair and violated the petitioner's due process rights."[72]

---

[68] *NEC Corp. v  United States*, 151 F.3d 1361, 1373 (Fed. Cir. 1998); *see also S Pac  Comm'ns  v  Am. & Tel. Co* , 740 F.2d 980, 991 (D.C. Cir. 1984).

[69] *Hortonville Joint Sch. Dist. v  Hortonville Educ  Ass'n.*, 426 U.S. 482, 493 (1976) (quoting *United States v  Morgan*, 313 U.S. 409, 421 (1941)).

[70] No. 1:04cv142, 2007 U.S. Dist. LEXIS 55157 (N.D. W. Va. July 27, 2007).

[71] *Id.* at *65.

[72] *Id* at *64-66. On review, the district judge considered additional evidence provided by the Commission, but again noted that the executive hearing

Commissioner Spagnoli's actions here similarly denied Mr. Bowers' right to a fair hearing and require that the petition be granted.  Her memorandum to the Attorney General, the extraordinary circumstances under which it was sent and kept secret, and her continued participation in the proceeding once she sent that memorandum establish that Commissioner Spagnoli's mind was firmly closed on the issues and that she was incapable of judging the case fairly on the basis of the record.  Indeed, her mind was not only made up, but she also was actively seeking to insure that her view of Mr. Bowers' case prevailed, regardless of the legality of her actions.

　　　　　2.  Commissioner Spagnoli's Bias Tainted the Entire Proceeding

In September 2007, when the Commission finally disclosed a redacted version of Commissioner Spagnoli's covert memorandum, the Chairman wrote to Mr. Bowers:

> I have shared this memorandum with the remaining members of the Commission who voted on the Attorney General's appeal in October 2005.  (Commissioner Spagnoli resigned from the Commission in May of this year).  These Commissioners and I agree that the June 1, 2005 memorandum creates an appearance

examiner's actions "raise[] a question about his motives and the impartiality of the opinions he provided to the Regional Commissioner." *McCallum*, 2007 U.S. Dist. LEXIS 62824, at *16.  The district court also determined that the Commission "failed to follow applicable regulations in conducting its post-hearing vote process and, consequently, violated McCallum's procedural due process rights." *Id.* at *17.

> that former Commissioner Spagnoli may not have exercised
> impartial judgment in voting on the Attorney General's appeal.
> But we also agree that this memorandum played no role in our
> decision-making in your case and that our votes were based on
> our independent assessments of the merits of your case.

Exhibit 79 at 1. While Mr. Bowers welcomes the belated recognition that there is

"an appearance" that Commissioner Spagnoli "may not have exercised impartial

judgment," the Chairman's efforts to limit the damage from her outrageous actions

are inadequate. Id.

To begin with, the Commission functions as a collective body. As courts

recognize, "where one member of a tribunal is actually biased, or where

circumstances create the appearance that one member is biased, the proceedings

violate due process."[73] Thus, a litigant "need not demonstrate that the biased

member's vote was decisive or that his views influenced those of other members.

Whether actual or apparent, bias on the part of a single member of a tribunal taints

the proceedings and violates due process."[74]

Moreover, the issue is not, as the Chairman framed it, whether the

*memorandum* "played [a] role" in the other Commissioners' decision-making.

---

[73] *See Morgan v Illinois,* 504 U.S. 719 (1992) (defendant denied due process
where a juror is biased); *Stivers v Pierce*, 71 F.3d 732, 748 (9th Cir. 1995).
[74] *Id.; see also Cinderella Career & Finishing Sch , Inc. v FTC*, 425 F.2d 583, 592
(D.C. Cir. 1970); *Berkshire Employees Ass'n of Berkshire Knitting Mills v. NRLB*,
121 F.2d 235, 239 (3rd Cir. 1941).

Exhibit 79 at 1.  Rather, the memorandum is evidence of the *bias* of a

Commissioner who relentlessly advocated against Mr. Bowers, both inside and

outside of the agency.  The Commission's response to the late revelation of this

memorandum does not purge the proceedings of the prejudice she introduced, but

rather reflects the Commission's failure to appreciate the extent of Commissioner

Spagnoli's breach of her sworn duty and the impact she had on the case.  While she

may have thought her conduct was warranted because Mr. Bowers was convicted

of killing a law enforcement officer, "[i]t requires no superior olfactory powers to

recognize that the danger of unfairness through prejudgment is not diminished by a

cloak of self-righteousness."[75]  Simply put, the unauthorized actions by

Commissioner Spagnoli tainted the proceedings from the moment she first entered

the case.  Her utter failure to act as a neutral and detached decision-maker violated

the Due Process Clause.

### B.  The Commission improperly converted a special reconsideration appeal into a de novo proceeding

Driven by a Commissioner who wanted one outcome only and under

pressure from the Attorney General, the Commission diverted from its normal

procedures and transformed the nature of the proceeding before it.  Instead of

---

[75] *Cinderella Career & Finishing Sch. Inc*, *supra* at 590.  see *Aetna Life Ins  Co  v Lavoie,* 475 U.S. 813, 833 (1986) (Black, J., concurring) (violation of due process occurred when disqualified judge sat on the case).

reviewing the original jurisdiction decision not to *reconsider* the grant of

mandatory parole, the agency undertook a "de novo" proceeding—operating as if it

was deciding the case anew—without findings by hearing examiners or reference

to any prior agency decisions.

In January 2005, Regional Commissioner Mitchell adopted the hearing

panel's recommendation to grant mandatory parole. Under Sections 2.23(d) and

2.24(a) of the Commission's rules, that became the decision of the Commission.

When the case was reopened in February 2005, the Commission was required,

under its rules, to determine whether the agency should revisit its decision based

on the "new and significant adverse information."   Reopening a decision does not

launch a de novo proceeding.  Courts have made clear that "the purpose of the

special reconsideration hearing is to reconsider the parole '*in light of the new

information.*'"[76]  In a reconsideration proceeding, the threshold question before the

Commission is whether the information is "new" or "significant."  If not, the

Commission must end the proceeding since there is nothing new to reconsider.[77]  If

---

[76] *Schiselman v U.S  Parole Comm'n*, *supra* at 1239 (quoting *Iuteri v  Nardoza*, 662 F.2d 159, 161 (2$^d$ Cir. 1981) (emphasis in original).

[77] At a reconsideration hearing, the Commission must decide what information is new and what is not, since the Commission cannot reopen a case based upon old information and cannot consider information that it previously disregarded. Schiselman, supra, at 1238.  If it turns out that none of the information is "new," there is no basis for reconsideration.  *See Ready v. U.S  Parole Comm'n*, 483 F.

the information turns out to be new, the issue then becomes whether this new

information *should change the outcome*.[78] Reconsideration is not a vehicle to

enable the Commission to revise its prior decision based entirely on information

that it had already considered earlier.[79]

Critically, at the special reconsideration hearing, Hearing Examiner Howard

found that the information was neither new nor significant. He answered the

crucial threshold question in the negative, finding that the "issues are old" and that

the Commission had previously addressed them.[80] Exhibit 41 at 6. The reviewing

examiners did not disagree with this obvious finding, and Examiner Husk

---

Supp. 1273, 1277 (M.D. Pa. 1980) (Commission erred in reopening case on "new" information, and court will order petitioner's release on parole unless other information is determined to be "new.")

[78] Manual, § 2.28-02(f) ("This subsection is the appropriate mechanism for reopening cases to consider new information about the prisoner's original offense behavior of earlier criminal activities that *would have resulted in a different decision* had the information been presented to the Commission at the time of the initial parole hearing." (emphasis added). *See Fardella v. Garrison,* 698 F.2d 208, 211 (4th Cir. 1982).

[79] *See Schiselman v. U S Parole Comm'n, supra* at 1238.

[80] As Examiner Howard explained, the special reconsideration hearing was held per the 3/18/05 Notice of Action to consider the "new and significant adverse information" alleged by Mrs. Lee and a confidential source, including the 1990 letter, Mr. Bowers' claims of being a "political prisoner," and the 1979 escape attempt. *See* Exhibit 41 at 5. This identification of the information to be considered at the hearing was crucial since "[i]t is essential that the examiner panel be provided with sufficient guidance so that the hearing ordered can properly address the pertinent issue(s)." USPC Manual, § 2.28-01.

specifically added that "I don't believe that there is new evidence about [the] letter . . .". Id. at 8.

Although the Commission subsequently placed the case on its original jurisdiction docket, that action did not, under its rules, alter the issue before the Commission: it simply meant that the full Commission would decide whether the "new and significant" information required the Commission to reconsider the grant of mandatory parole.[81]  After deciding the case under its original jurisdiction procedures, the Commission once again granted Mr. Bowers mandatory parole. Thus, the decision appealed by the Attorney General was a decision *not to reconsider* the earlier grant of parole,[82] and the issue on appeal was whether the information provided by Mrs. Lee and the confidential source was "new and significant" and, if it was, whether that information warranted reconsideration of the full Commission's decision to grant Mr. Bowers mandatory parole.[83]

---

[81] *See* 28 C.F.R. § 2.17 (describing the original jurisdiction process as requiring a different number of votes; the regulation nowhere suggests that following this decisional path alters the substantive decision before the agency).

[82] As noted earlier, had the Attorney General wished the Commission to undertake a de novo review, he should have appealed the Regional Commissioner's January 2005 decision to grant mandatory parole. But the Attorney General chose not to do so and the statutory thirty-day deadline to do so had long since passed. *See* 18 U.S.C. § 4215(c); *see also* 28 C.F.R. §§ 2.26(f), 2.54.

[83] *See Schiselman v. U S Parole Comm'n, supra* at 1238-39 ("the Commission's position is the notion that the Commission is free in a second reconsideration hearing to evaluate all the information before it, notwithstanding the fact that it

Nevertheless, the Commission wholly ignored its rules and conducted a de novo review of Mr. Bowers' case. Assistant General Counsel Theissen stated in his summary of the case that "the Commission must now review this case and determine de novo, whether or not [Mr.] Bowers should be paroled." Exhibit 69 at 2 (emphasis in original). Likewise, the Commission prefaced its October 7th Notice of Action by noting that it had considered Mr. Bowers' "entire record anew." Exhibit 76 at 1. And, as a review of the Commission's October 6, 2005 meeting reveals, there were no findings (and indeed not even any discussion) of whether the information presented at the March 21 special reconsideration hearing was "new and significant," the issue properly before the Commission, nor was there any consideration of the findings and conclusions of the hearing examiners that the information was old and had previously been considered by the Commission. *See* Exhibit 74.

In its zeal to grant the Attorney General's request and consider the case anew, the Commission completely failed to observe the limits on the scope of review imposed under its own rules. As the Supreme Court recently held, commenting on the Executive's attempt to manipulate the reach of the Suspension

---

expressly accorded no weight to the information earlier. ... We do not believe that this is the correct approach.")

Clause: "The test for determining the scope of this provision must not be subject to manipulation by those whose power it is designed to restrain."[84]

The Commission's unauthorized actions also violated the Due Process Clause and the Remand Order. Reopening a case for de novo consideration whenever any information is alleged to be new—even if it turns out to be old—does not protect an inmate's liberty interest in an already-set mandatory parole date[85] and would render an inmate's release subject to continued uncertainty and reconsideration. Holding the Commission to the procedures set forth in Section 2.28(f) is necessary to maintain the integrity of the Commission's decision-making process and to provide finality. And by arbitrarily ignoring its own rules, the Commission circumvented the order to conduct any mandatory parole hearing by December 25, 2004. See Exhibit 25 at 7. Even if one assumes that the Remand Order allowed for authorized appeals after the deadline, it certainly was not meant to permit the Commission to conduct, contrary to its rules, a de novo review of the entire case in October 2005.

---

[84] *Boumediene v Bush*, No. 06-1195, 2008 U.S. LEXIS 4887, at *74 (U.S. June 12, 2008).

[85] *See Green v McCall, supra* note 4.

### C. The Commission Denied Mr. Bowers' Rights to a Fair and Unbiased Hearing Devoid of Political Influence

When it considered the merits of the Attorney General's "Request for Review," all of the procedural and substantive errors came home to roost. Because the Commission inappropriately converted the case to a de novo proceeding, it arbitrarily disregarded prior findings by the Commission, including credibility-based determinations made by hearing examiners. Because the Attorney General cited none of the established grounds for appeal, the de novo review was essentially standardless. The Commission was spurred to action by a Commissioner who demonstrated actual bias, and whose conduct tainted the agency's decisions. And, as we show here, the Commission bowed to political pressure and, as a consequence of all of these errors, made result-oriented and arbitrary decisions.

It is well-established that "[t]he touchstone of due process is protection of the individual against arbitrary action of government."[86] It is also axiomatic that when a governmental agency is assigned the task of assuring uniform results,[87]

---

[86] *Wolff*, 418 U.S. at 558 (citation omitted).

[87] There is no question but that the Commission was created to establish a uniform parole policy for the entire country. See, e.g., 18 U.S.C § 4203(a)(1) (the Commission's duties include promulgating regulations that "are necessary to carry out a national parole policy"); 28 C.F.R. § 2.20(a) ("To establish a national paroling policy, promote a more consistent exercise of discretion, and enable fairer

standardless decision-making can only result in arbitrary and disparate treatment in violation of the Constitution.[88]  As the Second Circuit has cautioned in the immigration context: "Where so much can be lost—and especially in an area of law in which, even in the ordinary case, a lot is at stake . . . —it is imperative that claims be adjudicated in a fair and reasoned way.  Standardless and *ad hoc* decisionmaking. . . is especially to be avoided. . ."[89]  Applying those principles here demonstrates that the Commission denied Mr. Bowers' due process.

       1. The Commission's Acted in Response to Political Pressure

The undisputed facts demonstrate that the Commission bowed to political pressure when it received the Attorney General's Request for Review, and in doing so denied Mr. Bowers the most basic of due process rights.  Congress established

---

and more equitable decision-making without removing individual case consideration, the U.S. Parole Commission has adopted guidelines for parole release consideration.")  As the Conference Report on the Parole Act stated, the "purpose [of the Act] is ... to assure the public and imprisoned inmates that parole decisions are openly reached by a fair and reasonable process after due consideration his been given the salient information."  H. Rep. 94-648, supra at 20.

[88] *See, e.g., Bush v  Gore*, 531 U.S. 98, 103, 105-06, 109 (2000) (holding that the "use of standardless manual recounts" in an election is unconstitutional when the recount procedures promulgated by the State Court, which had "the power to assure uniformity," fail to "satisfy the minimum requirement for non-arbitrary treatment" since there was an "absence of specific standards" and, therefore, the recount was "inconsistent with the minimum procedures" required by the Constitution.)

[89] *Yuanliang Liu v  United States DOJ*, 455 F.3d 106, 117 (2d Cir. 2006) (citation and quotation omitted).

the Commission as an "independent agency"[90] to "provide an infusion of due

process"[91] and to preclude the very kind of politically motivated action that

occurred here.  When it passed the Parole Act, Congress was aware of the concerns

expressed in cases such as *United States ex rel  Accardi v. Shaughnessy*, 347 U.S.

260 (1954) where the Supreme Court ruled that the Attorney General could not

"sidestep" applicable procedures or "dictate [the agency's] decision in any

manner."[92]  Congress separated the Commission's decision-making process from

the Department of Justice specifically "to guard against influence in case

decisions."[93]  Maintaining independence from the Attorney General is critical to

ensure that the agency fulfills its Constitutional obligation to act as a neutral and

detached decision-maker.  These fundamental principles and protections were

shattered in this case.

In surreptitiously writing the Attorney General, Commissioner Spagnoli

functionally made herself part of his team, providing him with legal and factual

arguments to advance.  Then by not revealing her memorandum to her fellow

Commissioners (an omission that was compounded by the Department of Justice's

non-disclosure of her conduct), she preserved her ability to participate in the

---

[90] 18 U.S.C. § 4202.

[91] H.R. Rep. 94-184, 94th Cong. 1st Sess. 2 (1975).

[92] *Accardi v. Shaughessy,* 347 U.S. at 267.

[93] S. Rep. No. 94-369, 94th Cong., 1st Sess. 20 (1975).

Commission's proceeding. After receiving the very type of appeal urged by Commissioner Spagnoli, the full Commission voted to reopen the case even though there was absolutely no authority for doing so nor any sustainable basis for the request itself. It then converted the appeal from a special reconsideration to a de novo proceeding, thereby removing the constraints on the issues it could consider under its rules and enabling it to reach a result-oriented decision that could not possibly have been supported by the record. Since the record had been created by the Commission itself—when it twice ordered Mr. Bowers to be released on mandatory parole—it is difficult to imagine a clearer display of an "independent" agency caving in to political pressure.

Indeed, the Attorney General's "Request for Review" was little more than a direction to the Commission to reverse itself. The Attorney General's call for the Commission members to "clarify their positions" and "render a new decision" could only have been perceived by the Commission as calling on the carpet the two agency members who voted for parole. Typically, Commissioners who agree with an examiner panel's recommendation do not write separate memoranda explaining their reasons.[94] Although Commissioners Spagnoli and Cushwa explained their

---

[94] Generally, all that Commissioners must do is vote. The Commission's Manual says that when there is a disagreement with an examiner panel, "[t]he Regional Commissioner prepares a memorandum . . . explaining the reasons for the

*disagreement* with the examiner panel's recommendation, *see* Exhibits 43 & 45,

the two Commissioners who *agreed* with the recommendation to grant mandatory

parole, Chairman Reilly and Commissioner Mitchell, followed the agency's

customary practice and simply signed the examiner panel's recommended Order.

*See* Exhibit 47.  Thus, the Attorney General's "request" for review to give the

Commissioners "the opportunity to clarify their positions" was a transparent

instruction for the two Commissioners who voted for parole to state their positions

individually and in full.  And notably, this instruction came while the agency's

reauthorization legislation was pending in Congress and the Commission's

continued existence was dependent upon the continued support of the Attorney

General.[95]

The Commission's failure to maintain its independence from the Justice

Department was further demonstrated by its ad hoc appeal process.  The

Commission's staff created a draft set of procedures for deciding the Attorney

General's "Request for Review."  The Commission shared this draft with the

---

disagreement with the panel recommendation." USPC Manual, § 2.24-02.  But
there is no requirement for a memorandum from Commissioners who *agree* with
the examiners. *See also* 28 C.F.R. § 2.17(a) (Commissioners vote in original
jurisdiction cases; no requirement for a memorandum by the Commissioners);
§ 2.26(b)(1) (National Commissioners vote on appeals to the National Appeals
Board; no requirement of a memorandum); § 2.27 (no requirement for a
memorandum in petitions for reconsideration).
[95] *See,* Petition for Writ of Habeas Corpus at ¶¶ 12-13.

Attorney General, who submitted comments, and the Commission met in closed session to adopt the ad hoc procedures. Only then were the new procedures shared with Mr. Bowers. Notwithstanding the Department's involvement in preparing those rules, the Commission subsequently allowed the Attorney General to depart from them by permitting him to file a reply brief that was not authorized under those ad hoc rules. The Commission's staff also coordinated the Commission's review of its decision granting Mr. Bowers' mandatory parole and the October 6th hearing with the Department of Justice. At the beginning of his presentation to the Commission at that meeting, Mr. Thiessen, the Commission's Associate General Counsel, stated that he had "been *working closely with the Attorney General's Office* back and forth regarding this review."[96]

This record leaves the clear and intolerable inference that members of the Commission bent to the will of the Attorney General and did so because he had informed them that their original decisions were politically unacceptable. In so doing, the Commission denied Mr. Bowers' rights. In *United States ex rel Accardi v Shaughnessy*, the Court set aside a deportation order because of similar intrusion by the Attorney General in the decision making process. The petitioner there contended that his application to the Board of Immigration Appeals for

---

[96] Exhibit 74 at 2 (emphasis added).

suspension of deportation was denied because the Attorney General had already

publicly placed Mr. Accardi on a list of people whom the Attorney General wished

to deport, which made it impossible for him "to secure fair consideration of his

case."[97]  The Supreme Court began by noting that "regulations prescribe the

procedure to be followed."[98]  The Court then pointed out that, under the

regulations, the Board was required to exercise its own judgment when considering

appeals, in accordance with the Board members' "own understanding and

conscience."[99]  The justices concluded that "as long as the regulations remain

operative, the Attorney General denies himself the right to sidestep the Board or

dictate its decision in any manner"[100] and the Board's decision was reversed.[101]

　　　Similarly, in *Peters v  Hobby*, the Supreme Court enforced limitations on

agency review where the appeal process was structured to ensure that an

individual's "fate would not be decided by political appointees who perhaps might

be more vulnerable to the pressures of heated public opinion."[102]   And in

*Pillsbury Co  v  Federal Trade Comm'n.[103]* the former Fifth Circuit vacated a

---

[97] *Accardi v  Shaughnessy, supra* at 262.

[98] *Id*. at 265.

[99] *See id*  at 266-67.

[100] *Id*. at 267.

[101] *Id*. at 268.

[102] 349 U.S. at 345.

[103] 354 F.2d 952 (5th Cir. 1966).

ruling by the Federal Trade Commission, finding its Chairman's appearance before

a Congressional committee where he was pointedly questioned about a matter

pending before the agency deprived Pillsbury of a fair hearing.  The Court held,

"we become concerned with the right of private litigants to a fair trial and,

equally important, with their right to the appearance of impartiality, which cannot

be maintained unless those who exercise the judicial function are free from

powerful external influences."[104]  The same flaw exists in the Commission's

reopening of Mr. Bowers' case and its subsequent decision to deny his release on

mandatory parole.

> 2.  Denying Mr. Bowers' Parole Was Result-Oriented and
>     Unsupportable On the Record

After untethering itself from prior decisions, its rules, and the findings of the

hearing examiners by determining that it could decide the case anew, the

Commission made result-oriented arbitrary decisions that were unsupported by,

and in fact inconsistent with, the record.  The result-oriented decision-making is

perhaps best captured by a Commissioner's comment at the October 6 meeting that

---

[104] *Id.* at 964 (citation omitted). *see also Gutierrez de Martinez v. Lamagno*, 515
U.S. 417, 428 (1995) (holding that courts can review a U.S. Attorney's
certification that an employee was acting within the scope of his employment for
civil liability purposes, in part because the U.S. Attorney "will feel a strong tug to
certify, even when the merits are cloudy, and thereby 'do a favor' both for the
employee and for the United States.")

"we all . . . decide on what the ultimate decision is going to be and then we fashion our reasons."  Exhibit 74 at 14.  Mr. Theissen advanced a similar theory when he candidly stated in his lengthy presentation urging denial of parole:  "I believe that *the strongest position we have* is, that he is [] likely to commit a crime in the future."[105]

The Commission's result-oriented decision-making is also evidenced by the agency's truncated decisional process.  In August 2005, the Commission adopted its ad hoc procedures to adjudicate this case, which specified that "[f]ive days before the meeting . . ., the Commissioners shall submit for discussion any fact from the prisoner's record that such Commissioner considers worthy of consideration under all statutory criteria."  Exhibit 61, ¶ 6.  The procedures also required each Commissioner to submit "written recommended findings," which would be circulated among the Commissioners.  *Id.*  However, by the time the meeting came about, these orderly fact-finding procedures went out the window.  Only one member of the agency, Commissioner Spagnoli, submitted any "recommended findings," -- a memorandum distributed the day prior to the meeting.  *See* Exhibit 73.

---

[105] Exhibit 74 at 6-7 (emphasis added).

As the transcript of the October 6 meeting shows, the Commission members did not identify facts for discussion or propose recommended findings because they had already decided to deny mandatory parole and were merely searching for justifications to do so. As evidence of that fact, there was no meaningful discussion of whether the Attorney General had advanced any legal or factual basis for reversing the Commission's earlier decision, nor was there any discussion of whether Mrs. Lee or the other confidential source provided any new information that might justify reversing the Commission's prior decisions. There was no meaningful discussion of the agency's prior decisions or of the hearing examiners' specific findings.

However, neither the Commission nor its staff is supposed to function as an adversary in a parole proceeding.[106] Rather, the solemn duty of the Commission is to act as a neutral and independent decision-maker that reaches parole decisions based on the facts in the record and governing law. The Commission utterly failed to fulfill that duty. As we show with the following two examples, the Star Chamber could hardly have been more biased.[107]

---

[106] *See Dye,* 558 F.2d at 1378.

[107] *Cf. In re Gault,* 387 U.S. 1, 18 (1967).

57

a) Likelihood of Committing A Crime

On October 7, 2005, the Commission issued its Notice of Action on Appeal, finding that Mr. Bowers' offense was motivated by his "attitude towards and hatred for the United States Government" and that he still nursed that alleged attitude, making it likely that he would commit a crime in the future. Exhibit 76. These "findings" and the Commission's conclusion with respect to future criminality are completely contradicted by the record.

The agency's hearing examiners, who met Mr. Bowers and questioned him directly, determined that he does not possess any hatred for the United States and that he would not pose a risk of committing a crime if released. As the Commission has long been aware, Mr. Bowers considers himself a political prisoner because he is a former Black Panther and the government targeted members of that organization for prosecution.[108] Mr. Bowers has also maintained

_____

[108] Mr. Bowers was a member of the Black Panther Party from 1969 to 1971, during which time the FBI was engaged in its Counter Intelligence Program against the Black Panthers known as "COINTELPRO." *See, e.g., Jones v FBI*, 41 F.3d 238, 240-241 (6th Cir. 1994); *Hobson v. Wilson*, 737 F.2d 1, 9-11 (D.C. Cir. 1984); *Hampton v Hanrahan*, 600 F.2d 600, 608-09 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980). When Mr. Bowers' residence was searched in 1973, it was clear that the FBI was well aware of his former Black Panther membership and that they already had a "file" on his political activities. *See Bowers*, 534 F.2d at 188, n.2 (quoting search warrant affidavit). For these reasons and others, Mr. Bowers has stated that he may have been targeted for political purposes.

his innocence and that his conviction rested in part on perjured testimony.[109]  With

full knowledge of these facts, after the Court ordered December 21, 2004

mandatory parole hearing, Examiner Haworth nevertheless found "no basis to

believe that there might be future criminal behavior on the part of the subject."

Exhibit 28 at 3.  "A thorough review of this case and conducting this hearing

convinced this Examiner that subject is an excellent candidate for mandatory

parole."  *Id.*  Examiner Haworth's findings were also based upon the favorable

psychological report by Hans Selvog, recommendations from prison staff, and Mr.

Bowers' many years of institutional achievements and outstanding behavior.  *See*

*id.* at 2-3.

---

[109] Mr. Bowers was convicted principally on the basis of the testimony of Alan
Veale and Arthur White.  Mr. Veale, who was charged as a co-defendant in the
murder of the Park Ranger (RT 725), received immunity for his testimony against
Mr. Bowers (RT 727).  A heroin user at the time (RT 891-892), Mr. Veale had
been convicted of armed bank robbery just prior to the Bowers' trial and hoped to
reduce his 12-year sentence for conviction (RT 795).  He had testified about the
murder of the Park Ranger at two separate trials involving the bank robbery
without mentioning Mr. Bowers (RT 794-795).  It was only the week before he
testified—about to face trial for the murder himself—that Mr. Veale identified Mr.
Bowers as being involved (RT 823-824).

  Mr. White was an admitted "drug dealer" (RT 1283) with an extensive criminal
record. (RT 1284-1286).  While awaiting sentencing on his latest drug conviction,
he approached the prosecution with his alleged knowledge about the Park Ranger's
murder (RT 1287-1288).  Initially, he refused to testify (RT 1289), but when the
prosecutor told him about a $10,000 reward and promised to assist him with his
pending sentence, he changed his mind. (RT 1292-1293; RT 1361-1362).  Copies
of these transcript pages are submitted collectively as Exhibit 83.

When the case was reopened in February, one of the issues raised in the Commission's Notice of Action was Mr. Bowers' claim to be a political prisoner. *See* Exhibit 39. At the March 21 special reconsideration hearing, Examiner Howard specifically considered this issue. *See* Exhibit 41. Although Examiner Howard found that these political prisoner allegations were "old," Exhibit 41 at 6, he nonetheless directly questioned Mr Bowers about them. Mr. Bowers explained that he was a political prisoner because of his prosecution, but that he is not bitter or interested in seeking revenge. He explained that "he blames the witness that lied at his trial" for his incarceration and that "he does not blame anyone else." *Id.* at 4. Mr. Bowers also stated that being a political prisoner due to his conviction does not mean that he hates society and the government. *Id.* Mr. Bowers' case manager spoke in support of parole and said that she "never observed him speaking negatively of the United States or others." *Id.* at 5.

Based on the written record, including the memorandum about the radio interview, and the testimony at the March 21 hearing, Hearing Examiner Howard found that Mr. Bowers did not show any current antipathy towards the United States. He wrote that the political prisoner allegations and claims of innocence were "not relevant to the subject's current mindset and behavior." *Id.* at 6. Thus, the examiner found no basis to deny mandatory parole. *Id.* The Due Process

Clause requires the Commission to defer to these credibility-based

determinations,[110] or at least articulate a reasoned basis for concluding that the

examiner's conclusions were erroneous.[111]

The first reviewing examiner, Examiner Pinner, concurred with these

credibility-based findings. He wrote: "Although I believe that the subject

considers himself to be a political prisoner based on his profession of innocence

and his belief that he was prosecuted because of his affiliation with the Black

Panthers, I do not believe that there is a nexus between his beliefs and

reinvolvement in criminal activity." *Id.* at 7. The second reviewing examiner,

Examiner Husk, likewise concluded:

> His most recent statements on a web site and in a radio
> interview, as well as at his hearing, reflect that he still believes

---

[110] *See Flores v Stock*, 715 F. Supp. 1468, 1471 (C.D. Cal. 1989) ("given the significance of a parolee's conditional liberty interest, the hearing panel's creditability [sic] findings may not be rejected absent a rehearing of the parolee's live testimony").

[111] *See Chaney Creek Coal Corporation v Federal Mine Safety & Health Review Comm'n,* 866 F.2d 1424, 1431 (D.C. Cir. 1989) (A "'judge's credibility findings should not be overturned lightly …'") (quoting agency decision); *Parker v. Bowen,* 788 F.2d 1512, 1520, 1521 (11th Cir. 1986) (agency reversing ALJ credibility findings must identify the considerations which led to its conclusions); *Penasquitos Village, Inc v NLRB,* 565 F.2d 1074, 1079 (9th Cir. 1977) (the special deference afforded the administrative law judge's credibility determinations weighs heavily in deciding whether findings are supported by the record as a whole); *More v. Ross,* 687 F.2d 604, 609 (2nd Cir. 1982) (federal courts give special weight to ALJ's credibility findings) (quoting *Butler-Johnson Corp v. NLRB,* 608 F.2d 1303, 1305 (9th Cir. 1979)).

> [] that his conviction and continued confinement is based on
> political reasons. However, I don't believe that the evidence
> indicates an ongoing hatred of government/law enforcement
> officials that would precipitate further acts of violence.

*Id.*

At the Commission's October 6 meeting, however, these findings were

utterly disregarded. The Commission proceeded as though they had never been

made at all. Mr. Thiessen opened the meeting with a long affirmative statement,

saying that the Commission had "a blank slate," and had not made findings at the

original jurisdiction stage. *See* Exhibit 74 at 5. After putting himself forward as

the Commission's expert on the case, Mr. Thiessen gave his own views divorced

from the extensive administrative record. Mr. Thiessen did not refer—much less

defer—to the findings made by the hearing examiners who had actually met Mr.

Bowers and Bureau of Prisons staff. Further, contrary to his own March 18

memorandum summarizing Mr. Bowers' 2002 radio interview,[112] he claimed that

Mr. Bowers consistently stated anti-government views, and as recently as 2002 had

displayed contempt and animus toward the United States. *See* Exhibit 74 at 7-8.

Mr. Thiessen's statement is directly contradicted by the hearing examiners' express

---

[112] Mr. Thiessen's March 18 Memorandum is submitted as Exhibit 40 and makes
no claim that Mr. Bowers' exhibited any hatred or hostility to the U.S. during the
interview.

findings and is not supported by his own summary of the 2002 radio interview.

*See* Exhibit 40. The full transcript of the interview, attached as Exhibit 18, firmly

refutes Mr. Thiessen's gross mischaracterization of the interview. *See* Exhibit 18.

In his presentation, Mr. Thiessen also discussed the 1990 letter to Ms. Lee[113] and

the facts of the underlying case.

The Commission's October 7, 2005 Notice of Action on Appeal shows that

the agency adopted Mr. Thiessen's unsupported allegations and reasoning.

According to the Notice of Action:

> The record shows that you continue to harbor the same
> beliefs and attitudes that led you to commit the crime for
> which you are incarcerated. As recently as 2002, you
> reiterated your hatred for the United States Government,
> and you have recently continued to claim that you are a
> political prisoner. The fact that in 1990 you contacted
> the victim's family via letter further indicates that you are
> likely to commit a crime.

Exhibit 76. This language was lifted verbatim from Mr. Thiessen's September 23,

2005 appeal summary. *See* Exhibit 69 at 2.

---

[113] Though he discussed the letter, Mr. Thiessen cautioned the Commission against
using the letter as a basis for denial of parole since Mr. Bowers "did not receive an
institutional infraction" for it. Exhibit 74 at 16. He further noted that using the
letter against Mr. Bowers might violate his due process rights—especially since the
Commission apparently did not have a copy of it—and that "given the fact that the
Attorney General got involved, it could look as if the Commission was being
[inaudible]." *Id.* at 17-18.

These "findings" and the Commission's conclusions with respect to future criminality are arbitrary and capricious. The record affirmatively shows that Mr. Bowers does not harbor hatred or animosity, or even the "same beliefs and attitudes" that he held in 1974. Similarly, the Commission's conclusion that the 1990 letter to Mrs. Lee evinces a likelihood of future criminality is refuted by the credibility-based findings made by a hearing examiner who looked at the issue previously as well as the report from the forensic social worker. *See* Exhibit 10 at 3; Exhibit 27. In short, while the Commission has broad discretion in its fact finding, a court on habeas corpus "may inquire as to 'whether there is a rational basis in the record for the ...conclusions ...' " [114] and that there is "at least some of ...[evidence] rationally connected to the Commission's finding."[115] The Commission's finding that Mr. Bowers' is likely to commit a crime does not meet this test. Rather, it supports the conclusion that the Commission's decision was motivated by the Attorney General's call to clarify the Commissioners' positions.

Habeas corpus relief may be granted where, as here, the information relied upon by the Commission does not provide a rational basis for the agency's

---

[114] *Gambino v. Morris,* 134 F.3d 156 (3[d] Cir. 1998) (citing *Zannino v. Arnold,* 531 F. 2d 687, 691 (3[d] Cir. 1976).
[115] *Id*

conclusions[116] or the Commission has relied upon an incorrect fact.[117]  And, of course, the Commission violates the Due Process Clause where, as here, it disregards the credibility-based findings of the agency's own examiners without having witnessed the testimony[118] or explained how the findings  were inherently unreasonable, inconsistent with the record, self-contradictory, or otherwise unjustified.[119]  The Commission's decision that Mr. Bowers is likely to commit a crime is arbitrary and capricious, reinforcing the conclusion that the agency's decision was biased and motivated by the Attorney General's call to clarify the Commissioners' positions.

> b)  Serious Violation of Prison Rules

Similarly, the Commission's finding that Mr. Bowers' escape attempt in 1979, some 26 years in the past, disqualified him for mandatory parole was arbitrary, capricious and result-driven.  The Commission was fully aware of the escape attempt when, in January 2005 and in May 2005, it granted Mr. Bowers mandatory parole.  Under the Commission's original interpretation of the

---

[116] *Zannino v  Arnold, supra* at 691.

[117] *See Misasi v  U S  Parole Comm'n*, 835 F.2d 754, 758 (10th Cir. 1987). *Cf Carlin v  Wong*, --- F. Supp. 2d ___, 2008 WL 728891 (N.D. Cal. 2008) (denial of parole reversed because fact findings unsupported by some evidence).

[118] *See Flores v  Stock, supra.*

[119] *See NLRB v. Goya Foods of Florida*, 525 F.3d 1117, 1126 (11th Cir. 2008); *D B. v  Lawson*, 354 F.3d 315 (4th Cir. 2004); *Parker v. Bowen, supra.*

mandatory parole statute, the Commission had discretion—which it exercised—to find that the misconduct committed decades earlier was not disqualifying in light of Mr. Bowers' exceptional overall record. In essence, the Commission had discretion to find that a violation may have been serious at the time it was committed, but it should no longer be treated as serious or disqualifying after many years of good behavior. This of course makes sense in the context of a statute that considers past behavior as part of a forward-looking assessment of whether an inmate will violate the law if released. Indeed, the Commission's original interpretation of the statute is consistent with agency's more general practice of discounting ancient prior offenses in calculating parole prognoses.[120]

Upon pressure from the Attorney General, the Commission changed its interpretation of the mandatory parole statute. In Department of Justice's September 1 letter to the Commission supporting the Attorney General's appeal,

---

[120] For example, in calculating an inmate's "Salient Factor Score"—the Commission's predictive scale for parole prognosis under the agency's guidelines—the agency disregards a prior conviction that occurred at least ten years before the commitment offense where the person was crime-free in the community for ten years. *See* USPC Manual at p. 60, Note A.8; *see also Farnsworth v Edwards,* 947 F.2d 948, 1991 WL 218007 (7th Cir. 1991) (prisoner granted mandatory parole notwithstanding an escape) (unreported decision cited for facts); *Dare v U.S. Parole Comm'n,* 212 Fed. Appx. 144 (3d Cir. 2007) (individual eligible for parole notwithstanding an escape attempt) (unreported decision cited for facts).

the Department argued that Section 4206(d) deprived the Commission of any

discretion to balance ancient "serious" infractions of prison rules with subsequent

behavior, no matter how prolonged and substantial. *See* Exhibit 67 at 1.[121]  Mr.

Thiessen's appeal summary took a similar approach, concluding that when a rule

violation is deemed "serious" at the time it is committed, the Commission has no

discretion even decades later to weigh the violation against an inmate's overall

record. See Exhibit 69 at 4. Commissioner Spagnoli urged the same conclusion,

*see* Exhibit 73 at 4, and the Commission apparently adopted it, although the

Commission never articulated its rationale for suddenly finding that Mr. Bowers'

escape attempt precluded his release on parole.[122]  The only thing new was the

intervention of the Attorney General.

Since the Commission was fully aware of Mr. Bowers' attempted escape

when it first granted mandatory parole, the Commission's revised finding was

arbitrary and capricious. An agency has a duty to explain its departure from prior

---

[121] The argument was repeated in the Department's unauthorized Supplement filed on September 30, 2005.

[122] Chairman Reilly stated that he was persuaded by the Attorney General's presentation, but there was no discussion of the Commission's previous construction of the statute and the views of Commissioners Mitchell and Cushwa were not clear. *See* Exhibit 74 at 14-16.

norms,[123] and where it is changing course, "must supply a reasoned analysis" for

that change. "[I]f an agency glosses over or swerves from prior precedents without

discussion it may cross the line from the tolerably terse to the intolerably mute..,"

its actions are arbitrary and capricious.[124] Here, no such explanation was provided.

However, that is not the end of the Commission's changeable view of

Section 4206(d): The Commission has flipped again, and has granted mandatory

parole notwithstanding an escape attempt, in one or more other cases. Sara Jane

Moore was sentenced to life for attempting to assassinate President Gerald Ford.

In 1979, Ms. Moore escaped from federal custody by scaling a twelve foot fence.

See Exhibit 84. She was separately prosecuted for the escape and received a

consecutive three year sentence. See Exhibit 85. Ms. Moore was released on

mandatory parole on December 31, 2007. As the New York Times reported:

> Although sentenced to a life term and denied parole at least
> once before in the mid-1980s, Ms. Moore was given another
> chance at freedom under federal sentencing regulations that call
> for considering paroling prisoners after serving 30 years if they
> are not deemed a threat and have conducted themselves well.
>
> Ms. Moore did escape for four hours from a federal prison in
> 1979, but Tom Hutchison, a spokesman for the United States
> Parole Commission, said it appeared nothing in her recent
> record blocked her release. The commission held a hearing in

---

[123] *Atchison, Topeka & Santa Fe R.R. v Wichita Bd of Trade*, 412 U.S. 800, 808 (1973).

[124] *Greater Boston Tel Corp v FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970).

> November to clear her release, which coincided with the 30th
> anniversary of her federal incarceration, he said.[125]

After adopting an ad hoc set of procedures for Mr. Bowers' case only, it should perhaps not be surprising that the Commission also adopted a temporary interpretation of the statute for Mr. Bowers' case only. But if the Commission's first flip flop leaves the inference that the Commission's revised finding was arbitrary and capricious, the Commission's return to its original (and correct) interpretation of the statute leaves another: that the agency changed its longstanding construction of the mandatory parole statute solely in response to pressure by the Attorney General, and solely to keep Mr. Bowers in prison. It is something this Court ought not tolerate.

*          *          *

In sum, the Commission's decision to deny Mr. Bowers' parole was reached in a proceeding instituted after unprecedented intervention by the Attorney General, that was calculated to produce that result. The Commission did not follow its own rules when it held a de novo proceeding rather than one focusing on whether new and significant information had been presented, and it ignored the

---

[125] Exhibit 84; *see also* Exhibit 85 ("Moore was released under a federal law that makes parole mandatory for inmates who have served at least 30 years of a life sentence without getting into trouble, according to Thomas Hutchison, chief of staff of the U.S. Parole Commission.")

factual record, the findings of the agency's own hearing examiners, and its own precedent. In so doing, it acted arbitrarily and capriciously and violated Mr. Bowers' due process rights, and relief must be granted.

## IV.    THE COURT SHOULD GRANT THE PETITION FOR A WRIT OF HABEAS CORPUS AND ORDER MR. BOWERS RELEASED ON MANDATORY PAROLE

We have shown that the Commission violated the Parole Act, the agency's regulations, the Due Process Clause and the Remand Order. Each of these grounds alone is sufficient to grant this Petition; collectively, they establish a pattern of arbitrary and capricious action that disregards the most fundamental notions of ordered liberty, and fair and impartial administrative decision-making. Under these circumstances, this Court should order Mr. Bowers' release on mandatory parole.

### A. Ordering Mr. Bowers' Release on Parole Will Restore Him to his Status Before the Commission Unlawfully Rescinded His Parole

The habeas corpus statute instructs the Court to enter such relief "as law and justice require."[126] "Conceptually, any habeas remedy should put the defendant back in the position he would have been in if the [constitutional] violation never occurred."[127] Before the Commission acted unlawfully by reopening Mr. Bowers'

---

[126] 28 U.S.C. § 2243.

[127] *Nunes v Mueller*, supra, at 1057 (citation and quotations omitted).

case in February 2005 and then again in June of that year, he had final decisions from the Commission ordering his release. If the Commission had not acted illegally, Mr. Bowers would be free today. Only an order requiring the Commission to grant him a parole can restore him to the position he was in prior to the Commission's unlawful acts.

The Commission's two decisions granting Mr. Bowers mandatory parole were final orders, which as we have shown, were illegally set aside. The decision to parole Mr. Bowers in February 2005 became final when the time passed for the Attorney General to appeal from the Regional Commissioner's decision. Likewise, the decision by the full Commission in setting Mr. Bowers' release on mandatory parole for June 21, 2005 was a final, non-appealable order since the Attorney General had no lawful basis to seek any further review of that final decision. As such, that order must be given effect.

Granting the writ and ordering Mr. Bowers' forthwith release on mandatory parole in these circumstances is thus is akin to where courts have granted the writ unconditionally because there are no further procedural avenues open to the government. For example, the writ is granted unconditionally when a criminal

conviction is voided due to insufficient evidence,[128] or to a double jeopardy violation.[129] Mr. Bowers is entitled to return to the status he had before the Commission acted in violation of the Parole Act, governing regulations, and the Constitution of the United States.

While remand is a possible remedy in habeas corpus cases, courts have granted habeas relief without a remand when the Commission has acted unlawfully in taking away an established release date. For instance, in *Bono v Benov*, the court of appeals affirmed the district court's order of "forthwith release" since the Commission acted in a presumptively vindictive manner when it changed Mr. Bono's parole release date; the court's order effectively reinstated the prior valid parole date and there was no remand to the Commission for any further proceedings.[130] Likewise, in *Parness*, the court found that a Commissioner did not follow the agency's rules when he agreed with an examiner panel's release recommendation but nevertheless delayed the inmate's release. The court ruled that "since the Commission exceeded its authority under the pertinent federal regulations the writ of habeas corpus shall issue and the Commission is directed to

---

[128] *See, e g., Fagan v Washington*, 942 F.2d 1155, 1158-60 (7th Cir. 1991); *Singer v  Ct. of Com. Pl , Bucks County Pa* , 879 F.2d 1203, 1206-07 (3d Cir. 1989).
[129] *See, e.g , Mars v. Mounts*, 895 F.2d 1348, 1360 (11th Cir. 1990).
[130] *Bono, supra* at 416, 421.

effect plaintiff's release on parole with all deliberate speed."[131]  Mr. Bowers is entitled to the same relief.

### B. Ordering Mr. Bowers' Release Is the Only Adequate Remedy In Light of the Commission's Actions in This Case

In addition, the saga of Mr. Bowers' treatment by the Commission cries out for his release.  This is the second time that the Commission has failed to follow the law in denying him mandatory parole, compelling him to seek relief from a federal court.  In his 2004 Petition, Mr. Bowers requested that the Court grant him mandatory parole as required by 18 U.S.C. § 4206(d).  *See* Exhibit 55 at 2 However, the District Court held that the proper remedy at the time was to order the Commission to "immediately review" Mr. Bowers' file and, if necessary, conduct a "mandatory parole consideration hearing within sixty (60) days."  *Id.* at 7.  As Judge Hodges noted, release on mandatory parole is "premised on a finding that the prisoner has not seriously or frequently violated institution rules or that there is not a reasonable probability that he will commit any Federal, State, or local crime upon his release" in accord with the mandatory parole statute.  *Id.*  When the District Court issued its Remand Order, that required determination had not yet been made by the Commission, and Mr. Bowers was "not entitled to release until it is."  *Id.* at 7-8.

---

[131] *Parness v. U S. Parole Comm'n, supra* at 107.

At this point, however, setting aside the Commission's illegal actions in reopening Mr. Bowers' case, the Commission *has* made the determination that he meets the criteria for mandatory parole. Thus, he should now be "entitled to release." The Commission has already had two bites at the apple, and surely two bites are enough.[132] Moreover, the Commission has utterly and consistently shown a disregard for Mr. Bowers' fundamental rights. At this juncture, there is no reasoned basis for this Court to assume that on any remand Mr. Bowers will be treated in a proper manner.[133] As the Ninth Circuit has held, "'it is consistent with the American system of fairness that if a parole applicant can demonstrate in a judicial proceeding that the parole authorities have violated their own rule, or that the parole authorities have acted arbitrarily, that man should not be denied a

---

[132] *See Billiteri v  United States Bd  of Parole*, 541 F.2d 938, 944 (2ᵈ Cir. 1976) ("The only remedy which the court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can grant the writ of habeas corpus and order the prisoner discharged from custody").

[133] Counsel submitted Freedom of Information Act requests to the Office of the Attorney General and the U.S. Parole Commission on July 24, 2007 and September 7, 2007, respectively. *See* Exhibits 79 & 80. On September 18, 2007, after Mr. Bowers received the previously undisclosed memorandum from Commissioner Spagnoli, counsel supplemented those requests. *See* Exhibits 81 & 82. Neither the Parole Commission nor the Office of the Attorney General has yet responded to these requests, which we suggest is a further indication of the treatment one may expect upon remand.

remedy.'"[134]  Manifestly, the Commission engaged in "flagrant, unwarranted, or unauthorized action that constitutes an abuse of the Commission's discretion."[135] Relegating him to the vagaries and arbitrary actions of the Commission in a remand would be a manifest injustice.

Under these circumstances, a further remand is neither necessary nor appropriate, and Mr. Bowers should be released immediately as required by the statute.[136]  It is axiomatic that a case should not be returned to a decision-maker that has repeatedly revealed its bias against the petitioning party.  The agency's proceedings have been thoroughly corrupted by the outrageous behavior of Commissioner Spagnoli and the Attorney General.  Hearings to determine what parts of the record have been influenced by these illegal acts would require testimony from Commission staff and the Commissioners themselves; the proceedings would thus resemble *Kastigar* hearings.[137]  And of course, the matter would eventually return to Commissioners who arbitrarily decided the case previously and, as the record reflects, submitted to influence from the Attorney

---

[134] *Wallace v. Christensen*, 802 F.2d 1539, 1549 (9th Cir. 1986) (en banc) (quoting 121 [Cong. Rec.] 15,706 (1975) (statement of former Rep. Wiggins)).

[135] *Glumb v. Honsted, supra* at 873.

[136] *See, e g., Bono v Benov, supra* at 416, 421; *Parness v U S Parole Comm'n, supra* at 107.

[137] *See Kastigar v United States*, 406 U.S. 441 (1972).

General.[138]  In short, the Commission appears to be paralyzed at this point from conducting additional proceedings in this matter that comply with the law.  It serves no one's interest—much less the interest of law and justice—for this Court to again remand this case to the Commission.  A remand would only result in protracted proceedings, and a third trip to court.

## V.    CONCLUSION

For the reasons set forth in Mr. Bowers' petition for writ of habeas corpus, this memorandum and the accompanying exhibits, the petition should be granted and Mr. Bowers should be released on mandatory parole.  Mr. Bowers suggests that the record is sufficient for this Court to grant him complete relief without an evidentiary hearing.  If the Court is unable to grant full relief on the present record, Mr. Bowers asks the Court to permit discovery and to set an evidentiary hearing so that the conduct of the Commission and the Department of Justice may be more fully explored.

---

[138] In fact, it appears that the Commission remains beholden to the Department of Justice.  Under the most recent legislation extending the life of the Commission, the agency is due to sunset at the end of October 2008.  The agency still needs the assistance of the Attorney General and Congress to survive, which makes it susceptible to further political influence.

Respectfully submitted this 24th day of June, 2008.

*Pro hac vice* applications to be
submitted for:

Bryan Gaynor
(California SBN 47875)
1160 G Street, Suite A
Arcata, California 95521
Telephone: (707) 826-8544
Facsimile: (707) 826-8545
Email: bwgaynor@humboldt1.com

Thomas W. Stoever
Arnold & Porter LLP
(Colorado Bar No. 25434)
370 Seventeenth Street
Suite 4500
Denver, CO 80202
Telephone: 303-863-2327
Facsimile: 303-832-0428
E-mail: thomas.stoever@aporter.com

Charles Weisselberg
(California SBN 105015)
University of California, Berkeley
School of Law
Berkeley, CA 94720-7200
Telephone: (510) 643-8159
Facsimile: (510) 642-3856
Email:cweisselberg@law.berkeley.edu

Theodore D. Frank
Arnold & Porter LLP
(D.C. Bar No. 23903)
555 12th Street, N.W.
Washington, D.C. 20004
Telephone: 202-942-5790
Facsimile: 202-942-5999
Email: theodore.frank@aporter.com

*Attorneys for Petitioner VERONZA L. BOWERS, JR*

A. Stephens Clay
(Georgia Bar No. 129400)
C. Allen Garrett, Jr.
(Georgia Bar No. 286335)
KILPATRICK STOCKTON LLP
1100 Peachtree Street; Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
E-mail: sclay@kilpatrickstockton.com
E-mail:
agarrett@kilpatrickstockton.com

# VERONZA BOWERS EXHIBITS

# EXHIBIT INDEX

| TAB | DATE | PLEADING |
|---|---|---|
| 1. | 11/07/83 | Initial Hearing Summary. |
| 2. | 08/21/91 | Hearing Summary. |
| 3. | 12/18/91 | NOA On Appeal |
| 4. | 11/26/92 | Memorandum by Regional Commissioner Getty. |
| 5. | 07/22/93 | Review Summary. |
| 6. | 08/24/93 | Order, *Veronza Bowers v. U.S. Parole Commission*, Case No  CV 87-2231-P WL (C. D. Cal.). |
| 7. | 11/02/93 | Review Summary. |
| 8. | 12/09/93 | Memorandum to National Commissioners from Regional Commissioner John R. Simpson |
| 9. | 12/27/93 | NOA. |
| 10. | 11/29/95 | Hearing Summary by S. Robertson. |
| 11. | 12/22/95 | Memorandum to National Commissioners from Regional Commissioner John R. Simpson |
| 12. | 07/28/98 | Review Hearing Summary. |
| 13. | 06/23/00 | Prehearing Review Assessment by Husk |
| 14. | 09/12/00 | Hearing Transcript |
| 15. | 09/12/00 | Hearing Summary. |
| 16. | 10/06/00 | NOA |
| 17. | 01/05/01 | NOA on Appeal |
| 18. | 08/25/02 | Transcript of Veronza Bowers radio interview. |
| 19. | 07/28/03 | Order in *Veronza Bowers v. U S  Parole Commission*, Case No. 5:01-cv-429-Oc-10GRJ. |
| 20. | 10/30/03 | Memorandum from M Gunter, Unit Manager, to Rhonda Shelton, U.S. Parole Commission |
| 21. | 01/01/04 | Referral Letter from Rev. Harvey L. Simpson, Chaplain, Federal Correctional Complex Coleman, Florida. |
| 22. | 03/03/04 | Request for Parole Certificates from Kevin J. Cimock, Case Manager |
| 23. | 04/06/04 | Check Out Authorization |
| 24. | 04/12/04 | Memorandum to Veronza Leon Bowers re Response to Inmate Request to Staff Member. |
| 25. | 10/26/04 | Order in *Veronza Bowers v. Carlyle I. Holder, etc., et al.*, Case No. 504-cv-208-Oc-10GRJ. |
| 26. | 11/24/04 | Prehearing Assessment by R. Haworth. |
| 27. | 12/14/04 | Letter to Edward F. Reilly, Jr., Chairman, U.S  Parole Commission, from Hans H. Selvog, M.S.W., L.C.S.W, Clinical Directors, Augustus Institute/NCIA. |
| 28. | 12/21/04 | Hearing Summary by R. Haworth |
| 29. | 01/13/05 | Order granting parole by Regional Commissioner Mitchell |

| 30. | 01/18/05 | NOA |
|-----|----------|-----|
| 31. | 01/24/05 | NOA (correcting 1/18/05 NOA). |
| 32. | 02/16/05 | E-Mail from Steve Husk to Thomas Hutchison and Rockne Chickinell |
| 33. | 02/16/05 | Record of Voice Mail Message from Stephen J. Husk |
| 34. | 02/17/05 | NOA (reopening case). |
| 35. | 02/17/05 | Order |
| 36. | 02/21/05 | Freedom of Information Act request to U.S. Parole Commission. |
| 37. | 03/17/05 | Letters from Douglas W. Thiessen, Ass't General Counsel, U.S. Parole Commission, to Veronza Bowers, Jr. |
| 38. | 03/17/05 | Untitled second page of a draft NOA, signed by Spagnoli & Cushwa |
| 39. | 03/18/05 | Supplemental NOA |
| 40. | 03/18/05 | Memorandum to File from Mr. Thiessen. Ass't General Counsel to the Commission. |
| 41. | 03/21/05 | Hearing Summary of P. Howard. |
| 42. | 04/19/05 | Order |
| 43. | 04/19/05 | Memorandum to File from Commissioner Deborah A. Spagnoli |
| 44. | 04/20/05 | NOA |
| 45. | 04/20/05 | Order [form] |
| 46. | 05/06/05 | Order |
| 47. | 05/09/05 | Order |
| 48. | 05/12/05 | Memorandum to the other Commissioners from Commissioner Isaac Fulwood, Jr. |
| 49. | 05/13/05 | Memorandum to Edward F. Reilly, Jr., Chairman, U.S. Parole Commission from Rockne Chickinell, General Counsel, U.S Parole Commission |
| 50. | 05/13/05 | Order |
| 51. | 05/17/05 | NOA |
| 52. | 05/18/05 | Freedom of Information Act request to U.S. Parole Commission. |
| 53. | 06/01/05 | Memorandum for the Deputy Attorney General from Deborah A. Spagnoli, Commissioner of the U.S. Parole Commission |
| 54 | 06/09/05 | Memorandum for the United States Parole Commission from the Attorney General |
| 55. | 06/09/05 | Memorandum from Joann L. Kelley, Case Analyst, USPC, to Commissioner, U.S. Parole Commission. |
| 56. | 06/14/05 | NOA |
| 57. | 06/14/05 | Order |
| 58. | 06/20/05 | Letter from Alan J. Chaset to Edward J. Reilly, Jr., requesting documents, and renewed Freedom of Information Act Request. |
| 59. | 07/22/05 | Email to Edward McNally, Department of Justice, from Rockne J. Chickinell, U.S. Parole Commission. |
| 60. | 07/27/05 | Letter to Members of the Parole Commission from David Margolis, Associate Deputy Attorney General |
| 61. | 08/02/05 | Procedures for Reviewing Attorney General's Request for Review of the Case of Veronza Bowers (35316-136). |
| 62. | 08/03/05 | Memorandum to All Commissioners from Edward F. Reilly, Chairman, U.S. Parole Commission |
| 63. | 08/08/05 | Memorandum to Chairman Reilly and Commissioner Patricia Cushwa from Commissioner Deborah Spagnoli |
| 64. | 08/09/05 | Letter to Veronza Bowers from Thomas W. Hutchinson, Chief of Staff, U.S. Parole |

| | | Commission |
|---|---|---|
| 65 | 08/09/05 | Letter to Honorable Alberto Gonzales from Edward F. Reilly, Jr. |
| 66. | 08/10/05 | Freedom of Information Act appeal to U.S Parole Commission. |
| 67. | 09/01/05 | Margolis Letter to Parole Commission |
| 68. | 09/21/05 | Letter to Parole Commission from Bryan Gaynor |
| 69. | 09/23/05 | Original Jurisdiction Appeal Summary |
| 70. | 09/30/05 | Letter to the members of the Parole Commission from Alice S. Fisher, Assistant Attorney General |
| 71. | 10/03/05 | Letter to Parole Commission from Bryan Gaynor |
| 72. | 10/05/05 | Letter to Parole Commission from Bryan Gaynor |
| 73. | 10/05/05 | Memorandum to Commissioner Patricia Cushwa, Commissioner Cranston Mitchell, Chairman and Commissioner Edward Reilly from Commissioner Deborah A. Spagnoli |
| 74. | 10/06/05 | Transcript of Parole Commission Meeting |
| 75. | 10/07/05 | Memorandum from Douglas Thiessen to File |
| 76. | 10/07/05 | NOA |
| 77. | 10/12/05 | Letter to the Honorable Alberto Gonzales from Chuck Canterbury, National President, Fraternal Order of Police |
| 78. | 07/27/07 | Freedom of Information Act request to Office of the Attorney General. |
| 79. | 09/07/07 | Letter from Edward Reilly to Veronza Bowers |
| 80. | 09/07/07 | Freedom of Information Act request to U.S Parole Commission. |
| 81. | 09/18/07 | Freedom of Information Act request to U.S. Parole Commission. |
| 82. | 09/18/07 | Supplement to Freedom of Information Act request to Office of the Attorney General. |
| 83. | | Selections from the Reporter's Transcript, *United States v Bowers*. |
| 84. | | Copyright 1981 The New York Times Company Article dated April 8, 1981 |
| 85. | | Copyright 1979 The Washington Post Article dated February 6, 1979 |
| 86. | | Declaration of Thomas Stoever (or doc showing continuance of parole hearing in Aug. 2007). |