# UNITED STATES PAROLE COMMISSION

# <u>CERTIFICATE</u>

I, Helen H. Krapels, Acting General Counsel in the Office of General Counsel for the United States Parole Commission, with offices at 90 K St., N.E., 3rd Floor, Washington, DC 20530, hereby certify that the attached exhibits are true copies of documents found in the U.S. Parole Commission's file pertaining to Bowers, Veronza, Federal Register Number 35316-136. This certificate supplements the certified record previously filed in the case containing Parole Commission exhibits 1 through 75, and begins with exhibit 76.   As evidenced by the declaration of former U.S. Parole Commission General Counsel Rockne Chickinell dated December 23, 2011 (Exhibit 82), certain records were removed from the Parole Commission's file and from consideration of the Commission prior to the revote of December 2011 and maintained in a separate folder by Rockne Chickinell.   These records were not part of the record considered by the Commission for its December 15, 2011 decision. The full record for the Commission's December 15, 2011 decision includes all exhibits from 1-107, except those documents identified in Mr. Chickinell's declaration.

IN WITNESS WHEREOF, I have signed this 19th day of December, 2014 and affixed the seal of the U.S. Parole Commission.

HELEN H. KRAPELS
Acting General Counsel
U.S. Parole Commission

Index of Government Exhibits

Exhibit 76        Letter dated September 29, 2011

Exhibit 77        Order dated October 4, 2011

Exhibit 78        Notice of Action dated October 12, 2011

Exhibit 79        E-mail and letter from Theodore Frank dated October 14, 2011

Exhibit 80        Letter dated November 8, 2011

Exhibit 81        Letter dated November 21, 2011

Exhibit 82        Declaration of Rockne Chickinell

Exhibit 83        Order dated December 8, 2011

Exhibit 84        Notice of Action dated December 15, 2011

Exhibit 85        Letter dated January 13, 2012

Exhibit 86        Notice of Action on appeal

Exhibit 87        Petition for reconsideration

Exhibit 88        Letter dated October 14, 2011


Documents in parole file of Veronza Bowers and considered by Commission in 2011 decision to
conduct revote and decision following revote


Exhibit 89        Bureau of Prisons progress report(redacted)

Exhibit 90        Letter dated September 25, 2007

Exhibit 91        Letter dated September 26, 2007

Exhibit 92        Letter dated November 15, 2007(available for in camera review)

Exhibit 93        Letter dated October 2, 2008

Exhibit 94        Memo dated October 15, 2008

Exhbiit 95      Letter dated October 22, 2008

Exhbiit 96      Letter dated October 23, 2008

Exhibit 97      Letter dated April 8, 2009(redacted)

Exhibit 98      Memo dated August 30, 2011

Exhibit 99      Memo dated September 22, 2011

Exhibit 100     Letter dated October 1, 2011(available for in camera review)

Exhibit 101     Letter dated October 2, 2011(redacted)

Exhibit 102     Letter dated October 3, 2011(redacted)

Exhibit 103     Letter dated October 12, 2011

Exhibit 104     Letter dated October 13, 2011

Exhibit 105     Letter dated October 14, 2011

Exhibit 106     Letter dated October 16, 2011

Exhibit 107     Memo dated December 1, 2011

Exhibit 108     Original Jurisdiction Appeal Summary



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*90 K Street, N.E.*
*Washington, D.C. 205301*

*Telephone: (202) 346-7000*
*Facsimile: (202)357-1085*

September 29, 2011

Theodore D. Frank
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Dear Mr. Frank:

The purpose of this letter is to inform you that the U.S. Parole Commission will be conducting a record review to determine whether the Commission should re-vote on granting or denying Veronza Bowers parole under the criteria of 18 U.S.C. § 4206(d). On August 26, 2011, the U.S. Court of Appeals for the Eleventh Circuit affirmed in part, and reversed in part, a district court decision denying Mr. Bowers habeas corpus relief. The court of appeals ordered that Mr. Bowers's parole determination revert to the status of the proceeding as of May 17, 2005, when the Commission members voting at that time were equally divided in their votes on granting or denying parole to the prisoner. The court's decision requires that the district court order the prisoner's release on parole unless the Commission initiates reconsideration proceedings within 60 days of the order.

The Commission is now determining whether it should re-vote on Mr. Bowers's case under 28 C.F.R. § 2.63(b) to resolve the impasse that existed in May 2005. In carrying out this review, the Commission will be considering all the submissions made by your firm and other interested persons and organizations that were sent to the Commission before and after May 2005. If you want to submit additional information for the Commission to consider in the course of its review, please send this information to the Commission by October 14, 2011.

You may send your submission to the Commission's new address at 90 K Street, N.E., Washington, D.C. 20530. If you want to telefax your letter, the fax number is (202) 357-1085. You may also send the letter as an email attachment to Amanda.K.Pyron@usdoj.gov.

This notice is the only notice being sent to the attorneys who have represented Mr. Bowers.

Sincerely,

**Exhibit 76**

Stephen J. Husk
Case Operations Administrator



# U.S. DEPARTMENT OF JUSTICE
## U.S. Parole Commission

## ORDER

**Name: BOWERS, Veronza**

**Reg. No: 35316-136**                         **Institution: Atlanta USP**

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action is hereby ordered:

Conduct a re-vote regarding votes initially made in April and May 2005. This re-vote is authorized by 28 C.F.R. § 2.63(b)(3). The Commission will reconsider whether it should deny you parole under the criteria of 18 U.S.C. § 4206(d).

Date:

Date:

*(Date Notice Sent)*

**Exhibit 77**

Full Commission

*(check)*

Parole Form H-6

U.S. Department of Justice                       **Notice of Action**
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

| | |
|---|---|
| Name: BOWERS, Veronza | Institution: Atlanta USP |
| Register Number: 35316-136 | Date:   October 12, 2011 |

In the case of the above-named, the following action was ordered:

Conduct a re-vote regarding votes initially made in April and May 2005. This re-vote is authorized by 28 C.F.R. § 2.63(b)(3). The Commission will reconsider whether it should deny you parole under criteria of 18 U.S.C. § 4206(d).

**REASONS:**

The Commission members who previously participated in the vote on your case in April and May 2005 decided that the present record supported a re-vote, without consideration of any new submissions from your representatives, the victim or other interested persons or organizations. These submissions will be considered in the re-vote itself. The re-vote will be held at a date yet to be determined.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     Theodore D. Frank
        Attorney at Law
        Arnold & Porter LLP
        555 12th Street NW
        Washington DC 20004

Exhibit **28**

## Pyron, Amanda K. (USPC)

| | |
|---|---|
| **From:** | Frank, Theodore D. <Theodore.Frank@APORTER.COM> |
| **Sent:** | Friday, October 14, 2011 11:15 AM |
| **To:** | Pyron, Amanda K. (USPC) |
| **Cc:** | Charles Weisselberg; Bryan Gaynor |
| **Subject:** | Veronza L. Bowers, Jr., Registration No. 35316-136 |
| **Attachments:** | Oct. 14 Letter to the U.S. Parole Commission re Husk Letter_(WEST_30993664_1).PDF |

Ms. Pyron -- In accordance with the letter I received from Stephen J. Husk dated September 29, 2011, I am enclosing a letter setting forth the views of Mr. Bowers' lawyers concerning the Commission's proposed action in response to the Court of Appeals decision in *Bowers v. Keller*. A hard copy is being sent today by certified mail.

If you or anyone at the Commission have any questions concerning this matter, please contact me.

Theodore D. Frank
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206

Telephone: +1 202.942.5750
Cell Phone: 301-275-9049
theodore.frank@aporter.com
www.arnoldporter.com

U.S. Treasury Circular 230 Notice

Any U.S. federal tax advice included in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding U.S. federal tax-related penalties or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com


Exhibit 79

1



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*90 K Street, N.E.*
*Washington, D.C. 205301*

*Telephone: (202) 346-7000*
*Facsimile: (202)357-1085*

November 8, 2011

Theodore D. Frank
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004

Dear Mr. Frank:

   With this letter, the Parole Commission is providing you with copies of letters recently submitted to the Commission on Mr. Bowers's case. The letters are identified as follows: (1) a letter from a person opposing parole dated October 2, 2011; (2) a letter from Tonie Patrick Lee dated October 3, 2011; (3) a letter from the National Park Service dated October 13, 2011; (4) a letter from the Fraternal Order of Police dated October 14, 2011; and (5) a letter from the U.S. Department of Justice dated October 10, 2011. We have redacted personal identifying information from letter (1) at the request of the writer. We have also withheld disclosure of a letter dated October 1, 2011 from a member of the Patrick family due to a determination that the writer intended that the letter remain confidential. The letter has no information on the facts of Mr. Bowers's offense, criminal history or the record of his incarceration. Instead, the letter describes the characteristics of Ken Patrick and the pain his murder caused the Patrick family. The writer does conclude the letter with a recommendation against release and an expression of fear for the safety of Patrick family members in the event that Mr. Bowers is released.

   If you have any comments concerning the views and recommendations made in these letters, please send your comments to the Commission by November 25, 2011. Your comments will be considered in the re-vote to be conducted for Mr. Bowers. The date of the re-vote has yet to be set. If you want to telefax your letter, the fax number is (202) 357-1085. You may also send the letter as an email attachment to Amanda.K.Pyron@usdoj.gov.

   This notice is the only notice being sent to the attorneys who have represented Mr. Bowers.

Sincerely,

**Exhibit 80**

Stephen J. Husk
Case Operations Administrator

# ARNOLD & PORTER LLP

Theodore D. Frank
Theodore.Frank@aporter.com

+1 202.942.5790
+1 202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

November 21, 2011

RECEIVED

NOV 2 8 2011

U.S. Parole Commission
Legal

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**VIA E-MAIL (AMANDA.K.PYRON@USDOJ.GOV)**

NOV 2 8 2011

U.S. Parole Commission

Mr. Stephen J. Husk
Case Operations Administrator
United States Parole Commission
90 K Street, N.E.
Washington, D.C. 205301

      Re:   Veronza L. Bowers, Jr., Reg. No. 35316-136

Dear Mr. Husk:

      We are writing in response to your letter of November 8, 2011 to Theodore D. Frank transmitting four letters received by the United States Parole Commission (the "Commission") in response to your September 29, 2011 letter soliciting comments on whether to "re-vote" on Mr. Bowers' case and advising us of a fifth letter, which has not been disclosed (collectively, the "Response Letters"). We have the following comments on your letter, the relevance of the Response Letters, and the Commission's consideration of the Response Letters in the context of its decision to "re-vote" the May 17, 2005 decision granting Mr. Bowers' release on mandatory parole.

      1.    As noted in our letter of October 15th, any consideration of any materials generated after May 17, 2005 is a violation of the mandate of the United States Court of Appeals for the Eleventh Circuit ("Court of Appeals").[1] The Court of Appeals "direct[ed] the district court to return this case to the Parole Commission *in its posture as of May 17, 2005,*" and "[u]pon return, the Parole Commission shall immediately review Bowers' *file* to determine whether any further action is necessary or *authorized.*" (Emphasis added.) That language manifestly does not permit the Commission to

---

[1] On November 4, 2011, the United States District Court for the Northern District of Georgia adopted the Court of Appeal's mandate as its own. *See* Order, Case No. 1:08-cv-2095-JOF-SSC. However, for consistency in our letters, we will refer to the "Mandate" as the Court of Appeals' mandate.

Exhibit ___81___

# ARNOLD & PORTER LLP

Mr. Stephen J. Husk
Case Operations Administrator
United States  Parole Commission
November 21, 2011
Page 2

consider *anything* but the record *as of May 17, 2005*. The Commission's solicitation and consideration of the Response Letters is a clear violation of the Mandate.

      2.    Even assuming *arguendo* that the Commission can solicit and consider the Response Letters, there is nothing in these Letters that would warrant a different result than reached in May 2005.  That proceeding was a special reconsideration proceeding and, under 28 C.F.R. § 2.28(f), its purpose was to determine whether the materials submitted by Ms. Lee and the other undisclosed commentators provided new information which warranted reconsideration of the Commission's January 2005 decision to grant Mr. Bowers mandatory parole under 28 U.S.C. §4206(d).  *Schiselman v. U.S. Parole Comm'n*, 858 F.2d 1232, 1239 (7th Cir. 1988) (quoting *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981).  As the Commission's Hearing Examiners found, and as the Commission necessarily agreed in granting Mr. Bowers' parole in May 2005, neither Ms. Lee nor any other commentator provided anything new that would warrant a different outcome.

      The Response Letters consist of the following: Ms. Lee's letter, a letter dated October 1, 2011 for which neither the author nor the content[2] has been disclosed, the Department of Justice letter and attachments, a letter from the Fraternal Order of Police, and a letter from the Department of Interior.  All of the information contained in the Response Letters, with the exception of the Department of Justice letter, is a rehash of old claims about the nature of the crime (which is not relevant under Section 4206(d)), Mr. Bowers' assertion of his innocence, his aborted escape attempt in 1979, the letter he wrote to Ms. Lee, and claims that, because he views himself as a "political prisoner," he has demonstrated a hatred towards the United States and is therefore likely to commit another crime.[3]  In 2005, five Commission Hearing Examiners recommended release on

---

[2] Your letter states that that letter "has no information on the facts of Mr. Bowers' offense, criminal history or the record of his incarceration."  As such, we assume that there is nothing in that letter which would support a Commission determination to deny Mr. Bowers a parole, notwithstanding the author's recommendation that Mr. Bowers remain in custody.  If that assumption is incorrect and the Commission concludes that it may lawfully proceed along its current path, we request that the Commission amplify the summary of that letter so that Mr. Bowers can address the charges.

[3] In addition to prior claims concerning Mr. Bowers' escape attempt, his assertion of innocence, and the letter he mistakenly wrote to her, Ms. Lee makes a number of vague, unsubstantiated, hearsay claims concerning Mr. Bower's alleged violation of prison rules and argues that the Bureau of Prison's decisions to move Mr. Bowers from one prison to

Footnote continued on next page

# ARNOLD & PORTER LLP

Mr. Stephen J. Husk
Case Operations Administrator
United States  Parole Commission
November 21, 2011
Page 3

mandatory parole.  During the special reconsideration proceedings, which resulted in the May 17, 2005 decision, all three Hearing Examiners who were reviewed the record carefully considered these same claims and *unanimously* found they did not provide any new information relevant to reconsideration of the Commission's January 2005 decision. On May 17, 2005, a majority of the Commission was not convinced that these claims warranted reconsideration of the January decision and on that basis Mr. Bowers' parole was affirmed.  Accordingly, there is nothing in these Response letters that would justify the Commission reaching a different conclusion than the conclusion reached on May 17, 2005.

       3.      With respect to letter from the Department of Justice, the legal arguments contained in it and in attachments to the letter, were made to the Commission after May 17, 2005.  Given the Court of Appeals' Mandate, they cannot be considered in connection with the Commission's decision to revote its May 17, 2005 decision.  Further, these materials were previously submitted as part of an appeal by the Attorney General that was not authorized by the Parole Act and agency regulations.  Considering the appeal under the guise of a "re-vote" does not cure the lack of legal authority for the appeal.

       Moreover, the Department's argument is inconsistent with the express language of Section 4206(d).  That Section provides that a prisoner who has served the appropriate

---

Footnote continued from previous page

another implies that he was guilty of serious misconduct. (*See* Letter dated Oct. 3, 2011 from Tomie Patrick Lee to Commissioner Issac [sic] Fulwood at p. 2.)  Not only are these claims of misconduct inconsistent with the Bureau of Prison's records and the findings of the Commission's Hearing Examiners (*see, e.g*, Hearing Summary, dated Dec. 21, 2004, at p. 3, Hearing Summary, dated March 21, 2005, at p. 5), they are also insufficient as a matter of law to support any adverse finding with respect to Mr. Bowers.  As the Court held in *Bowers v. U.S. Parole Comm'n* 996 F.2d 1223, 1993  WL 239590, at *1 (9th Cir. 1993), denying parole on the grounds of "uncorroborated hearsay statements by a confidential informant" is a violation of a prisoner's due process rights (citing *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)); *see Kyle v. Hanberry,* 677 F.2d 1386, 1390 (11th Cir. 1982) (Commission must have evidence of reliability of hearsay information from an unidentified source to impose severe sanction); *see also Crawford v. Jackson*, 323 F.3d 123, 128-29 (D.C. Cir.) (hearsay evidence must be shown to be reliable), *cert. denied*, 540 U.S. 856 (2003); *Zimmerlee v. Keeney*, 831 F.2d 183, 186-87 (9th Cir. 1987), *cert. denied,* 487 U.S. 1207 (1988) (reliance on unidentified informants evidence justified because the record evidence contained reliable supporting evidence).

# ARNOLD & PORTER LLP

Mr. Stephen J. Husk
Case Operations Administrator
United States  Parole Commission
November 21, 2011
Page 4

period of time shall be released on parole unless the Commission finds that "he has seriously or frequently violated institution rules and regulations."  Contrary to the Department's claim, the section does not permit the Commission to deny mandatory parole for a violation of a serious rule, but rather requires that the Commission find that Mr. Bower "seriously … violated institution *rules* and *regulations*" before it may deny his parole.  A single rule violation does not satisfy that requirement, and it manifestly doesn't satisfy that requirement when the violation is 33 years old and the inmate has not been cited for a single violation of a prison rule in 23 years, as is the case for Mr. Bowers.

<div align="center">*          *          *</div>

In addition to our objections to the Commission's solicitation and consideration of the Response Letters, we further object to the *ad hoc* procedures the Commission is using to consider Mr. Bowers' case, which raise serious issues as to the legality of the Commission's actions.  Your September 29th letter stated that the "Commission is now determining whether it should re-vote on Mr. Bowers' case under 28 C.F.R. § 2.63(b) to resolve the impasse that existed in May 2005."[4]  However, before our comments on the September 29th letter were due, we received a Notice of Action dated on October 12th advising that the Commission had decided to re-vote the May 17, 2005 decision. We subsequently learned that this decision was actually made on October 7, 2011 by the two Commissioners who had participated in the May 17, 2005 decision. We do not understand either these inconsistent statements or the precipitous action of the Commission with respect to the decision to revote.

In addition, on November 1, 2011, we received the Commission's "Notice Of Filing Notice of Action Pursuant to Decision of Eleventh Circuit Court Of Appeals and Motion To Dismiss," arguing that the remand now pending before the District Court is moot because the October 12, 2011 Notice of Action fulfilled the Commission's obligations under the Court of Appeal's Mandate.[5]  Even though the Court's Mandate

---

[4] We note that there was no "impasse" in May 2005; the vote was 2-2. As the Commission's General Counsel advised, that vote meant that the Commission did not make the findings required under Section 4206(d) and that Mr. Bowers was entitled to a parole.

[5] Mr. Bowers is opposing that motion.  A copy of the Opposition filed on November 18, 2011 is attached.

# ARNOLD & PORTER LLP

Mr. Stephen J. Husk
Case Operations Administrator
United States Parole Commission
November 21, 2011
Page 5


ordered the Commission to act in accordance with the Parole Act and its regulations, none of the procedures the Commission has followed in the issuing its Notice of Action on the revote are set forth in the Act or in the Commission's regulations. From what we can tell, the Commission is continuing to make up rules in this matter on an *ad hoc* basis. Without adequate notice of the Commission's proposed procedures, we are at a loss to assess how best to defend Mr. Bowers against the latest examples of the Commission's arbitrary, capricious and unlawful actions with respect to our client. As the Commission is well aware, such arbitrary and capricious actions violate fundamental notions of due process.

In sum, for the reasons set forth above and in our letter of October 14th, we submit that the Commission must vacate the steps it has taken to date purportedly in respond to the Court of Appeals Mandate and revisit its May 17, 2005 action based on the record on file as of that date. Based on that file record, Mr. Bowers must be granted parole under Section 4206(d), subject only to a determination whether he has seriously or frequently violated institution rules and regulations since May 17, 2005.

Sincerely yours,

Theodore D. Frank

Charles D. Weisselberg

Bryan Gaynor
Counsel for Veronza L. Bowers, Jr.


Enclosure

**Declaration of Rockne Chickinell**

I, Rockne Chickinell, declare as follows.  I am the General Counsel of the United States

Parole Commission, 90 K Street, N.E., Washington, D.C. 20530.  I am familiar with the

procedures used in the recent re-vote in the case of Veronza Bowers, Register Number 35316-

136.

On October 4, 2011, Vice Chairman Cranston Mitchell and Commissioner Patricia

Cushwa signed an order that authorized a re-vote for Mr. Bowers pursuant to 28 C.F.R. §

2.63(b)(3).  (See attachment A). The two Commissioners were the only Commissioners

remaining from the membership who voted on Mr. Bowers's case in April and May 2005.  The

Commission issued a notice of action regarding the ordered re-vote for Mr. Bowers on October

12, 2011.  (See attachment B).  On October 14, 2011, the Commission received a letter from Mr.

Bowers's representatives objecting to the re-vote and arguing that if a re-vote were held, the

Commission was required to take measures to purge the taint of former Commissioner Deborah

Spagnoli's actions in his case.  (See attachment C).

On November 8, 2011, the Commission disclosed to Mr. Bowers's representatives  letters

submitted by persons and organizations opposed to a parole for Mr. Bowers.  (See attachment D).

The Commission withheld personally identifying information from one letter and did not disclose

one letter to protect the confidentiality of the communication.  Mr. Bowers's representatives were

informed that they could submit written comments on the submissions by November 25, 2011.

The representatives sent their comments in a letter dated November 21, 2011, including a copy of

their opposition to the government's motion to dismiss in Mr. Bowers's litigation.  (See

attachment E).

At some point in November I removed the following documents from Mr. Bowers's

Exhibit ___82___

parole file and maintained these documents in a separate folder in my office up to the date of this declaration:  (1) a memorandum from Commissioner Spagnoli to "File" dated April 19, 2005; (2) an unsigned memorandum from Spagnoli to Chairman Reilly and Commissioner Cushwa dated August 8, 2005; (3) a note from Spagnoli to Reilly dated August 9, 2005 and a signed copy of the August 8, 2005 memorandum to Reilly and Cushwa; (4) a memorandum dated October 5, 2005 from Spagnoli to Reilly, Mitchell and Cushwa on "Opinion re: Veronza Bowers, Reg. No. 35316-136"; (4) findings by Spagnoli dated October 6, 2005 regarding the review and reconsideration of the Attorney General's request; and (5) two copies of a June 1, 2005 memorandum for the Deputy Attorney General from Spagnoli (unsigned) on whether the Attorney General should appeal the decision to parole Mr. Bowers.  (The June 2005 memorandum was revealed to the Commission as a result of a referral from the Justice Department's Office of Information and Privacy in August 2007 and then placed in Mr. Bowers's parole file.)

In the week before the re-vote in December 2011, Mr. Bowers's parole file was presented to the three voting Commissioners for their review without the materials I had removed from the file.  Upon information and belief, Commissioner Patricia Smoot had never reviewed Mr. Bowers's file before the file was delivered to her in December 2011.  (The Spagnoli materials were available to Vice Chairman Mitchell and Commissioner Cushwa when they authorized the re-vote on October 4, 2011.)

The Commission conducted the re-vote for Mr. Bowers during the closed session of the Commission's regularly-scheduled quarterly business meeting on December 8, 2011.  The voting members were Vice Chairman Mitchell, Commissioner Cushwa and Commissioner Smoot.  All three members voted to deny Mr. Bowers parole due to their finding that he had seriously

violated prison rules by attempting to escape from a secure institution in August 1979. See

attachment F. On December 15, 2011, the Commission amended the December 8 order to add

standard wording used in mandatory parole denials and then issued a notice of action regarding

the determination. See attachments F and G. The notice informed Mr. Bowers that he had 30

days from the date of the notice of action to file a petition for reconsideration with the

Commission under 28 C.F.R. § 2.27.

      Under penalty of perjury, I declare that the above statements are true and that the

attachments to this declaration are true copies of materials found in Mr. Bowers's parole file.


Dated: December 23, 2011        Signed: _Rockne Chickinell_

                                  Rockne Chickinell
                                  General Counsel, U.S. Parole Commission



# U.S. DEPARTMENT OF JUSTICE
## U.S. Parole Commission

## ORDER

**Name:**   Bowers. Veronza

**Reg. No:**   35316-136`                    **Institution:**   USP Atlanta

In the case of the above-named, the Commission has carefully examined all the information at its disposal and the following action is hereby ordered:

Deny Mandatory Parole. *and Continue to Expiration.*  *Cpm 12.15.11*
*AJW 12-19-11*
*PKC 12-15-11*

Reason:  You seriously violated prison rules when you attempted to escape from a secure institution in August 1979.

*Ernest Mitchell 12-8-11*
*Katrina White 12-8-11*
*Patricia Cushwa*
*12-8-11*

Date _____

Date: _____

_____
*(Date Notice Sent)*

Exhibit **83**

National Appeals Board _____
_(check)_

Regional Commissioners _____
_(check)_

Parole Form H-6
December 2004

U.S. Department of Justice                          **Notice of Action**
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

| | |
|---|---|
| Name: BOWERS, Veronza | Institution: Atlanta USP |
| Register Number: 35316-136 | Date: December 15, 2011 |

In the case of the above-named, the following action was ordered:

Deny mandatory parole. Continue to expiration.

## REASONS:

Reasons: As a result of a re-vote taken at the closed session of the Commission's quarterly business meeting on December 8, 2011, the Commission determined that you should be denied parole under the criteria of 18 U.S.C. § 4206(d).

1. The Commission found that you seriously violated prison rules by your attempted escape in August 1979. The violation was serious because your attempt had the potential of causing significant unrest and disruption among the population of a secure institution. Other prisoners were in the yard at the time you and another prisoner scaled the inner fence and were trapped between the inner and perimeter fences. Your attempt drew gunfire from tower guards. Your fellow escapee was wounded by the gunfire. The passage of time does not diminish the gravity of this rule violation.

2. The Commission did not find that you have frequently violated prison rules.

3. For now, the Commission has withheld any finding on the criterion of whether there is a reasonable probability that you would commit another federal, state or local crime if you were paroled. A finding on this matter should not be made until you have the opportunity to have a hearing with a Commission hearing examiner and the examiner discusses with you your current views concerning issues such as your culpability for the murder, and your attitudes toward the government and its officers. In 2008 you waived an interim hearing. You must re-apply for an interim hearing if you want the opportunity to personally discuss your case and the above issues with a Commission examiner. Otherwise the Commission may decide to examine this criterion only on the basis of a record review.

You may submit a petition for reconsideration of this decision within 30 days of the date of this notice of action. See 28 C.F.R. § 2.27. You should send the petition to United States Parole Commission, 90 K St. N.E., Washington, D.C. 20530, Attn: Patricia Moore, Assistant to the Chairman.

You will be scheduled for an interim hearing after you re-apply for parole consideration.

**Exhibit 84**

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     Designation & Sentence Computation Ctr
        U.S. Armed Forces Reserve Complex
        Grand Prairie Office Complex
        346 Marine Forces Drive
        Grand Prairie, TX  75051



# ARNOLD & PORTER LLP

**Theodore D. Frank**
Theodore.Frank@aporter.com

202.942.5790
202.942.5999 Fax
301.275.9049 Cell

555 Twelfth Street, NW
Washington, DC 20004-1206

January 13, 2012

JAN 1 3 20

RECEIVED

JAN 1 8 2012

U.S. Parole Commission
Legal

HAND DELIVERY

United States Parole Commission
90 K Street, NE, Third Floor
Washington, D.C. 20530

ATTN: Patricia Moore, Assistant to the Chairman

    Re:   <u>Veronza L. Bowers, Jr., Reg. No. 35316-136</u>

Dear Ms. Moore:

    On behalf of Mr. Veronza L. Bowers, I am submitting herewith his Petition for Reconsideration of the Commission's Notice of Action dated December 15, 2011 denying him mandatory parole.

    If there are any questions concerning this matter, please let me know.

Very truly yours,

Theodore D. Frank
*One of Mr. Bowers' Counsel*

Enclosure

RECEIVED

JAN 1 8 2012

U.S. Parole Commission
Legal

Exhibit ___85___

U.S. Department of Justice                                    Notice of Action on Appeal
United States Parole Commission
90 K Street, N.E., 3rd Floor
Washington, D.C. 20530

Name:  Bowers, Veronza                          Institution:   Atlanta USP

Register Number: 35316-136                      Date:          March 9, 2012

The Commission examined the petition of the above named and ordered the following:

Affirm the previous decision.


**REASONS:**

      The Commission has reconsidered the procedural objections you have raised concerning the re-vote in your case and finds that the decision to deny you mandatory parole should be affirmed.  The Commission did not violate the mandate of the U.S. Court of Appeals for the Eleventh Circuit by considering information that entered the administrative record after May 17, 2005, or by interpreting the statute at 18 U.S.C. § 4206(d) to deny you parole due to its finding that you committed a serious rule violation in 1979.

      First, the Court of Appeals did not limit the scope of the Commission's re-examination of your case, if the Commission elected to reconsider your case.  The court did not order the Commission to restrict any further agency review to whether there was new adverse information to reopen your case.  The court approved the Commission's first reopening of your case in February 2005.  Bowers v. Keller, 651 F.3d 1277, 1292 (11th Cir. 2011).  As stated in 28 C.F.R. § 2.28(f), this reopening vacated the previous parole decision.  Nothing in the Commission's statutes and rules prohibited a full reconsideration of your case after your case was reopened.

      Second, the court's opinion did not place any limit on the information that the Commission could review if it decided to review your case again.  The decision only instructed the Commission to commence its review as the case existed in its posture on May 17, 2005, when there was an impasse in the voting on granting or denying parole.  The decision did not prohibit the Commission from considering documents that were made part of the record after May 17, 2005 or from soliciting more views and recommendations on your case after the court's decision.  Even so, a review of the administrative record shows that a critical conclusion underlying the parole denial under review, i.e., that the passage of time did not diminish the severity of your 1979 rule violation, was suggested in the letters submitted by Ranger Patrick's widow and another source before your special reconsideration hearing in March 2005.  See 651 F.3d at 1285.  The Commission's statutes and rules did not restrict the Commission from using information submitted after May 17, 2005 if it undertook a re-vote.

      Third, the Court of Appeals refrained from ruling on the disputed interpretation of § 4206(d).  Therefore, the Commission did not violate the court's mandate in considering any arguments supporting this interpretation.  The proper interpretation of § 4206(d) was an open question even after the August 26, 2011 opinion and the Commission was free to review any arguments and information that would assist the Commission in resolving the issue.  Again, the Commission's statutes and rules did not prohibit the Commission from considering arguments regarding the proper interpretation of § 4206(d) if these arguments were submitted after May 17, 2005.

Exhibit **86**

The court's mandate did not require that the Commission employ any extraordinary measures to ensure that any reconsideration of your case would be insulated from the allegedly prejudicial effects of the actions of former Commissioner Spagnoli. The Court of Appeals rejected your claim that the actions of Commissioner Spagnoli affected the impartiality of the other voting Commissioners such that they could not be entrusted with fairly and impartially deciding your case after a remand to the agency. 651 F.3d at 1296.

In your petition, you assert that the Commission's interpretation of § 4206(d) is inconsistent with the plain language of the statute, the statute "taken as a whole" and the Court of Appeals holding. You claim that the plain language of the statute requires that the Commission must point to more than a single violation of institutional rules to justify a parole denial. The phrase "institutional rules and regulations" only describes those guidelines for conduct that a prisoner must follow; this phrase is the object of the verb "violated." The phrase does not modify the verb "violated" in the last sentence of § 4206(d) and does not require that the Commission find more than one serious rule violation before denying parole under § 4206(d).

You do not explain in the petition why the statute "taken as a whole" or the statute's structure requires the Commission to adopt a different interpretation of § 4206(d). Your argument that your institutional record should be looked at in its entirety does not explain how the Commission should interpret the statute in its entirety. As noted above, the Court of Appeals did not render any "holding" regarding an interpretation of § 4206(d).

Finally, you ask that the Commission reconsider its decision to withhold a finding on whether your release would pose a reasonable probability of further criminal conduct and claim that any decision that your release would still pose such a risk would be arbitrary and capricious. In the Commission's view, it would be premature for the Commission to proceed with a finding on this issue without conducting a hearing with you. During the votes in April and May 2005, the issue of your criminal recidivism was an important consideration for one of the Commissioners who remain from the group of Commissioners who participated in that vote. The Commissioner's concern was based, in part, on your apparent hostility toward the United States government and its officers. A decision on the continuing risk your release may pose to the public should not be made without hearing from you on this and other related topics. You have waived a parole hearing since December 2008. If you reapply for parole consideration and have a hearing, then the Commission will be better able to make a finding on the risk of criminal recidivism in your case, considering both your former and more current statements on your attitude toward government and its officers.



PETITION FOR RECONSIDERATION
~~APPEAL~~

**U.S. Department of Justice**
**United States Parole Commission**

Name <u>VERONZA BOWERS, JR.</u>

Register No. <u>35316-136</u>          Institution <u>USP Atlanta</u>

I received a Notice of Action dated <u>December 15, 2011</u> and appeal that decision under 28 C.F.R. §2.26 and/or §2.220.

<u>Veronza Bowers Jr.</u>          <u>January 13, 2012</u>
*(Signature)*                              *(Date)*

**INSTRUCTIONS:**

**Eligibility to file the appeal.** This appeal is available only to: (1) a U.S. Code offender who is eligible for parole (including a military offender); (2) a D.C. Code offender whose term of supervised release has been revoked; (3) a transfer treaty offender who committed the foreign offense before November 1, 1987; and (4) a state offender who is under the Commission's jurisdiction pursuant to 18 U.S.C. §3522.

**Procedures.** The appeal must be mailed to the Commission within 30 days from the date on the Notice of Action. The permissible grounds for appeal are described below. On page two of this form you must provide a brief summary of all the grounds for your appeal. On page three of this form you must provide a statement of the facts and reasons in support of each ground identified in your summary. Continuation pages are permitted for longer appeals. You may provide any additional information in an addendum to your appeal. The Commission may refuse to consider any appeal which does not follow this format. The appeal will be decided on the record, and you will be notified of the Commission's decision through a Notice of Action. Do not submit multiple copies of your appeal, and do not submit documents which are in the Commission's file.

**Mailing address.** You should mail the appeal to U.S. Parole Commission, Appeals Unit, 5550 Friendship Boulevard, Chevy Chase, MD 20815-7201.

**Permissible grounds for appeal.**

(a) The Commission relied on erroneous information, and the actual facts justify a different decision.

(b) There was significant information in existence but not known to me at the time of the hearing, and a different decision would have resulted if the information had been presented.

(c) The Commission made a procedural error in my case, and a different decision would have resulted if the correct procedure had been followed.

(d) The Commission applied a statute or regulation incorrectly (e.g., in determining my period of imprisonment as a supervised release violator, and/or my further term of supervised release).

(e) The Commission made an error in applying the guidelines (error in offense severity rating, salient factor score, and/or calculating time in custody).

(f) A decision outside the guidelines was not supported by the reasons or facts stated in the Notice of Action.

(g) There are especially mitigating circumstances in my case which justify a different decision.

## SUMMARY OF GROUNDS FOR APPEAL

Instructions: Briefly describe the error which you believe to have occurred, or the specific reason for the Commission to give you a different decision. You do not need to repeat the "ground for appeal" (from Page 1) which applies. Try to list your most important grounds for appeal first.

Ground One: _____ SEE ATTACHED MEMORANDUM _____

_____

_____

_____

_____

Ground Two: _____ SEE ATTACHED MEMORANDUM _____

_____

_____

_____

_____

Ground Three: _____ SEE ATTACHED MEMORANDUM _____

_____

_____

_____

_____

Ground Four: _____

_____

_____

_____

_____

Note: You may present as many grounds for appeal as you believe necessary. If you have more grounds for appeal than you can summarize in the space provided, you may complete your summary on a continuation page.

An electronic version of this form can be down-loaded from the Commission's website, www.usdoj.gov/uspc. This form must be used for all appeals filed on or after September 1, 2003.            Page 2 of 4            Parole Form I-22 (August 2003)

# MEMORANDUM IN SUPPORT OF

# PETITION FOR RECONSIDERATION ON BEHALF

# OF VERONZA L. BOWERS, JR., REG. NO. 35316-136

**Submitted by**

Theodore D. Frank
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Tel:  (202) 942-5790
Fax:  (202) 942-5999

Bryan Gaynor
1160 G Street, Suite A
Arcata, CA 95521
Tel:  (707) 826-8544
Fax:  (707) 826-8545

Charles D. Weisselberg
Mailing address:
University of California
School of Law
Berkeley, CA 94720-7200
Tel:  (510) 643-8159
Fax:  (510) 642-3856

Representatives for Veronza L. Bowers, Jr.

## MEMORANDUM IN SUPPORT OF PETITION FOR RECONSIDERATION

Pursuant to 18 U.S.C. §4215 and 28 C.F.R. §2.27, Veronza L. Bowers, Jr. seeks reconsideration of the original jurisdiction decision of the U.S. Parole Commission ("Commission") denying his release pursuant to 18 U.S.C. §4206(d). The Commission's decision was made on December 8, 2011, and the Commission's Notice of Action was issued on December 15, 2011.  His petition for reconsideration is submitted within thirty days of the Notice of Action, as provided under Rule 2.27.

Because the Commission is familiar with Mr. Bowers' case and Mr. Bowers has previously submitted materials to the Commission, this petition will not repeat the points he has already made.  Mr. Bowers' prior submissions, dated October 14, 2011 and November 21, 2011, are appended to this Memorandum as Attachments A and B respectively, and are expressly incorporated herein.  In Ground One of this petition, Mr. Bowers asks the Commission to reconsider its December 8 decision for the reasons set forth in the prior submissions.  Grounds Two and Three provide additional reasons for reconsideration.

**Ground One:**  The Commission should reconsider its December 8 decision for the reasons expressed in Attachments A and B, the letters dated October 14, 2011 and November 21, 2011.  While these documents were submitted to the Commission

prior to the December 8 decision, the facts and arguments expressed in the submissions apply with equal force to the events leading up to the December 8 decision and to the decision itself.

As set forth more fully in those Attachments, the December 8 decision should be reconsidered for reasons that include: (a) the Commission failed to follow the correct procedures; (b) the decision to conduct a "re-vote," and the "re-vote" itself, were both improper as they were based on a different record than that before the Commission on May 17, 2005, contrary to the requirements of the mandate in *Bowers v. Keller*, 651 F.3d 1277 (11th Cir. 2011), and the materials elicited by the Commission contain erroneous, unreliable and unsupported allegations; (c) the Commission violated or incorrectly applied the Parole Act, agency regulations, the Administrative Procedure Act and the Constitution; (d) the Commission improperly converted a reconsideration hearing into a de novo proceeding; (e) the Commission failed to take appropriate actions to purge the taint of Commissioner Spagnoli's actions; and (f) the Commission failed to ensure unbiased and independent decision-making.

**Ground Two:** The Commission erred in finding that Mr. Bowers' 1979 attempted escape makes him ineligible for release on mandatory parole under the criteria of 18 U.S.C. §4206(d). The Commission should reconsider its decision and

determine that, in light of his entire institutional record, Mr. Bowers has not "seriously . . . violated institution rules and regulations."

In its deliberations prior to June 14, 2005, the Commission did not find that Mr. Bowers "seriously . . . violated institution rules and regulations," and he was thus ordered to be released on mandatory parole pursuant to Section 4206(d).  On June 14, 2005 the Commission reopened its decision to grant mandatory parole and, on October 6, 2005, reversed itself.  As the Court of Appeals held, both the June and October 2005 decisions were improperly tainted by the actions of Commissioner Spagnoli.[1]

Mr. Bowers asks the Commission to reconsider its December 8 construction of the mandatory parole statute, apply the interpretation of Section 4206(d) that it has applied since the Parole Act was enacted, and hold that he is entitled to mandatory parole.  The Commission's recent conclusion that Mr. Bowers has "seriously violated" institution rules remains tainted by the actions of Commissioner Spagnoli, is arbitrary, capricious and based upon impermissible considerations for the reasons found by Magistrate Judge Cole[2] and is—Mr. Bowers believes—influenced by political pressure.[3]

---

[1] *Bowers v. Keller*, 651 F.3d at 1295-96.
[2] Final Report and Recommendation and Order, *Bowers v. Grayer*, No. 1:08-CV-2095-CAM-SSC (June 4, 2009) ("Report and Recommendation"), at 51-57.
[3] As was the case in 2005, the Commission remains dependent for its continued existence upon the grace of the Attorney General and reauthorizing legislation from Congress.  Indeed, the 2011

Page 3

Moreover, the Commission's construction is inconsistent with the plain language of the statute. The statute refers to institution rules in the plural, not the singular, and the Commission has pointed only to a single infraction—the attempted escape—as the basis for denying release on mandatory parole. Further, the Commission has erred in determining that the passage of time cannot diminish the gravity of a violation. Looking at the statute as a whole, the decision whether a person is ineligible for release on mandatory parole under Section 4206(d) must be made on the basis of the person's behavior over the entire period of incarceration, and not on the basis of an isolated event, in particular one that occurred early in his incarceration. Here, Mr. Bowers' infraction occurred during the fifth year of his incarceration and should be considered in the context of his thirty-seven year record as whole. As the Court of Appeals held, Section 4206(d) "provides more liberal criteria for release on parole for prisoners with long sentences"[4] than Section 4206(a), the provision governing parole decisions prior to the time when Section 4206(d) is applicable. Reading Section 4206(d), as the Commission has, to require the denial of parole for an ancient action, notwithstanding 24 years of incident-free conduct, cannot be reconciled with either the structure of the Act or the Court's holding.

---

legislation to extend the Commission's life was passed by the U.S. Senate shortly after the Commission decided to "re-vote" Mr. Bowers' case.

[4] *Bowers v. Keller, supra* at 1280 (internal quotes omitted)

**Ground Three:** The Commission erred in "with[holding] any finding on the criterion of whether there is a reasonable probability that [Mr. Bowers] would commit another federal, state or local crime if [he is] paroled." Nor is there any need for the Commission to appoint another hearing examiner to examine Mr. Bowers again regarding his "views concerning issues such as [his] culpability for the murder, and [his] attitudes toward the government and its officers." The Commission should reconsider its decision and conclude that there is not a reasonable probability that Mr. Bowers will commit a crime if released on parole.

In January 2005, the Commission issued a Notice of Action granting Mr. Bowers mandatory parole. Agreeing with the unanimous recommendations of Examiners Haworth and Denton, who had considered these issues, Commissioner Mitchell signed the order granting parole. In February 2005, the Commission reopened the case and scheduled a Special Reconsideration Hearing to address again these exact issues. The hearing was held on March 21, 2005, and specific findings in Mr. Bowers' favor were made by Examiner Howard, and later Examiners Husk and Pinner. Although in October 2005 the Commission pointed to these issues as reasons to deny parole, the Commission's October 6, 2005 decision has been vacated.[5] The Magistrate Judge correctly determined that there

---

[5] *Bowers v. Keller*, 651 F.3d at 1295.

Page 5

was no rational basis to find that Mr. Bowers' views indicate that he is likely to

commit a crime, and that any such conclusion was the product of bias, undue

influence, and impermissible considerations.[6]

The Commission should reconsider its decision and instead find that there is

not a reasonable probability that Mr. Bowers will commit a crime if released on

parole. Any contrary determination would be arbitrary, capricious, and the result

of impermissible considerations for the same reasons found by the Magistrate

Judge. Mr. Bowers' decades of incident-free behavior and the positive

psychological evaluation by Mr. Hans Selvog, which were considered by the

previous hearing examiners, all show that Mr. Bowers will not violate the law if

released. Further, conducting additional proceedings and receiving additional

evidence is not authorized by the "re-vote" regulation, 28 C.F.R. §2.63(b)(3), or

any other rule invoked by the Commission. Finally, holding further proceedings to

consider these issues yet again would deny Mr. Bowers due process of law and

violate the Parole Act and agency rules. Mr. Bowers has a liberty interest in

mandatory parole that is protected by the Due Process Clause, which is why the

Parole Act and agency rules provide only a very limited basis for reconsidering a

grant of mandatory parole. The Commission should not incessantly review the

---

[6] Report and Recommendation, at 46-55.

Page 6

same questions already resolved in Mr. Bowers' favor, much less review them in such a result-oriented fashion.

For all of these reasons, the Commission should reconsider its December 8, 2011 decision, and should grant Mr. Bowers release on mandatory parole.

**ATTACHMENT A**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

VERONZA L. BOWERS, JR.,

    *Petitioner,*

        v.

JEFFREY KELLER, WARDEN, and
UNITED STATES PAROLE
COMMISSION,

    *Respondents.*

Civil Action No.
1:08-CV-2095-JOF-SSC

## PETITIONER VERONZA L. BOWERS, JR.'S
## OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

*All non-Georgia counsel pro hac vice:*

Bryan Gaynor (Cal. SBN 47875)
1160 G Street, Suite A
Arcata, CA 95521
Telephone: (707) 826-8544
Facsimile: (707) 826-8545

Charles D. Weisselberg
(Cal. SBN 105015)
University of California,
   Berkeley School of Law
Berkeley, CA 94720-7200
Telephone: (510) 643-8159
Facsimile: (510) 642-3856

A. Stephens Clay (Ga. Bar No. 129400)
C. Allen Garrett Jr. (Ga. Bar No. 286335)
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Theodore D. Frank
(D.C. Bar No. 23903)
Arnold & Porter LLP
555 12th Street, N.W.
Washington, D.C. 20004
Telephone: (202) 942-5790
Facsimile: (202) 942-5999

*Attorneys for Petitioner VERONZA L. BOWERS, JR.*

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................1

II.     STATEMENT OF FACTS ......................................................................2

        A.      The Agency's Unlawful Actions and Prior Court Decisions ...............3

        B.      Post-Decision Developments ...................................................5

III.    ARGUMENT ..........................................................................................8

        A.      THE CASE IS NOT MOOT ..........................................................8

                1.      The Commission Has Failed to Consider the Case in Its Posture
                        as of May 17, 2005, Which the Mandate Requires.....................8

                2.      Under the Mandate and the Mootness Doctrine, the
                        Commission Must Show that It Has Complied with the Law,
                        that Violations Will Not Recur, and that It Has Purged the Taint
                        of Its Prior Violations...................................................................9

                3.      The Commission Cannot Meet Its Burden Under the Mandate
                        and the Mootness Doctrine ...................................................... 111

                        a.      The Commission's Reliance on Section 2.63(b)(3) Is
                                Misplaced.......................................................................12

                        b.      Section 2.63(b)(3) Does Not Include the Procedures the
                                Commission Is Using to Review Mr. Bowers' File or
                                Conduct a "Re-Vote," Contrary to the Mandate.......... 144

                        c.      Section 2.63(b)(3) Does Not Authorize the Commission
                                to Consider Mr. Bowers' Case De Novo or on the Basis
                                of New Information .................................................... 166

                        d.      There Is No Rational Basis for the Commission to
                                Change the Outcome of its May 17, 2005 Decision.... 188

                        e.      Failure to ensure the Commission's independence and to
                                make fair and impartial decisions.................................19

      B.    THE COMMISSION'S RECORD WARRANTS ORDERING
IMMEDIATE RELEASE OR, IF NOT, THIS COURT RETAINING
JURISDICTION TO ENSURE COMMISSION COMPLIANCE
WITH THE MANDATE AND THE LAW ..................................... 222

IV.    CONCLUSION........................................................................................ 255

# TABLE OF AUTHORITIES

## CASES

*Adarand Constructors, Inc. v. Slater,*
    528 U.S. 216 (2000) ................................................................10

*Batterton v. Marshall,*
    648 F.2d 694 (D.C. Cir. 1980) ................................................13

*Billiteri v. U. S. Bd. of Parole,*
    541 F.2d 938 (2d Cir. 1976) ...................................................22

*Bowers v. Holder,*
    No. 5:04-cv-208-Oc-10GRJ (M.D. Fla. Oct. 26, 2004) ..................3

*Bowers v. Keller,*
    651 F.3d 1277 (11th Cir. 2011)....................................... *passim*

*Cnty. of L.A. v. Davis,*
    440 U.S. 625 (1979) ........................................................ 11, 20

*Danforth v. Minnesota,*
    552 U.S. 264 (2008) ...............................................................23

*Fletcher v. Reilly,*
    433 F.3d 867 (D.C. Cir. 2006) ................................................17

*Garner v. Jones,*
    529 U.S. 244 (2000) ...............................................................17

*Harrell v. Fla. Bar,*
    608 F.3d 1241 (11th Cir. 2010)...............................................11

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.,*
    322 U.S. 238 (1944) ...............................................................23

*Holland v. Florida,*
    130 S. Ct. 2549 (2010) ...........................................................23

*Huminski v. Corsones,*
    396 F.3d 53 (2d Cir. 2004) ......................................................................11

*Kastigar v. United States,*
    406 U.S. 441 (1972) ..............................................................................20

*Mickens-Thomas v. Vaughn,*
    321 F.3d 374 (3d. Cir. 2003) ........................................................... 18, 22

*Murphy v. Waterfront Comm'n,*
    378 U.S. 52 (1964) ................................................................................21

*Phillips v. Fulwood,*
    616 F.3d 577 (D.C. Cir. 2010) ..............................................................17

*Rhines v. Weber,*
    544 U.S. 269 (2005) ..............................................................................23

*United States v. W.T. Grant Co.,*
    345 U.S. 629 (1953) ..............................................................................10

**STATUTES**

18 U.S.C. § 4206(d) ......................................................................... 1, 17, 25

28 U.S.C. § 2243 ...................................................................................23

5 U.S.C. § 552(a) ...................................................................................15

5 U.S.C. § 553 ........................................................................................13

**OTHER AUTHORITIES**

28 C.F.R. § 2.63(b) ......................................................................... 5, 12, 18

75 Fed. Reg. 81457-02 (Dec. 28, 2010).......................................... 12, 13

U.S. Const., art. I, § 9, cl. 3 ....................................................................17

Pub. L. No. 112-44, §§ 2, 3 (2011) ........................................................21

## PETITIONER VERONZA L. BOWERS, JR.'S
## OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

Petitioner Veronza L. Bowers, Jr., through his attorneys, hereby submits his

Opposition to the Respondents' "Notice Of Filing Notice of Action Pursuant to

Decision of Eleventh Circuit Court Of Appeals and Motion To Dismiss" ("Motion

to Dismiss"). The case is not moot, and the motion should be denied.

## I.   INTRODUCTION

This case is before the Court on remand from a decision of the Court of

Appeals holding that the United States Parole Commission ("Commission") acted

unlawfully when it halted Mr. Bowers' mandatory parole under Section 4206(d) of

the Parole Act,[1] and then reconsidered and denied Mr. Bowers parole. *Bowers v.*

*Keller*, 651 F.3d 1277 (11th Cir. 2011). The Eleventh Circuit held that the

Commission's actions, undertaken at the request of the Attorney General, were

impermissibly tainted by the bias of Commissioner Deborah Spagnoli and that the

Commission failed to act independently of the Department of Justice ("DOJ"). *Id.*

at 1295. The Court of Appeals directed this Court to remand the matter:

> to the Parole Commission *in its posture as of May 17, 2005*, the date
> of the last Parole Commission action taken *before Commissioner
> Spagnoli's unlawful actions* . . . . In this posture, *Bowers is entitled to
> mandatory parole* based on the May 2005 original jurisdiction

---

[1] 18 U.S.C. § 4206(d).

decision *unless* the Parole Commission takes further action *pursuant to its rules and regulations.*  Upon return, the Parole Commission shall immediately review Bowers' file to determine *ab initio* whether any further action is necessary or authorized.

*Id.* at 1295-96 (emphasis added; footnote omitted).[2]

The Commission has not begun to comply with this mandate.  In fact, the Commission has already violated the mandate by considering material after May 17, 2005 and by employing *ad hoc* procedures that ignore the Parole Act and agency regulations.  Those *ad hoc* procedures also violate the Due Process and Ex Post Facto Clauses of the U.S. Constitution.  In light of the Commission's inability to adhere to the terms of the mandate and its history of unlawful treatment of Mr. Bowers, it should not be given a further opportunity to toy with his freedom.  This Court should order his immediate release.  In the alternative, the Court should, at a minimum, deny the motion and retain jurisdiction to assure Commission compliance with the mandate and the law.

## II.  STATEMENT OF FACTS

The underlying facts of the case are set forth in detail in Magistrate Judge Cole's Final Report and Recommendation and Order ("Report") (Doc. No. 38) and in the Court of Appeals' opinion.  However, in order to set the Motion and this

---

[2] On November 4, 2011, this Court adopted the mandate as its own.  Doc. No. 69.

Opposition in context, set forth below is a summary of the salient facts, including

information that the Commission did not provide in its Motion.

### A.    The Agency's Unlawful Actions and Prior Court Decisions

The Commission's unlawful conduct began in April 2004, when it halted Mr.

Bowers' release on mandatory parole on the very day he was to be discharged.  Mr.

Bowers promptly filed an Emergency Petition for Writ of Habeas Corpus in the

United States District Court for the Middle District of Florida.  That Court held

that, contrary to the Commission's claim, Mr. Bowers had not waived his right to

mandatory parole, ordering the Commission to "immediately review Petitioner's

file to determine whether or not a mandatory parole consideration hearing is

necessary . . ., and, if so, to hold the hearing within 60 days." *Bowers v. Holder*,

No. 5:04-cv-208-Oc-10GRJ (M.D. Fla. Oct. 26, 2004)).

That remand order launched a series of Commission proceedings lasting

almost a year.  The Commission held a parole hearing in December 2004, after

which it voted to grant Mr. Bowers parole, and a special reconsideration hearing in

March 2005 to consider material submitted by the victim's widow and others after

the December hearing.[3]  The March hearing resulted in a Commission decision on

---

[3] The Commission reopened the matter because the victim's widow had not been
given notice of the December hearing.  *Bowers*, 651 F.3d at 1284-85.

May 17, 2005 granting Mr. Bowers mandatory parole (although by a 2-2 vote).

Commissioner Spagnoli actively participated in that proceeding and voted against

Mr. Bowers.  In June 2005, after Commissioner Spagnoli sent a detailed and one-

sided Memorandum to the DOJ,[4] the Attorney General effectively demanded that

the Commission review its May 17 decision.  On June 14, 2005, the Commission

re-opened the case and on October 5, 2005, reversed its decision to grant parole.

Mr. Bowers filed the instant Petition for a Writ of Habeas Corpus in June

2008.  Magistrate Judge Cole, to whom the case was referred, recommended that

the writ be granted and, finding the Commission hopelessly prejudiced,

recommended that Mr. Bowers be released.[5]  The District Court denied the petition

in a two-page summary decision, which did not reverse any of the Magistrate

Judge's findings of fact.  On appeal, the Court of Appeals concluded that the

Commission's actions after May 17, 2005 were unlawful, vacated the decision to

re-open Mr. Bowers' case, and directed the Commission to review the case as of

that date based on the existing record in a manner consistent with the Parole Act

and agency rules. *Bowers*, 651 F.3d at 1295-96.

---

[4] Both the Court of Appeals and the Magistrate Judge called the Memorandum a
"polemic." *See Bowers,* 651 F.3d at 1294.

[5] Report, at 59-60, 62.

## B.   Post-Decision Developments

The Court of Appeals issued its opinion on August 26, 2011.  On September 29, 2011, before the mandate had issued, Stephen J. Husk, the Commission's Case Operations Administrator, faxed a letter to Mr. Bowers' lawyers.  *See* Declaration of Theodore D. Frank ("Frank Decl."), at ¶ 3.[6]  The letter advised:

> The Commission is now determining whether it should re-vote on Mr. Bowers's case under 28 C.F.R. § 2.63(b) to resolve the impasse that existed in May 2005.  *In carrying out this review, the Commission will be considering all the submissions made by your firm and other interested persons and organizations that were sent to the Commission before and after May 2005.*  If you want to submit additional information for the Commission to consider in the course of its review, please send this information to the Commission by October 14, 2011.

Pet. Ex. 128, emphasis added.[7]

On October 4, 2011, just three working days after sending that letter and before the deadline for Mr. Bowers' comments, the Commission changed course and decided to re-vote its May 17, 2005 decision.  The two Commissioners who participated in that decision signed an order stating that "the Commission has carefully examined *all the information at its disposal*" and the agency will

---

[6] The Commission's Motion to Dismiss makes no reference to this letter.

[7] Petitioner's Exhibits 128-132 are attached to the accompanying Frank Declaration.  Petitioner's Exhibits 133 to 135 are attached to the accompanying Declaration of Charles D. Weisselberg.

"[c]onduct a re-vote regarding votes initially made in April and May 2005." Doc. No. 65-3 (emphasis added). Mr. Bowers' counsel was informed of this decision by a Notice of Action dated October 12, 2011. Frank Decl., at ¶ 4; Pet. Ex. 129. Counsel immediately notified the Commission that Mr. Bowers would file a response by October 14, "the date specified in Mr. Husk's letter of September 29, 2011" and would "ask the Commission to reconsider its premature decision to revote." Frank Decl., at ¶ 5; Pet. Ex. 130.

On October 14, 2011, Mr. Bowers filed his substantive response with the Commission. He explained that there was no lawful basis to apply Section 2.63(b)(3) – a regulation adopted during the pendency of this matter – and "re-vote"; that any review or "re-vote" must be based solely on the May 17, 2005 record; and that prior to deciding if there should be a "re-vote," the Commission must remove the taint attributable to Commissioner Spagnoli and the staff under her suasion. Frank Decl., at ¶ 6; Pet. Ex. 131.

On November 9, 2011, Mr. Bowers' counsel received a letter from the Commission attaching letters it elicited from the DOJ, Ms. Tomie Patrick Lee, the Fraternal Order of Police, the National Park Service, and an anonymous individual. The Commission gave Mr. Bowers until November 25 to respond and advised that

the date on which the Commission will "re-vote" has not yet been determined.

Frank Decl., at ¶ 7; Pet. Ex. 132.[8]

The DOJ letter urges the Commission to "re-vote to deny Bowers parole for

the reasons stated in our 2005 submissions, which we attach and resubmit."  Pet.

Ex. 132, at 14.  The letter from the Fraternal Order of Police compares Mr. Bowers

to Mohammed Atta, and argues that "to release Bowers would be a crime in and of

itself."  Pet. Ex. 132, at 12, 13.  Ms. Lee's letter reiterates claims made in her

earlier letters opposing Mr. Bowers' release on parole and includes various hostile,

unspecified hearsay claims from unidentified individuals.  *Id.* at 4-8.

On November 1, 2011, before the mandate was entered by the Clerk of this

Court or the case reassigned to a new judge (following the death of the Honorable

Charles Moye), the Commission filed the instant Motion to Dismiss.  In it, the

Commission seeks to end all judicial proceedings based on its Notice of Action,

thereby avoiding direct judicial scrutiny of its compliance with the mandate.

---

[8] The Commission also advised that it had received another letter from a source
that requested confidentiality and described the contents in general terms. Most of
those letters indicated that they were elicited by the Commission. *See* Pet. Ex. 132,
at 9, 10, 14. To the best of counsel's knowledge, similar requests for input were
not sent to the many individuals who previously contacted the Commission to
support Mr. Bowers' release.

## III.   ARGUMENT

### A.   THE CASE IS NOT MOOT

The Commission argues that the case is moot.  The agency's theory is that it complied with the mandate by issuing a Notice of Action deciding to re-vote the May 17th decision after considering "all the information at its disposal."  But the Commission has not complied with the mandate at all.  It has considered material barred under the mandate and is acting in an entirely *ad hoc* fashion without regard to its rules.  Moreover, under the terms of the mandate, and to obtain dismissal under the mootness doctrine, the Commission must show that it has complied with the law, that violations of law will not recur, and that it has eradicated the effect of its past violations.  The Commission cannot meet this burden.

### 1.   The Commission Has Failed to Consider the Case in Its Posture as of May 17, 2005, Which the Mandate Requires

In its September 29th letter, the Commission advised counsel that it would consider "all the submissions made by your firm and other interested persons and organizations that were sent to the Commission before *and after* May 2005" in deciding "whether it should re-vote."  Pet. Ex. 128 (emphasis added).  On October 4th, the Commission did exactly that, stating its decision to "[c]onduct a re-vote regarding votes made in April and May 2005" was made after "carefully examin[ing] *all* the information at its disposal . . ."  Doc. No. 65-3 (emphasis

added).  The information at its disposal included Commissioner Spagnoli's

memoranda, the Attorney General's appeal, various DOJ filings submitted as part

of the appeal, Assistant General Counsel Thiessen's appeal summary and one-sided

presentation at the October 2005 meeting, and unquestionably other internal

material supportive of the Commission's unlawful October 2005 action denying

Mr. Bowers parole.

Thus, rather than reviewing the case in its posture as of May 17, 2005,

*prior* to the Attorney General's appeal – as the mandate requires – the Commission

effectively considered Mr. Bowers' case in its posture as of *October 2005*, when it

decided the Attorney General's appeal.  That is manifestly *not* what the Court of

Appeals ordered.  The Commission has violated the express terms of the mandate.

> **2.     Under the Mandate and the Mootness Doctrine, the
> Commission Must Show that It Has Complied with the
> Law, that Violations Will Not Recur, and that It Has
> Purged the Taint of Its Prior Violations**

In addition to ordering the Commission to review Mr. Bowers' case in its

posture as of May 17, 2005, the Court of Appeals also required that any further

action by the Commission "must proceed in the manner authorized by the Parole

Act and the Parole Commission's rules and regulations."  *Bowers*, 651 F.3d at

1296.  The Court also expressly held that "Bowers is *entitled to mandatory parole*

based on the May 2005 original jurisdiction decision *unless* the Parole Commission

takes further action *pursuant to its rules and regulations*." *Id.* at 1295-96

(emphasis added). Thus, the default outcome on remand is that Mr. Bowers'

habeas petition must be granted and he must be released on mandatory parole.

Any different outcome is authorized only if the Commission demonstrates

that it has complied with the Parole Act, the Commission's rules, and the

Constitution. Since these provisions also demand a neutral and independent

decision-maker, the Commission also must show that it is able to be independent

and neutral, and that it has eradicated the effect of its prior violations of law,

including the taint of Commissioner Spagnoli's actions.

Requiring the Commission to make this showing is wholly consistent with

established principles of the mootness doctrine, the Commission's ground for

dismissal. Where, as here, a defendant claims to have ceased illegal conduct, a

case is moot *only* if the defendant can affirmatively demonstrate that there is "no

reasonable expectation" that the violation will be repeated. This burden "is a heavy

one." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (citations

omitted). It must be "absolutely clear" that the violation will not recur, and the

burden is on the party asserting mootness. *Adarand Constructors, Inc. v. Slater*,

528 U.S. 216, 224 (2000). In addition, and most critically with respect to this case,

the party must show that "interim relief or events have completely and irrevocably

eradicated the effects of the alleged violation." *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted); *see also Harrell v. Fla. Bar*, 608 F.3d 1241, 1265-68 (11th Cir. 2010) (applying these principles and finding case not moot); *Huminski v. Corsones*, 396 F.3d 53, 94 (2d Cir. 2004) (same).

In contending there is no longer a live case or controversy, the Commission essentially claims that Commissioner Spagnoli's resignation and the decision to "re-vote" necessarily prevent any future wrongdoing, and have "completely and irrevocably eradicated" the effects of all past violations. Accepting this argument, however, effectively would insulate the Commission's claims from judicial review, contrary to well established mootness principles. Given the history of this case and the Court of Appeals' ruling, the appellate court could not have intended to give the Commission such *carte blanche*. As explained below, the Commission cannot make the showing demanded by the mandate and the mootness doctrine; to the contrary, it is poised to make arbitrary and capricious decisions all over again.

### 3.   The Commission Cannot Meet Its Burden Under the Mandate and the Mootness Doctrine

The Commission cannot establish that it is currently complying with the law, that it has eradicated the effect of past actions, and that there is no reasonable expectation that future violations will occur. Specifically:

 

 

 

> a.   *The Commission's Reliance on Section 2.63(b)(3) Is Misplaced*

The Commission purports to be acting pursuant to Section 2.63(b)(3), which

provides that: "The Commission may re-vote on a case disposition to resolve a tie

vote or other impasse in satisfying a voting requirement of these rules."  28 C.F.R.

§ 2.63(b)(3).  The Order adopting the regulation states it was adopted to address

the increased potential of a tie vote since the Commission has only four members.

Paroling, Recommitting, and Supervising Federal Prisoners, 75 Fed. Reg. 81457-

02 (Dec. 28, 2010).  The plain language of the rule and the reason for its adoption

contemplate a relatively contemporaneous recasting of votes based upon the

administrative record that existed at the time the tie-votes were initially cast.  The

rule does not authorize the Commission to "re-vote" on the basis of a different

record, nor does it allow the Commission to solicit and evaluate additional

submissions or evidence on which to "re-vote."  At best, the rule permits the

Commission to "re-vote" in light of the record existing at the time of the tie

decision.  A vote based upon a substantially different administrative record is not a

"re-vote" at all.  *See* Pet. Ex. 131, at 2, 7-8.[9]

---

[9] While the Court of Appeals noted that the Commission had adopted Section
2.63(b)(3), there is nothing in the decision indicating that the Court considered
whether the terms of its remand order would permit the Commission to apply the
rule.  Indeed, the Court stated: "The Parole Commission shall immediately review

Footnote continued on next page

Further, if construed to permit the Commission to solicit and consider new information, the rule would substantially alter Mr. Bowers' rights, transforming it from a procedural into a substantive rule.[10] Since the rule was adopted without the notice and opportunity for comments[11] required by the Administrative Procedure Act for substantive rules, 5 U.S.C. § 553, the new rule cannot be relied upon by the Commission to support its solicitation and consideration of new information. *See* Pet. Ex. 131, at 8-9.

Finally, for a "tie-breaker" provision to apply, the tie assuredly must be the result of a lawful voting process. The Court of Appeals found that Commissioner Spagnoli, who cast one of the two votes opposing parole, acted with actual bias. *Bowers*, 651 F.3d at 1293-95. Her bias predated the May 17, 2005 grant of

---

Footnote continued from previous page
Bowers case to determine whether any further action is necessary *or authorized*." *Bowers*, 651 F.3d at 1296. The Commission must demonstrate to this Court that it acted within its authority in applying Section 2.63(b)(3) to Mr. Bowers.

[10] If the Commission is asserting that Section 2.63(b)(3) allows it to consider the new information, the provision is manifestly not a procedural rule, but a substantive one for which Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553, requires notice and comment. A substantive rule is one that affects the substantial rights or interests of the parties. *Batterton v. Marshall*, 648 F.2d 694, 708 (D.C. Cir. 1980). *See* Pet. Ex. 131, at 8-9.

[11] *See* 75 Fed. Reg. 81457-02 (Dec. 28, 2010).

mandatory parole and her vote cannot be credited.[12]  When the lawful votes of the

unbiased Commissioners are counted, the tally is 2-1 in favor of parole.  There was

no tie and, hence, there is no tie to break.  *See* Pet. Ex. 131, at 5-6.

> b.   *Section 2.63(b)(3) Does Not Include the Procedures the*
> *Commission Is Using to Review Mr. Bowers' File or Conduct a*
> *"Re-Vote," Contrary to the Mandate*

Section 2.63(b)(3) does not give the Commission the ability to proceed as it

has.  The rule only authorizes the Commission to "re-vote."  It does not address the

"re-voting" process, nor are there other rules applicable to the "re-vote."  Under the

mandate, the Commission is required to act pursuant to its rules.  Instead of doing

that, however, the Commission has acted in a totally *ad hoc* fashion without regard

to any rules or established procedures and without notice to Mr. Bowers.

In its initial letter to counsel, the Commission proposed to entertain

comments concerning whether it should "re-vote."  Pet. Ex. 128.  Three business

days later and before the deadline for filing comments, it voted to "re-vote," and to

---

[12] The Court of Appeals noted, as an example of Commissioner Spagnoli's bias,
that her memorandum to the Deputy Attorney General included an allegation that
the Ninth Circuit had instructed the Commission to disregard. *Bowers,* 651 F.3d at
1294; Doc. No. 1, Pet. Ex. 53, at 9.  This same allegation was contained in an
earlier memorandum by her dated April 19, 2005.  Doc. No. 1, Pet. Ex. 43, at 3.
Both memoranda also focused solely on the reasons to deny parole and gave no
consideration to Mr. Bowers' successful efforts to rehabilitate himself or the strong
recommendations he had received from the Commission's Examiners who had
interviewed Mr. Bowers.

consider any new comments on the merits of the "re-vote" itself.  Resp. Ex. 1 & 2.

Subsequently, on November 8, it advised Mr. Bowers that the date on which it

would "re-vote" had not yet been determined.  Pet. Ex. 132.  None of these

procedures are specified in its rules or anywhere else.  By proceeding in this *ad

hoc* manner, the Commission is acting in clear violation of the mandate.

    It also is acting in violation of the Administrative Procedure Act by not

publishing the rules under which it is proposing to act in the Federal Register.

Even assuming *arguendo* that these rules are procedural and not substantive, the

Commission is still required to publish them in the Federal Register so that those

subject to the rules are on notice of them.  5 U.S.C. § 552(a).  It has not done so.

This course of conduct deprives Mr. Bowers of any guidance as to how he can

protect his rights or what rights he might have in this process.

    Finally, that the Commission would proceed in such an unauthorized fashion

is especially troubling in light of the record here.  In 2005, when the Commission

decided to consider the Attorney General's appeal, it created *ad hoc* procedures that

resulted in arbitrary and capricious findings, not rationally based on the record.

Report, at 23-25, 33-37, 46-57.  The Commission is again manufacturing *ad hoc*

procedures not authorized by the Parole Act or otherwise, essentially recreating the

conditions that led to the agency's earlier arbitrary, capricious and irrational

- 15 -

findings. The Commission's *ad hoc* decision-making process cannot be reconciled with the mandate, the Parole Act, or the Due Process Clause; at a minimum, it undermines any claim the petition should be dismissed as moot because there is no reasonable expectation that arbitrary and capricious decision-making will recur.

      c.    *Section 2.63(b)(3) Does Not Authorize the Commission to Consider Mr. Bowers' Case De Novo or on the Basis of New Information*

Section 2.63(b)(3) purports to allow a simple "re-vote." It provides no authority to alter the decisional standard or for the Commission to elicit new information. The May 2005 parole decision, which the Commission seeks to "re-vote," followed a special reconsideration hearing in March 2005. The purpose of the hearing was to determine, pursuant to Section 2.28(f) of the Commission's rules, whether purportedly new information justified a result different than the order to parole Mr. Bowers on February 21, 2005. As the Magistrate Judge found, the May 2005 decision "was procedurally a decision *not* to reconsider its February 2005 decision to grant mandatory parole . . . ." Report, at 50. Thus, the question properly before the Commission in any "re-vote" is whether the information provided during the March 2005 proceeding warrants reconsideration.

However, the Commission's September 29th letter soliciting added input and its October 4th Order stating that it "will reconsider whether it should deny you

parole under the criteria of 18 U.S.C. § 4206(d)" (Doc. No. 65-3), together indicate that it will consider the matter *de novo*. Section 2.63(b)(3) does not authorize the Commission's change in decisional criteria that a *de novo* evaluation will entail. Nor does the rule permit the use of new information.

Further, permitting the Commissioners to review the case *de novo* would violate the Parole Act and the Due Process Clause. When the Commission held its special reconsideration hearing in March 2005, the agency's hearing examiners assessed Mr. Bowers' demeanor and credibility, and weighed his in-person statements against the purportedly new information. By contrast, the Commissioners' *de novo* consideration of the case on the basis of the post-May 17, 2005 filings would deny Mr. Bowers these protections against arbitrary and capricious action. *See* Pet. Ex. 131, at 5-6; Report, at 50-51.

Finally, retroactively applying Section 2.63(b)(3) to Mr. Bowers' case violates the *Ex Post Facto* Clause of the United States Constitution. U.S. Const., art. I, § 9, cl. 3. A "retroactively applied parole . . . regulation or guideline violates [the *Ex Post Facto* Clause] if 'it creates a significant risk of prolonging [an inmate's] incarceration.'" *Phillips v. Fulwood,* 616 F.3d 577, 580 (D.C. Cir. 2010) (quoting *Garner v. Jones,* 529 U.S. 244, 251 (2000), and *Fletcher v. Reilly,* 433 F.3d 867, 877 (D.C. Cir. 2006)). Section 2.63(b)(3) does just that. Without "re-

voting," "a tie vote in making one of the findings required by § 2.53 in a mandatory

parole determination . . . result[s] [in] the prisoner" being granted parole. 28

C.F.R. § 2.63(b)(2). Any "re-vote" of a tie mandatory parole decision necessarily

increases the prospects that parole will be denied. So too does a radical

transformation of the decisional standard, a conversion from a bounded evaluation

of evidence adduced in March 2005 into an unbounded *de novo* appraisal. *See*

*Mickens-Thomas v. Vaughn,* 321 F.3d 374, 387 (3d. Cir. 2003).

> d.    There Is No Rational Basis for the Commission to Change the
>       Outcome of its May 17, 2005 Decision

Although the Commission has decided to "re-vote" its May 17, 2005

decision, there is no rational basis for it to reach a different result. Under the

mandate, the Commission is limited to the record as of May 17, 2005, and thus any

decision other than one granting Mr. Bowers parole must be supported by material

in the file as of that date. The materials recently provided to the Commission by

the DOJ, Fraternal Order of Police, and others demonstrate that there is nothing in

that file that would justify a different decision. These post-May 17, 2005

submissions rehash old arguments and contain the same claims that were rebutted

by the hearing examiners' findings following the March 2005 special

reconsideration hearing.

For example, the DOJ urges the Commission to hold that Section 4206(d) requires a denial of mandatory parole because he attempted to escape in 1979 (some 32 years ago). That interpretation, however, has never been accepted by the Commission. Rather, the Commission has retained discretion to grant mandatory parole to actual escapees. Report, at 51-53. Since the Commission concluded in May 2005 that Mr. Bowers' escape attempt did not disqualify him from parole, there is no basis for the Commission to reach a different conclusion now.

Indeed, when the Commission changed course in October 2005, Magistrate Judge Cole held that the Commission's new construction of the mandatory parole statute was arbitrary and capricious. She also held arbitrary and capricious the Commission's reliance on Mr. Bowers' letter to Ms. Lee and on his claim that he was a "political prisoner." Report, at 51-57. The Court of Appeals did not review these findings, but the Commission never challenged them and the District Court did not set them aside. They continue to apply and preclude any Commission finding that the record as of May 17, 2005 supports denying Mr. Bowers parole.

     e.    *Failure to ensure the Commission's independence and to make fair and impartial decisions.*

Given the Court of Appeals' finding that the Commission's prior decisions were tainted by the bias of Commission Spagnoli and that the Commission had failed to maintain its independence – and especially in light of the agency's recent

- 19 -

disregard of the mandate – the Commission must demonstrate its independence

from the DOJ and that it has insulated its current decisional process from the

prejudice that permeated its earlier decisions.  Although the Court of Appeals

stated that "we believe Bowers will receive a fair and impartial hearing if any

further action is, in fact, taken" by the Commission, *Bowers,* 651 F.3d at 1296, the

Commission's recent actions undermine the basis of the Court of Appeals' belief

and demonstrate the importance of the Commission establishing that it has taken

substantial, serious, and material measures to assure that it will act on an unbiased

and uncontaminated record.  In any event, such a showing is required if this case is

to be dismissed as moot; the agency must prove that it has "completely and

irrevocably eradicated the effects" of the violation.  *Davis,* 440 U.S. at 631.

　　　Because the Commission makes recommendations and decisions on the

basis of a cumulative written record, this obligation to eradicate the effects of

Commissioner Spagnoli's bias must extend both to the written record and to the

individuals who will process and decide Mr. Bowers' case.  The Commission

should be required to meet the standard in *Kastigar v. United States,* 406 U.S. 441

(1972), which establishes a procedure to ensure that trial evidence is not tainted by

immunized testimony.  "[T]he federal authorities have the burden of showing that

their evidence is not tainted by establishing that they had an independent,

legitimate source for the disputed evidence." *Id.* at 460 (quoting *Murphy v.*

*Waterfront Comm'n*, 378 U.S. 52, 79 n.18 (1964)).   If the agency's record is not

purged of all of Commissioner Spagnoli's memoranda, arguments, and influence,

Mr. Bowers will continue to be deprived of a fair proceeding before neutral and

detached agency decision-makers.  In addition, Commission members and staff

must consider whether they can, in good conscience, decide the matter fairly, free

of any influence from Commissioner Spagnoli.  *See* Pet. Ex. 131, at 11-14.[13]

       In sum, this case is not moot.  The Commission has not met, and cannot

meet, its burden to establish compliance with the mandate, the Parole Act, agency

regulations, and the Constitution.  Nor may the Commission show that there is no

reasonable expectation that the violations will not recur, and that it has completely

and irrevocably eradicated the effect of prior violations.

---

[13] The Commission also must show it is independent of the DOJ and positioned to
resist political pressure from such organizations as the Fraternal Order of Police.
The Commission operates on a term-limited basis, with its current term to expire in
two years.  *See* United States Parole Commission Extension Act of 2011, Pub. L.
No. 112-44, §§ 2, 3 (2011).  The opportunity for politically active groups opposing
Mr. Bowers' parole to put pressure on the Commission is manifest.  The timing of
the legislation extending the Commission's term and the Commission's actions in
this case points to such risk.  The most recent extension legislation passed two days
after the Commission's premature October 4th decision to revote its May 2005
decision).  Mr. Bowers will seek to explore any relationship between the two
events in connection with his discovery requests, which will be submitted shortly.

**B.   THE COMMISSION'S RECORD WARRANTS ORDERING
IMMEDIATE RELEASE OR, AT A MINIMUM, THIS COURT
RETAINING JURISDICTION TO ENSURE COMMISSION
COMPLIANCE WITH THE MANDATE AND THE LAW**

As the Court of Appeals held, Mr. Bowers is in custody in violation of

federal law. While the Court did not order Mr. Bowers' immediate release, the

mandate did not cure the illegality of his detention. Rather, the Court gave the

Commission a third chance to address Mr. Bowers' entitlement to mandatory

parole request in accordance with the law.

The Commission already has failed to comply with the mandate. It has not

reviewed Mr. Bowers' case in its posture as of May 17, 2005, and it has proceeded

to reconsider his status without regard to agency rules, the Parole Act, and the

Constitution. Under these circumstances, this Court should acknowledge what

Magistrate Judge Cole concluded: that the Commission is not capable of granting

a fair, unprejudiced review of his eligibility for parole. Report, at 59. Under these

circumstances, release is appropriate. *See, e.g., Billiteri v. U. S. Bd. of Parole*, 541

F.2d 938, 944 (2d Cir. 1976) (release may be ordered where the Commission has

failed to comply with a remedial order); *accord Mickens-Thomas v. Vaughn*, 355

F.3d 294, 309-10 (3d Cir. 2004) (granting release where state parole authorities fail

to follow mandate, citing *Billiteri*).

Alternatively, this Court should retain jurisdiction to assure compliance in
light of the Commission's manifest inability to follow the mandate and otherwise
comply with the requirements of law. Terminating the case now, and requiring
Mr. Bowers to bring yet another petition for writ of habeas corpus if his mandatory
parole is denied, would result in unwarranted delay, would unnecessarily burden
the judicial process, and would not provide any meaningful measure of justice.
The federal habeas corpus statute expressly provides that a federal habeas court
"shall . . . dispose of the matter as law *and* justice require." 28 U.S.C. § 2243
(emphasis added). The Supreme Court has interpreted the habeas provisions,
including Section 2243, "as an authorization to adjust the scope of the writ in
accordance with equitable and prudential considerations" (*Danforth v. Minnesota*,
552 U.S. 264, 278 (2008)), which "enables courts 'to meet new situations [that]
demand equitable intervention, and to accord all the relief necessary to correct . . .
particular injustices.'" *Holland v. Florida*, 130 S. Ct. 2549, 2563 (2010) (quoting
*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944)). For
example, in *Rhines v. Weber*, 544 U.S. 269, 275 (2005), the Supreme Court ruled
that district courts may stay a federal petition and hold it in abeyance to permit a
state prisoner to exhaust state remedies. This Court has the authority to retain
jurisdiction until the Commission has completed its current administrative process.

- 23 -

Ending this case now, without determining whether the Commission's new actions comport with the mandate, would be particularly unjust to Mr. Bowers. He has already been imprisoned seven and a half years beyond his mandatory parole release date.  Requiring him to file a third petition to test the legality of the Commission's actions would significantly extend his unlawful incarceration should the Commission again unlawfully deny him parole.[14]

It would also force him to rely on Freedom of Information Act ("FOIA") requests, rather than discovery, to obtain information.  At a minimum, this process is slow, assuming information is provided at all.[15]  With respect to Mr. Bowers' prior FOIA request in 2007, for example, responsive documents have trickled in over a period of four years, with the most recent installments (including a number of never-before seen documents) provided in September 2011, a month after the Court of Appeals' decision. *See* Declaration of Charles D. Weisselberg ¶¶ 3-16.

---

[14] Mr. Bowers' petition was filed in June 2008 and the Court of Appeals mandate was released on October 25, 2011, a period of three years and four months. Litigating a new petition can be expected to take a comparable period of time, extending Mr. Bowers' unlawful incarceration to approximately 11 years, not counting time to obtain documents and draft the petition.

[15] When Mr. Bowers filed his initial 2005 FOIA request, one of the Commission's lawyers, Douglas Thiessen, wrote an email to the agency's chief of staff, Thomas Hutchison, saying that "giving [Mr. Bowers] . . . less rather than more would be best, given the high profile the case has gathered in some circles." Doc. No. 23-5, Pet. Ex. 90.

By retaining jurisdiction, the Court promptly can determine whether the Commission has reviewed Mr. Bowers' case in its posture as of May 17, 2005, and whether the Commission has established that it has complied with the mandate. The Court also can ensure that any further proceedings are authorized under the Parole Act and its rules, and that the Commission has afforded Mr. Bowers a fair and impartial hearing (by, among other things, requiring the agency to describe what steps it has taken to purge the taint of Commissioner Spagnoli's bias and to insulate its deliberations from the DOJ and political pressure). If the Commission fails to take these steps and show compliance with the mandate and the law, the Court should "grant Bowers' petition for writ of habeas corpus and direct the Parole Commission to begin release planning and implement the mandatory parole authorized and required by 18 U.S.C. § 4206(d)." *Bowers,* 651 F.3d at 1296.

## IV.   CONCLUSION

For the reasons set forth herein, as well as in all prior filings in this case, the Respondents' Motion to Dismiss should be denied. Since the Commission has failed to comply with the mandate, the Commission should be directed to begin implement the grant of mandatory parole. Alternatively, the Court should retain jurisdiction to ensure that the Commission complies with the mandate, the United States Constitution, the Parole Act, and the Commission's regulations.

Respectfully submitted this 18th day of November, 2011.

<div style="margin-left:50%">s/ C. Allen Garrett Jr.</div>

*All non-Georgia counsel pro hac vice:*     A. Stephens Clay (Ga. Bar No. 129400)
C. Allen Garrett Jr. (Ga. Bar No. 286335)

Bryan Gaynor (Cal. SBN 47875)     Kilpatrick Townsend & Stockton LLP
1160 G Street, Suite A     1100 Peachtree Street, Suite 2800
Arcata, CA 95521     Atlanta, GA 30309-4528
Telephone: (707) 826-8544     Telephone: (404) 815-6500
Facsimile: (707) 826-8545     Facsimile: (404) 815-6555


Charles D. Weisselberg     Theodore D. Frank
(Cal. SBN 105015)     (D.C. Bar No. 23903)
University of California,     Arnold & Porter LLP
    Berkeley School of Law     555 12th Street, N.W.
Berkeley, CA  94720-7200     Washington, D.C. 20004
Telephone:  (510) 643-8159     Telephone: (202) 942-5790
Facsimile: (510) 642-3856     Facsimile: (202) 942-5999


*Attorneys for Petitioner VERONZA L. BOWERS, JR.*

## CERTIFICATE OF FONT AND POINT SELECTION

Pursuant to L.R. 7.1D, I hereby certify that this brief has been prepared in Times New Roman 14, one of the font and point selections approved by the court in N.D. Ga. L.R. 5.1B.

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically with the Clerk of Court this day using the CM/ECF system, which will automatically send email notification of such filing to the following attorney of record:

> R. David Powell
> Assistant U.S. Attorney
> Richard B. Russell Federal Building
> 75 Spring Street, S.W., Suite 600
> Atlanta, GA 30303-3309

This 18th day of November, 2011.

KILPATRICK TOWNSEND
  & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

    s/ C. Allen Garrett Jr.
C. Allen Garrett Jr.
Georgia Bar No. 286335
agarrett@kilpatricktownsend.com

*One of the Attorneys for Petitioner*
*Veronza L. Bowers, Jr.*

# INDEX OF EXHIBITS

**EX.**      **Declaration of Theodore D. Frank**

128.    Cover Facsimile and Letter from Mr. Stephen J. Husk, United States Parole Commission, to Theodore D. Frank. Esq.

[09-29-2011]

129.    Cover Facsimile and Notice of Action

[10-12-2011]

130.    Letter from Theodore D. Frank. Esq, To United States Parole Commission

[10-12-2011]

131.    Letter from Mr. Bowers' Counsel to Mr. Stephen J. Husk, United States Parole Commission, submitted in Response to the 09-29-2011 Letter from Mr. Husk

[10-14-2011]

132.    Letter from Mr. Stephen J. Husk, United States Parole Commission, to Theodore D. Frank, Esq. with transmitted attachments

[11-08-2011]

**EX.**      **Declaration of Charles D. Weisselberg**

133.    FOIA Transmittal Letter from Carmen L. Mallon, U.S. Department of Justice Office of Information Policy, to Arian June, Esq.

[09-29-2011]

134.    Final FOIA Response and Transmittal Letter from Carmen L. Mallon, U.S. Department of Justice Office of Information Policy, to Arian M. June, Esq.

[09-29-2011]

# INDEX OF EXHIBITS

## EX.  Declaration of Theodore D. Frank

**128.** Cover Facsimile and Letter from Mr. Stephen J. Husk, United States Parole Commission, to Theodore D. Frank. Esq.

[09-29-2011]

**129.** Cover Facsimile and Notice of Action

[10-12-2011]

**130.** Letter from Theodore D. Frank. Esq, To United States Parole Commission

[10-12-2011]

**131.** Letter from Mr. Bowers' Counsel to Mr. Stephen J. Husk, United States Parole Commission, submitted in Response to the 09-29-2011 Letter from Mr. Husk

[10-14-2011]

**132.** Letter from Mr. Stephen J. Husk, United States Parole Commission, to Theodore D. Frank, Esq. with transmitted attachments

[11-08-2011]

## EX.  Declaration of Charles D. Weisselberg

**133.** FOIA Transmittal Letter from Carmen L. Mallon, U.S. Department of Justice Office of Information Policy, to Arian June, Esq.

[09-29-2011]

**134.** Final FOIA Response and Transmittal Letter from Carmen L. Mallon, U.S. Department of Justice Office of Information Policy, to Arian M. June, Esq.

[09-29-2011]

**EX.**   **Declaration of Charles D. Weisselberg**

135.   Memorandum from the Deputy Attorney General to the Attorney
       General (through Kyle Sampson, Deputy Chief of Staff)

       [06-06-2005]

**EXHIBITS OMITTED**

# ARNOLD & PORTER LLP

Theodore D. Frank
Theodore.Frank@aporter.com

+1 202.942.5790
+1 202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

October 14, 2011

**By e-mail to Amanda.K.Puron@USDoJ.gov
and by Certified U.S. Mail, Return Receipt**

Mr. Stephen J. Husk
Case Operations Administrator
United States Parole Commission
90 K Street, NE, Third Floor
Washington, D.C. 20530

      Re:    <u>Veronza L. Bowers, Jr., Reg. No. 35316-136</u>

Dear Mr. Husk:

  We, the undersigned, are counsel for Veronza L. Bowers, Jr. We received your letter of September 29, 2011, addressed to Theodore Frank, Esq., notifying him and Mr. Bowers' other counsel that the U.S. Parole Commission would be deciding whether to "re-vote" on Mr. Bowers' case under the Commission's new regulation, 28 C.F.R. § 2.63(b)(3). In that letter, you stated that in deciding whether to "re-vote," "the Commission will be considering all the submissions made by your firm and other interested persons and organizations that were sent to the Commission before *and after* May 2005." (Emphasis added). The letter also invited us to submit information to the Commission by October 14, 2011, with respect to whether the Commission should "re-vote." Remarkably, on October 12, 2011, two days before today's submission deadline, the Commission issued a Notice of Action, informing us that the Commission decided on its own to go ahead and "re-vote," and that submissions from Mr. Bowers and others would be considered when the Commission actually "re-votes" at a future date.

On behalf of Mr. Bowers, we object to any "re-vote" and to any consideration of information not in the record as of May 17, 2005, on the following grounds:

- First, the decision of the United States Court of Appeals for the Eleventh Circuit directed the Commission to "immediately review Bowers' *file* to

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 2

determine *ab initio* whether any further action is necessary or *authorized.*"
The Court went on to hold "that, if the Parole Commission decides to take
further action, it must proceed in the manner *authorized* by the Parole Act and
the Parole Commission's rules and regulations." *Bowers v. Keller,* No. 10-
12170, slip op. at 43- 44, 651 F.3d 1277, ------ (11th Cir. Aug. 26,
2011)(emphasis added). The May 17, 2005 decision was firmly based on the
existing record and there is nothing in Mr. Bower' file that would support any
different result. There is no basis, consistent with the Court's order, on which
the Commission can re-vote. Indeed, any "re-vote" that results in a different
outcome would necessarily be arbitrary and capricious, as well as inconsistent
with the remand order.

• Second, retroactively applying Section 2.63(b)(3) to Mr. Bowers' case
violates the *Ex Post Facto* Clause of the United States Constitution. U.S.
Const., art. I, § 9, cl. 3), as allowing a "re-vote" would substantially increase
the risk of extending the period of Mr. Bowers' imprisonment.

• Third, should the Commission apply the "re-vote" rule, it may not, under the
terms of the remand and the provisions of the Administrative Procedure Act, 5
U.S.C. § 500 *et seq.,* consider materials submitted by interested persons and
organizations, or prepared by Commission staff, after May 17, 2005.

• Fourth, the Commission must take note that in two carefully reasoned judicial
opinions rendered in this matter, the first by Magistrate Judge Susan Cole and
the second by the U.S. Court of Appeals for the Eleventh Circuit, both found
that the Commission's decision-making process was impermissibly tainted by
the actions of former Commissioner Spagnoli and that the Commission failed
to maintain its independence from the Department of Justice. Accordingly, in
the event there are any further proceedings, the Commission must take
appropriate measures to remove any taint attributable to former Commissioner
Spagnoli, including insulating staff members who worked with her or have
evidenced a view of Mr. Bowers similar to that shown by Commissioner
Spagnoli, from any participation in future Commission deliberations or
decisions in this matter, and otherwise ensure the agency's independence from
the Department of Justice.

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 3

Two days ago, without even waiting to receive our objections, the Commission apparently decided on its own that it would "re-vote" the case. Because, as we explain, the Commission cannot and should not "re-vote," the Commission must set aside that decision and, for the reasons set forth in this letter, allow the previous order granting mandatory parole to stand. We must also note that the Commission's premature and precipitous action gives us even more reason to fear that, contrary to the Court's assurances, the agency remains tainted by the bias of former Commissioner Spagnoli, and still lacks independence from the Department of Justice.

1.     **There Is No Basis to "Re-vote" the May 17, 2005 Decision Not to Reconsider the Grant of Mandatory Parole.**

Under the terms of the remand from the United States Court of Appeals, Mr. Bowers' case is returning to the agency as it stood when the full Commission decided not to reconsider the grant of mandatory parole. Specifically, the Court of Appeals "direct[ed] the district court to return this case to the Parole Commission in its posture as of May 17, 2005. . . ." *Bowers v. Keller, supra* slip op. at 43. As these facts show, the posture of the case as of that date was that Mr. Bowers was to be released on mandatory parole, and the full Commission found no basis to reconsider the grant of parole:

- In January 2005, the Regional Commissioner ordered Mr. Bowers released on mandatory parole based on his entire prison record including the findings and recommendation of the hearing examiners who reviewed the record and examined Mr. Bowers.

- On February 17, 2005, the Commission reopened the case to permit Ranger Patrick's family and other interested parties to submit information to the agency. In connection with reopening the case to receive this information, the matter was noticed for a special reconsideration hearing. A reconsideration hearing is *not a de novo* review of the case. Rather, "the purpose of a special reconsideration hearing is to reconsider the parole *'in light of the new information.'" Schiselman v. U.S. Parole Comm'n,* 858 F.2d 1232, 1239 (7th Cir. 1988) (quoting *Luteri v. Nardoza,* 662 F.2d 159, 161 (2d Cir. 1981)) (emphasis in original). The question is whether there is new evidence that "would have resulted in a different decision" if presented earlier. *Id.* (quoting *United States Parole Commission Rules & Procedures Manual* §2.28-02(f)).

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 4

- After the reconsideration hearing was held, the Commission decided to allow all Commissioners to participate in the reconsideration decision. The fact that the Commission employed its original jurisdiction procedures to reconsider the grant of Mr. Bowers' parole did not transform the special reconsideration proceeding into a *de novo* or any different kind of a proceeding. As the Commission has recently noted: "The designation of a case for the original jurisdiction of the Commission only affects the number of Commissioners voting on a case disposition and does not change the substantive criteria in making the determination." 75 Fed. Reg. 81,458 (Dec. 28, 2010).

- Thus, the Commission's May 17, 2005 original jurisdiction decision was *not* a decision to grant or deny mandatory parole but rather a decision that the alleged "new information" presented by the victim's family and other interested parties did not convince a majority of the Commissioners to alter the Regional Commissioner's January grant of parole.

Given this posture of the case as of May 17, 2005, the Commission may not "re-vote" whether to reconsider, again, the January grant of mandatory parole.[1] The "new information" presented in connection with the May 17, 2005 special reconsideration was carefully reviewed by the three hearing examiners who found, unanimously, that there was not sufficient "new and significant adverse information" to support a different mandatory parole decision. Two Commissioners agreed and, lacking a majority vote of the Commission, the January decision remained in effect.

There is no basis for "re-voting" this determination because, as Judge Cole found, any decision to reconsider the grant of mandatory parole would necessarily be inconsistent with the Commission's own rules and be arbitrary and capricious. Judge Cole found that the October 2005 decision of the Commission—when members of the Commission reached different conclusions about Mr. Bowers' letter to Mrs. Lee, his "political prisoner" status, and the construction of the mandatory parole statute—was arbitrary and

---

[1] While the Court noted that the Commission had adopted Section 2.63(b), there is nothing in the decision indicating that the Court had considered whether the terms of its remand order would permit the Commission to apply the rule. Indeed, the Court stated: "The Parole Commission shall immediately review Bowers case to determine whether any further action is necessary *or authorized*." *Bowers v. Keller, supra* slip op. at. 45 (emphasis added).

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 5

capricious.[2]  The Commission's decision was thus correct in May 2005 and in light of the findings made in Mr. Bowers' habeas corpus case, it is even more clearly correct today. The Commission should simply allow the May 2005 order affirming the grant of mandatory parole to remain in effect.

## 2.    The New "Re-voting" Regulation Does Not Apply and Cannot Be Applied to Mr. Bowers.

The Commission's new rule, 28 C.F.R. § 2.63(b)(3), purports to allow the Commissioners to "re-vote" in the case of a tie.  However, that regulation necessarily presupposes that any tie resulted from valid, legitimately-cast votes.  Since Commissioner Spagnoli's vote was demonstrably the product of actual bias, it cannot be credited; there was no tie, and the new regulation does not apply.[3]  Further, this new provision significantly disadvantages Mr. Bowers.  As applied to him retroactively, Section 2.63(b)(3) would violate the *Ex Post Facto* Clause (U.S. Const., art. I, § 9, cl. 3).

### a.    Section 2.63(b)(3) Does Not Apply to Mr. Bowers' Case

For the new "tie-breaker" provision to apply, the tie must be the result of a lawful voting process.  The Court of Appeals found that Commissioner Spagnoli, who cast one of the two votes opposing mandatory parole, acted with actual bias.  In describing her bias, the Court noted that she wrote a memorandum to the Deputy Attorney General—"a polemic against the decision to grant parole"—in which she argued that an allegation that the Ninth Circuit had instructed the Commission to disregard should nonetheless be considered by the Commission as a basis for denying him parole.  *Bowers v. Keller, supra* slip op. at 39.  This same allegation was contained in an earlier memorandum by her dated April 19, 2005. Moreover, both Memoranda focused solely on the reasons to

---

[2] Final Report and Recommendation and Order, *Bowers v. Grayer*, No. 1:08-CV-2095-CAM-SSC (N.D. Ga. June 4, 2009), pp. 53-57 (*"Report and Recommendation"*).  We note that these findings were not set aside by either the District Court or by the Court of Appeals; indeed, the Commission did not challenge them before either court.

[3] As noted in the June 1, 2005 Memorandum from Thomas W. Hutchinson to Wendell L. Taylor, Counsel to the Deputy Attorney General (concerning Commissioner Fulwood's decision to recuse himself), Commissioners are required to be fair and impartial in reviewing an appeal of a case.  Under that standard, bias precludes a Commissioner from participating in a parole decision.

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 6

deny parole and gave no consideration to Mr. Bowers' successful efforts to rehabilitate
himself or the strong recommendations he had received from the Commission's
Examiners who had interviewed Mr. Bowers. Accordingly, Commissioner Spagnoli's
bias predated her May 17, 2005 vote. Indeed, a careful review of the record and the
material before the courts in Mr. Bowers' successful habeas corpus proceeding clearly
demonstrate that Commissioner Spagnoli was committed to assuring Mr. Bowers'
continued imprisonment regardless of any facts or circumstances that would require the
grant of a mandatory parole. Because Commissioner Spagnoli's vote to deny mandatory
parole was the product of actual bias, it cannot be credited in determining whether the
May 17, 2005 vote was a tie. When the lawful votes of the Commissioners are counted,
the tally is 2-1 in favor of mandatory parole. There was no tie and, hence, there is no tie
to break.

      b.     **Applying the New Re-vote Rule to Mr. Bowers Violates the Ex Post
            Facto Clause of the Constitution**

Applying Section 2.63(b)(3) to Mr. Bowers would constitute a retroactive application of a
new rule. At the time of Mr. Bowers' incarceration, the Commission had no procedures
for re-voting an original jurisdiction decision granting mandatory parole. It is well
established that a "retroactively applied parole ... regulation or guideline violates [the *Ex
Post Facto* Clause] if it creates a significant risk of prolonging [an inmate's]
incarceration." *Phillips v. Fulwood*, 616 F.3d 577, 580 (D.C. Cir. 2010) (quoting *Garner
v. Jones*, 529 U.S. 244, 251 (2000) and *Fletcher v. Reilly*, 433 F.3d 867, 877 (D.C. Cir.
2006).) *See also Michael v. McGhee*, 498 F.3d 372, 383 (6th Cir. 2007) ("the relevant
inquiry is ... whether the new guidelines present a significant risk of increasing the
plaintiff's amount of time actually served.")

Section 2.63(b)(3) does just that with respect to Mr. Bowers. Without "re-voting," "a tie
vote in making one of the findings required by § 2.53 in a mandatory parole
determination ... result[s] [in] the prisoner" being granted parole. 28 C.F.R. § 2.63(b)(2).
Any re-vote of a tie mandatory parole decision necessarily increases the prospects that
parole will be denied. The May 17, 2005 tie vote, assuming it was a tie vote, granted Mr.
Bowers parole; a "re-vote" "creates a significant risk of prolonging" Mr. Bowers'

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 7

incarceration since the re-vote can result in a denial of parole.  Accordingly, applying the new section to Mr. Bowers would violate the *Ex Post Facto* Clause.[4]

3.     **Any "re-vote" must be based upon the record as of May 17, 2005.**

The Commission's September 29, 2011 letter states that in conducting a record review to determine whether the Commission should "re-vote," "the Commission will be considering all the submissions made by your firm and other interested persons and organizations that were sent to the Commission before *and after* May 2005." (Emphasis added).  The October 12, 2011 Notice of Action further provides that "any new submissions . . . will be considered in the re-vote itself." Assuming, *arguendo*, that the Commission may go forward with a "re-vote," any consideration of materials that post-date the May 2005 decision would violate the terms of the Court of Appeals' remand, the plain language of the "re-vote" regulation, and the Administrative Procedure Act ("APA").  It would also deprive Mr. Bowers of a fundamentally fair proceeding.[5]

As we have noted, the Eleventh Circuit ordered Mr. Bowers' case returned to the Commission to review Mr. Bowers' file "in its posture as of May 17, 2005." That order precludes the consideration of new information.  Mr. Bowers' file as of May 17, 2005, of course, pre-dates the Attorney General's June 9, 2005 appeal from the May 17 decision. The Court of Appeals also vacated the Commission's June 14, 2005 order.  That order reopened Mr. Bowers' case so that the agency could consider the Attorney General's June 9, 2005 appeal. *Bowers*, slip op. at 42, 44.  The Court of Appeals has therefore expressly required the Commission to review Mr. Bowers' case as it stood *before* the

---

[4] This situation is distinct from those where altering the period when a prisoner is eligible to have his request for a parole reviewed.  In those cases, the courts have concluded that, because of the discretion granted parole authorities, extending the time periods for review may not substantially increase the risk that the prisoner will remain incarcerated longer. *See, e.g., Foster v. Booker*, 595 F.3d 353 (6th Cir. 2010); *Henderson v. H.N. Scott*, 260 F.3d 1213 (10th Cir. 2001). While the Commission has some limited discretion in deciding whether the Section 4206(d) factors have been established, allowing the Commission to re-vote a tie vote and then reconsider its earlier decision ineluctably increases the risk that the prisoner's term will be extended.

[5] We do not, however, dispute that the Commission would have authority to reopen a decision to grant mandatory parole if Mr. Bowers was found to have violated institutional rules after May 17, 2005.

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 8

Attorney General filed his appeal, not afterwards.  If the Commission decides to "re-vote" or actually conducts a "re-vote" based upon a file that includes the letter briefs, internal Commission documents, and other materials related to the Attorney General's appeal, the agency will be considering Mr. Bowers' case in its posture as of October 2005, when it ruled on the appeal.  That is manifestly *not* what the Court of Appeals ordered.[6]

Nor does the Commission's new "re-voting" rule permit the agency to consider information not before it on May 17, 2005.  By its own terms, Section 2.63(b)(3) only provides that the "Commission may re-vote on a case disposition to resolve a tie vote . . .." Nothing in the rule gives the Commission the ability to consider new information not before the agency at the time of its initial vote.  Rather, at best the rule permits the Commission to review its decision and to re-vote on the matter in light of the record existing at the time.

In fact, if construed to permit the Commission to solicit and consider new information, the "re-voting" rule substantially alters Mr. Bowers' rights, transforming it from a procedural into a substantive rule.  Since the rule was adopted without the notice and opportunity for comments[7] required by Section 553 of the APA for substantive rules,[8] the new rule cannot be relied upon by the Commission to support its solicitation and consideration of new information.

Procedural rules are those that address the manner in which the Commission conducts its business, whereas substantive rules affect the rights or interests of the parties.  *Batterton v. Marshall,* 648 F.2d 694, 707 (D.C. Cir. 1980).  A procedural rule does not "alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency." *Id.; accord, Chamber of Commerce of U.S. v. Dep't of Labor,* 174 F.3d 206, 211 (D.C. Cir. 1999).  A substantive rule, on the

---

[6] This action would also be outside of the agency's statutory or regulatory authority. Judge Cole found that there was no statutory or regulatory authority for the Attorney General's appeal.  *See Report and Recommendation* at  33-37.  While the Court of Appeals did not need to reach this question, Judge Cole's analysis and reasoning are correct.  Mr. Bowers continues to object to any Commission consideration of the Attorney General's unauthorized appeal.

[7]  75 Fed. Reg. 81,458 (Dec. 28, 2010),

[8]  5 U.S.C. § 553.

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 9

other hand, includes "any action which goes beyond formality and substantially affects the rights of those over whom the agency exercises authority." *Pickus v. U.S. Bd. of Parole,* 507 F.2d 1107, 1114 (D.C. Cir. 1974). In deciding whether a rule is procedural or substantive, courts look to whether there is a need for public participation in agency decision-making to assure fairness to affected parties and "to 'assure[] that the agency will have before it the facts and information relevant to a particular administrative problem. . . .'" *Am. Hosp. Ass'n v. Bowen,* 834 F.2d 1037,1044-45 (D.C. Cir. 1987) (citations omitted). Thus, courts have held that "the exceptions to [the notice and comments requirements of 5 U.S.C.] section 553 will be 'narrowly construed and only reluctantly countenanced.'" *Id.* (quoting *Alcaraz v. Block,* 746 F.2d 593, 612 (D.C. Cir. 1984). Applying these criteria, Section 2.63(b) is a substantive rule if it is interpreted to allow the Commission to solicit and consider new information in connection with any "re-vote."

Under Commission rules prior to the adoption of Section 2.63(b)(3), there was no authority for the agency to solicit information in order to re-evaluate a decision. Further, when new information is provided to the Commission under its ordinary procedures (set forth in 28 C.F.R. § 2.28), the agency must hold a special reconsideration hearing and afford the prisoner or parolee notice, the right to be present, and other procedural protections. None of these meaningful procedural requirements, based on due process rights, would be afforded Mr. Bowers if the new rule is construed to allow the Commission to consider new information in connection with a "re-vote." Since Section 2.63(b) was adopted without notice and comment, the rule does not, and cannot, allow the Commission to consider information not in the record as of May 17, 2005 in connection with its review of the May 17 decision.

Moreover, considering materials submitted after May 17, 2005 will plainly deny Mr. Bowers a fair proceeding and a decision by a neutral decision-maker. The Court of Appeals found that former Commissioner Spagnoli acted with bias. In addition to her "polemic against the decision to grant parole," Commissioner Spagnoli contacted Department of Justice officials and shared internal Commission documents with them. *Bowers v. Keller, supra* slip op. at 39, 41-42. Her "clandestine communications" with the Department of Justice also violated the Commission's obligation to act as an independent agency. *Id.* at 42. Judge Cole determined that Commissioner Spagnoli's actions influenced agency staff, among others. Judge Cole specifically noted that at the October 2005 Commission meeting, Mr. Thiessen made "the case for denial of parole 'after working closely with the Attorney General's Office back and forth regarding this review' and under the suasion of Commissioner Spagnoli . . . ." *Report and Recommendation* at

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 10

51. The materials submitted by the Department of Justice and others to the Commission after May 2005[9] came after Commissioner Spagnoli sent the Department of Justice her clandestine memorandum and other documents, and had her secret meetings. The Department of Justice submissions to the Commission clearly reflect the influence of Commissioner Spagnoli's memorandum. Similarly, the Original Jurisdiction Appeal Summary prepared by Mr. Thiessen dated September 23, 2005 and his oral presentation at the October 5, 2005 Commission hearing reflected Commissioner Spagnoli's views and bias. Even the materials submitted by Mr. Bowers' lawyers in response to the Department of Justice's submissions were affected by Commissioner Spagnoli's efforts since they were required to address her unsubstantiated claims and her reliance on matters which the Commission had been judicially enjoined not to consider. Commission consideration of these materials in connection with any actions taken now would allow Commissioner Spagnoli's bias to continue to taint the agency's proceedings, and would violate the terms of the Court's remand.

Finally, your September 29, 2011 letter and the October 12, 2011 Notice of Action do not suggest *any* limitation on materials that the Commission will consider in deciding whether to "re-vote" or in the "re-vote" itself. By its terms, the letter indicates that the Commission is currently soliciting submissions from the Department of Justice and other "interested parties." The Notice of Action contemplates new submissions by "the victim or other interested persons or organizations." Rule 2.63(b)(3) does not provide any mechanism to disclose any such submissions to Mr. Bowers, nor has the agency indicated that it intends to do so. No Commission rule, including Section 2.63, authorizes such *ex parte* consideration of these submissions. To the contrary, the Commission's rules give inmates the right to know the basis on which the Commission may act. In light of the Court's order that any future Commission proceedings comply with the Parole Act and its own rules, Mr. Bowers strongly objects to the consideration of any materials submitted to the Commission now. In short, if the case is "re-voted," the questions for the Commissioners will be whether--based on the findings of the hearing examiners and the record as of May 17, 2005--there was any "new and significant" adverse information and

---

[9] These include, among others, the Attorney General's June 9, 2005 Memorandum to the Commission requesting that the Commission revisit its May 17 decision, the letters from David Margolis, Associate Deputy Attorney General dated August 2, and September 16, 2005, the letter from Alice S. Fisher, Assistant Attorney General, dated September 30, 2005, as well as submissions from police organizations and interested persons.

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 11

whether any such new information would have resulted in a different parole decision if presented earlier.

**4.    In Order to Ensure the Commission's Independence and to Afford Mr. Bowers a Fair and Impartial Determination of His Parole Request, the Commission Must Take Affirmative Steps to Purge the Taint of Commissioner Spagnoli's Actions.**

Given the history of the Commission's actions in considering Mr. Bowers' for mandatory parole, which have involved a rash of arbitrary and capricious actions and two court orders setting aside Commission decisions, we are frankly skeptical that the Commission has the capacity—or perhaps even the will—to afford Mr. Bowers a fair and impartial review or a decision by neutral and independent decision-makers. We share the view of Judge Cole who found that "the impartiality of the Commission as a whole was affected by the actions of Commissioner Spagnoli, the Attorney General and others, and that the taint on the Commission's decision making could not be eradicated simply by an order from this Court directing the Commission to grant [Mr. Bowers] a new parole hearing." *Report and Recommendation* at 60. Our skepticism is only increased by the Commission's inexplicable conduct in asking for our input about whether to "re-vote," and then deciding to "re-vote" before actually receiving our response. Indeed, the decision taken this week to "re-vote" only heightens our concern that Commissioner Spagnoli's bias continues to infect the Commission, and the decision was made by an agency that has not yet taken the necessary measures to eradicate her influence.

If the Commission decides to go forward with a "re-vote" or any other proceeding, it must take substantial, serious and material measures to purge the taint of Commissioner Spagnoli's actions, and to ensure a decision by independent and unbiased decision-makers. As we explain, the Commission must take these steps with respect to both the written record and the individuals who will be involved in processing and deciding Mr. Bowers' case. Commissioner Spagnoli's involvement in Mr. Bowers' parole proceedings must be expunged completely.

With regard to the written record, the Commission is not like a court in which an order for a new trial may simply result in a new self-contained oral trial with all new evidence presented in open court. The Commission relies heavily on a cumulatively-compiled written record, with documents from prior proceedings remaining in the file. Before any parole proceeding, an analyst prepares a pre-hearing assessment. Hearing summaries include discussions of the written record. Case files are circulated to reviewing

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 12

examiners and members of the Commission for decision. Given this norm of decision-making, it is essential that the agency's written record be scoured to purge it of Commissioner Spagnoli's actions. Her influence must be excised, root and branch.

The appropriate approach for the Commission is set forth in *Kastigar v. United States*, 406 U.S. 441 (1972), and related cases. *Kastigar* sets out the procedures for "taint hearings" when a person who has been granted immunity is later prosecuted. The immunized testimony cannot be permitted to influence the prosecution. Thus, "'the federal authorities have the burden of showing that their evidence is not tainted by establishing that they had an independent, legitimate source for the disputed evidence.'" *Id.* at 460 (quoting *Murphy v. Waterfront Comm'n*, 378 U.S. 52, 79 n.18 (1964).) Further, "[t]his burden of proof . . . is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* In the trial setting, "[t]he inquiry must proceed witness-by-witness; if necessary, it will proceed line-by-line and item-by-item." *United States v. North*, 910 F.2d 843, 872 (D.C. Cir. 1990). In Mr. Bowers' case, the Commission must review each item in the written file and determine whether it—and every part of it—is derived from a source independent of Commissioner Spagnoli. That review includes rooting out arguments advanced by Commissioner Spagnoli, including her interpretation of the mandatory parole statute. And it now also means determining whether this week's decision to "re-vote" followed the review of any memoranda or arguments generated by Commissioner Spagnoli.

There is no other way to eradicate the influence of Commissioner Spagnoli's animus toward Mr. Bowers. She wrote numerous memoranda and had many communications about the case inside and outside of the agency. As the Court of Appeals found, her memorandum to the Deputy Attorney General "described Mr. Bowers in negative terms and omitted all favorable information" and included an allegation that a court had ordered the Commission to disregard. *Bowers v. Keller, supra* slip op. at 39. The Commission should note that Commissioner Spagnoli aggressively advocated her opposition to parole to agency members and staff, in writing and orally. Her bias is evident in agency documents; she characterized Mr. Bowers unfairly, and reached conclusions wholly unsupported by the record. She suggested arguments to the Deputy Attorney General that might be made in opposition to parole, and, the record clearly establishes that the Deputy Attorney General and others credited her views. If the agency's written record is not wholly purged of all of Commissioner Spagnoli's memoranda, arguments and influence, then Mr. Bowers will continue to be deprived of a fair proceeding before neutral and detached agency decision-makers.

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 13

In addition, Commission members and staff must consider whether they can, in good conscience, decide the matter fairly, free of any influence from Commissioner Spagnoli. In 2007, when Commissioner Spagnoli's June 1, 2005 memorandum to the Deputy Attorney General first surfaced, Chairman Reilly informed Mr. Bowers that "this memorandum played no role in our decision-making in your case and that our votes were based on our independent assessment of the merits of your case." Letter from Edward F. Reilly, Jr., Chairman, to Veronza Bowers, dated Sept. 7, 2007. With all due respect to the former chairman, the critical question was not whether Commission members were directly influenced by a memorandum they never saw. Rather, the concern was (and remains today) whether they were influenced in any way by the advocacy of a member of the Commission whose bias was manifested first in her memorandum of April 19, 2005 and again in her June 1, 2005 memorandum. Were any agency members influenced in their assessment of Mr. Bowers and his institutional record by the arguments advanced by Commissioner Spagnoli? Given the manner in which members of the Commission changed their views so precipitously in response to the Attorney General's June 9, 2005 appeal, there is a manifest appearance that Commissioner Spagnoli's views played a significant role in the decision to re-open Mr. Bowers' case and deny him mandatory parole.

This inquiry must also extend broadly to Commission staff, many of whom interacted with Commissioner Spagnoli or acted to support her position. Any staff members who were influenced in any way by Commissioner Spagnoli's views ought not participate in further proceedings. Mr. Thiessen in particular should have no further contact with the case, as Judge Cole specifically noted his work under the suasion of Commissioner Spagnoli. *Report and Recommendation* at 51.

And the Commission must vigorously safeguard its independence. That requires it decide Mr. Bowers' fate on the basis of the record in this proceeding, uninfluenced by *ex parte* contacts with Department of Justice officials, pressure from Congress, the Department of Justice and others. It cannot allow its independence and integrity to again be compromised.

\* \* \*

As we have explained here, the appropriate action for the Commission to take is not to "re-vote," but simply to allow its May 17, 2005 decision to stand. Given the Commission's premature action this week, its apparent decision to "re-vote" must be set

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 14

aside.   However, if the Commission decides to go forward with any "re-vote" or further
proceedings, it must limit the scope of materials it considers to those in the record as of
May 17, 2005, and it must take meaningful and serious steps to ensure that its decision-
making is free of bias and is independent of influence from the Department of Justice and
others.  The Commission may see these measures as quite challenging to implement.
They are.  But the record shows that Commissioner Spagnoli profoundly influenced Mr.
Bowers' case and purging the taint of her actions will require sustained and serious effort,
if the taint can indeed be eradicated at all.

Finally, it is important to remember how this case got to this stage.  Mr. Bowers should
have been released on mandatory parole in April 2004.  It took an order from the United
States District Court to force the Commission to review him for mandatory parole.  Two
hearings followed, in December 2004 and March 2005, and each time the agency found
that Mr. Bowers should be released.  His release was canceled after Commissioner
Spagnoli acted unlawfully and the Attorney General launched a wholly unprecedented
intervention.  Now yet another federal court has found that the Commission failed to
follow the law.  All the while Mr. Bowers remains in custody, seven and a half years
beyond his proper mandatory parole date.

Enough is enough.

The Commission should let the prior action stand, and allow Mr. Bowers to be released
on parole.

Very truly yours,

Theodore D. Frank

Bryan Gaynor, Esq.
Law Offices of Bryan Gaynor
1160 G Street, Suite A
Arcata, California 95521

# ARNOLD & PORTER LLP

Stephen J. Husk, Case Operations Administrator
United States Parole Commission
October 14, 2011
Page 15

Charles D. Weisselberg
University of California, Berkeley[10]
School of Law
Berkeley, Califonria 94720-7200

Counsel for Veronza L. Bowers, Jr.

---

[10] For identification purposes only; Mr. Weisselberg is participating on his own account.

## INMATE SKILLS DEVELOPMENT PLAN          Current Progress Report: 11-04-2011



| | |
|---|---|
| **Name:** | BOWERS, VERONZA LEON |
| **Register Number:** | 35316-136 |
| **Security/Custody:** | MEDIUM/IN |
| **Projected Release:** | / LIFE |

| | |
|---|---|
| **Institution:** | ATLANTA USP |
| | 601 MCDONOUGH BLVD SE |
| | ATLANTA, GA 30315 |
| **Telephone:** | (404) 635-5100 |

| | |
|---|---|
| **Next Review Date:** | 03-24-2012 |
| **Next Custody Review Date:** | 02-26-2012 |
| **Age/DOB/Sex:** | M |
| **CIM Status:** | Y |
| | If yes, reconciled: Y |

| | |
|---|---|
| **Driver's License/State:** | / |
| **FBI Number:** | |
| **SSN:** | |
| **DCDC Number:** | |
| **INS Number:** | |
| **PDID Number:** | |
| **Other IDs:** | |

| | |
|---|---|
| **Release Residence:** | ..STER |
| | U..0 |
| **Telephone:** | |

| | |
|---|---|
| **Release Employer:** | [Name] |
| | [Address] |
| | [POC] |
| **Contact Telephone:** | |

| | |
|---|---|
| **Primary Emergency Contact:** | |
| **Telephone:** | ? |

| | |
|---|---|
| **Secondary Emergency Contact:** | [POC] |
| | [Address] |
| **Telephone:** | [Phone] |

**Mentor Information:**

| | |
|---|---|
| **Offenses/Violator Offenses:** | FIRST DEGREE MURDER OF AN OFFICER OF THE UNITED STATES / ESCAPE OF A PRISONER IN CUSTODY / |
| **Sentence/Supervision:** | Life / No Supervision Term - AGGREGATE GROUP 10 |
| **Special Parole Term:** | Life |

| Sentence Began | Time Served/Jail Credit/Inoperative Time | Days GCT/EGT/SGT | Days FSGT/WSGT/DGCT | Parole Status | |
|---|---|---|---|---|---|
| 04-26-1974 | 450 Months 9 Days / 140 Days / 0 Days | 0 / 0 / 0 | 0 / 0 / 0 | **Hearing Date:** | 12-01-2008 |
| | | | | **Hearing Type:** | STATUTORY INTERIM HEARING |
| | | | | **Last USPC Action:** | 10-26-2005 |

| | |
|---|---|
| **Detainers:** | N |
| **Pending Charges:** | None known |

| Financial Responsibility | Imposed | Balance | Case No./Court of Jurisdiction | Assgn/Schedule Payment |
|---|---|---|---|---|
| | | | | FINANC RESP-NO OBLIGATION |

| | | | | | |
|---|---|---|---|---|---|
| **Financial Plan Active:** | Y | **Comm Dep-6 mos:** | [$] | **Cost of Incarceration Fee:** | Waived based on inability to pay |
| **Financial Plan Date:** | [Date] | **Commissary Balance:** | [$] | | |

**Payments**

| | |
|---|---|
| **Commensurate:** | Y |
| **Missed:** | N |

| | |
|---|---|
| **Judicial Recommendations:** | None / None / None |
| **Special Conditions of Supervision:** | None |

**Exhibit 89**


# INMATE SKILLS DEVELOPMENT PLAN

## PROGRESS REPORT: 11-04-2011

Name: BOWERS, VERONZA LEON

RegNo: 35316-136

| | | | |
|---|---|---|---|
| USPO Sentencing: | Yador J. Harrell, Chief<br>California Northern Probation Office<br>Phillip Burton United States Courthouse<br>450 Golden Gate Avenue Room 17-6884<br>San Francisco, CA 94102-3434 | USPO Relocation: | Mario Moreno, Chief<br>Arizona Probation Office<br>Evo A. DeConcini United States Courthouse<br>405 West Congress Street Suite 2400<br>Tucson, AZ 85701-5022 |
| Phone/Fax: | 415-436-7540 / 415-581-7410 | Phone/Fax: | 520-205-4400 / 520-205-4419 |

| | | | |
|---|---|---|---|
| Subject to 18 U.S.C. 4042(B) Notification: | Y | DNA Required: | Y - [Date] |
| • Current conviction for a crime of violence (state and federal) | | Subject to Sex Offender Notifications: | [Y,N,N/A] |
| | | Treaty Transfer Case: | [Y,N] |

Profile Comments:

## EDUCATION DATA

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| ATL | ESL HAS | ENGLISH PROFICIENT | 07-24-1991 | CURRENT |
| ATL | GED HAS | COMPLETED GED OR HS DIPLOMA | 06-01-1991 | CURRENT |

### History

Bowers has been facilitating a Meditation class for the inmate population for approximately one year.

```
--------------------------- EDUCATION INFORMATION ---------------------------
FACL ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP DATE/TIME
ATL  ESL HAS    ENGLISH PROFICIENT          07-24-1991 1323 CURRENT
ATL  GED HAS    COMPLETED GED OR HS DIPLOMA 06-01-1991 0712 CURRENT
```

```
--------------------------- EDUCATION COURSES ---------------------------
SUB-FACL     DESCRIPTION                    START DATE  STOP DATE  EVNT AC LV  HRS
ATL          CORRESPONDENCE COURSE          08-11-2009  05-23-2011   P   C  P   80
ATL          RUN AND JOG YOUR WAY TO FIT    07-31-2010  09-20-2010   P   C  P   24
ATL          RUN AND JOG YOUR WAY TO FIT    04-25-2010  06-27-2010   P   C  P   24
ATL          RUN AND JOG YOUR WAY TO FIT    02-04-2010  05-17-2010   P   C  P   40
ATL          BASIC MEDITATION               03-07-2010  04-01-2010   P   C  P   16
ATL          INTRODUCTION TO YOGA           08-04-2009  11-24-2009   P   C  P   20
ATL          HEALTH EDUCATION-COMPONENT #1  09-12-2008  09-12-2008   P   C  P    1
BEN          BASIC SPANISH WEDS 1:00        05-12-2008  10-05-2008   P   C  P   20
ATL          HEALTH FAIR-HEALTH AWARENESS   09-13-2008  09-13-2008   P   C  P    4
ATL          RPP5 RELEASE REQUIREMENTS      07-01-2008  07-01-2008   P   C  P    1
BEN          RPP MEN'S HEALTH(1)            01-22-2008  01-22-2008   P   C  P    1
COM          REC DETAIL TUES/THURS 8-10AM   11-05-2006  11-11-2006   P   C  P    2
COM          INTERNATIONAL BUSINESS ACE     05-23-2005  08-02-2005   P   C  P   40
COM          #6 YOUTH ENCOURAGE SUPPORTERS  06-18-2003  12-23-2004   P   C  P   20
COM          L/W INSTRUCTOR 03 M-F 12-3PM   11-20-2003  12-02-2003   P   C  P    3
COM          RELAXATION M-86-10A,LL-3P,5-8P 07-30-2003  10-28-2003   P   C  P   20
COM          SOULFLEX/MED M-S6-10A,11-3,5-8 04-22-2003  07-19-2003   P   C  P   20
COM          PILATES FITNESS MON-FRI 7AM-3P 01-16-2003  04-21-2003   P   C  P   20
COM          INSTRUCTORS CLASS TH 10-1230 P 09-06-2002  09-19-2002   P   C  P    3
COM          RELAXATION M-86-10A,LL-3P,5-8P 09-08-2001  12-09-2001   P   C  P   20
COM SKILLS   NATL FED PROF TNG TH/FR730-850 03-17-2001  08-16-2001   P   C  P   46
COM SKILLS   INSTRUCTORS CLASS TH 10-1230 P 12-08-2000  12-12-2000   P   C  P    3
COM          MEDITATION/YOGA M-F615AM-720AM 10-13-1999  01-11-2000   P   C  P   20
COM          THUR 7:30-10:30 AM             12-10-1998  04-26-1999   P   C  P   12
COM          FRIDAY 7:30 AM - 10:30 AM      01-07-1999  04-19-1999   P   C  P   36
COM          MEDITATION/YOGA M-F615AM-720AM 01-12-1999  04-04-1999   P   C  P   36
COM          ADVANCED YOGA WED/SUN 6-8 PM   08-19-1998  11-09-1998   P   C  P   20
COM          MEDITATION/YOGA M-F615AM-720AM 08-17-1998  11-09-1998   P   C  P   36
COM          APPLIED MUSIC BEGIN TU730-1030 08-04-1998  10-27-1998   P   C  P   12
COM          ADVANCED YOGA WED/SUN 6-8 PM   04-12-1998  06-12-1998   P   C  P   20
THA          WELLNESS                       07-15-1996  10-15-1997   P   C  P   30
THA          WELLNESS                       06-11-1993  09-14-1993   P   C  P   24
THA          BEGINNING JOGGING              07-14-1993  08-13-1993   P   C  P   40
THA          BEGINNING WEIGHT LIFTING       07-14-1993  08-13-1993   P   C  P   40
THA          SIGN LANGUAGE                  11-19-1992  08-04-1993   P   C  P   42
THA          MUSIC THEORY                   03-11-1993  08-04-1993   P   C  P   21
THA          ACE FRENCH                     01-20-1993  06-02-1993   P   C  P   21
```

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

## PROGRESS REPORT: 11-04-2011
RegNo: 35316-136

### WORK DATA

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| ATL | CMPOUND PM | COMPOUND PM | 04-12-2011 | CURRENT |

#### History

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME | | |
|---|---|---|---|---|---|---|
| ATL | CMPOUND PM | COMPOUND PM | 04-12-2011 0959 | CURRENT | | |
| ATL | WEST YARD | WEST YARD AM | 03-31-2009 1126 | 04-12-2011 0959 | | |
| ATL | WEST YARD | WEST YARD AM | 07-07-2008 0001 | 03-31-2009 0925 | | |
| ATL | A/O | ADMISSION AND ORIENTATION | 06-10-2008 1700 | 07-07-2008 0001 | | |
| BEN | DW CMPND | CMPND DETAIL | 02-12-2008 1458 | 06-10-2008 1145 | | |
| BEN | REC III | RECREATION | 01-31-2008 0001 | 02-12-2008 1458 | | |
| BEN | DW CMPND | CMPND DETAIL | 01-29-2008 0001 | 01-31-2008 0001 | | |
| BEN | UNASSG | UNASSIGNED | 01-22-2008 1354 | 01-29-2008 0001 | | |
| BEN | F UNASPA&O | UNNASSIGNED PENDING A&O | 01-10-2008 1040 | 01-22-2008 1354 | | |
| ATL | DCU UNASSG | DETENTION CENTER UNASSIGNED | 01-04-2008 1051 | 01-10-2008 0433 | | |
| TAL | JAIL | WORK ASSG (A-PRE/A-HLD) | 01-03-2008 1624 | 01-04-2008 0403 | | |
| COM | C1 UNT ORD | C1 UNIT ORDERLIES | 09-06-2007 0001 | 01-03-2008 1110 | | |
| COM | REC 1 AM | REC 1 ORDERLY 7:30-3:30 | 04-25-2007 1418 | 09-06-2007 0001 | | |
| COM | UNASSG/AD | UNASSIGNED/ADMIN. DETENTION | 04-25-2007 1240 | 04-25-2007 1418 | COM | REC 1 |
| AM | REC 1 ORDERLY 7:30-3:30 | 08-17-2006 0001 | 04-25-2007 1240 | | | |
| COM | GEN MECH 2 | GENERAL MECHANIC DETAIL 2 | 09-26-2005 0001 | 08-17-2006 0001 | | |
| COM | GEN MECH 3 | GENERAL MECHANIC DETAIL 3 | 07-06-2005 0001 | 09-26-2005 0001 | | |
| COM | UNASSG | UNASSIGNED WORK DETAIL | 06-03-2005 0001 | 07-06-2005 0001 | | |
| COM | REC 1 AM | REC 1 ORDERLY 7:30-3:30 | 09-30-2000 0001 | 06-03-2005 0001 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 05-16-2001 1101 | 10-19-2001 1004 | | |
| COM | REC 2 PM | REC 2 ORDERLY 1230-830 PM | 04-07-2000 0001 | 09-30-2000 0001 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 03-16-2000 1441 | 09-20-2000 1541 | | |
| COM | UNASSG | UNASSIGNED WORK DETAIL | 02-03-2000 1139 | 04-07-2000 0001 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 02-03-2000 1139 | 02-28-2000 1601 | | |
| COM | UNASSG | UNASSIGNED WORK DETAIL | 01-18-2000 0958 | 02-03-2000 0852 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 01-18-2000 0958 | 02-03-2000 0958 | | |
| COM | UNASSG | UNASSIGNED WORK DETAIL | 01-04-2000 0912 | 01-18-2000 0833 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 01-04-2000 0912 | 01-18-2000 0833 | | |
| COM | UNASSG | UNASSIGNED WORK DETAIL | 12-17-1999 1011 | 01-04-2000 0742 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 12-17-1999 1011 | 01-04-2000 0742 | | |
| COM | UNASSG | UNASSIGNED WORK DETAIL | 12-07-1999 1906 | 12-17-1999 0842 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 12-13-1999 1001 | 12-17-1999 0842 | | |
| COM | IDLE | MEDICAL IDLE | 12-09-1999 1537 | 12-13-1999 0001 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 12-02-1999 1453 | 12-09-1999 1537 | | |
| COM | UNASSG/AD | UNASSIGNED/ADMIN. DETENTION | 12-02-1999 1453 | 12-07-1999 1906 | | |
| COM | UNASSG/AD | UNASSIGNED/ADMIN. DETENTION | 12-01-1999 0215 | 12-01-1999 0816 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 11-29-1999 1528 | 12-01-1999 0816 | | |
| COM | REC 2 PM | REC 2 ORDERLY 1230-830 PM | 11-29-1999 1528 | 12-01-1999 0215 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 11-25-1999 2124 | 11-29-1999 1247 | | |
| COM | REC 2 PM | REC 2 ORDERLY 1230-830 PM | 11-25-1999 2124 | 11-29-1999 1247 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 11-19-1999 1522 | 11-25-1999 1548 | | |
| COM | REC 2 PM | REC 2 ORDERLY 1230-830 PM | 11-22-1999 0001 | 11-25-1999 1548 | | |
| COM | REC 4 PM | REC 4 ASSISTANT 5:00-8:30 PM | 11-19-1999 1522 | 11-22-1999 0001 | | |
| COM | SKS MENTOR | SKILLS BUILDING MENTOR | 01-12-1999 1154 | 11-19-1999 1254 | | |
| COM | REC 4 PM | REC 4 ASSISTANT 5:00-8:30 PM | 04-24-1998 0001 | 11-19-1999 1254 | | |
| COM | REC 2 PM | REC 2 12:30 PM - 3:30 PM | 04-14-1998 0001 | 04-24-1998 0001 | | |
| COM | COMPND AM | COMPOUND ORDERLY | 04-13-1998 0001 | 04-14-1998 0001 | | |
| COM | UNASSG | UNASSIGNED WORK DETAIL | 04-09-1998 1434 | 04-13-1998 0001 | | |
| COM | A&O | ADMISSION AND ORIENTATION/ | 04-02-1998 0832 | 04-09-1998 1434 | | |
| COM | UNASSG | UNASSIGNED WORK DETAIL | 04-01-1998 1943 | 04-02-1998 0832 | | |
| OKL | UNASSG | UNASSIGNED HOLDOVER | 03-18-1998 1755 | 04-01-1998 0800 | | |
| THA | COMMISSARY | COMMISSARY | 04-18-1997 0001 | 03-19-1998 0800 | | |
| THA | ORD CORR 3 | ORDERLY CORRIDOR 1600 TO 2400 | 10-11-1996 1446 | 04-18-1997 0001 | | |
| THA | ORD CORR 3 | ORDERLY CORRIDOR 1600 TO 2400 | 10-10-1996 1901 | 10-11-1996 1902 | | |
| THA | ORD CORR 3 | ORDERLY CORRIDOR 1600 TO 2400 | 06-10-1995 0001 | 10-10-1996 1419 | | |
| THA | IDLE 3 | 3 DAY IDLE | 06-09-1995 0001 | 06-10-1995 0001 | | |
| THA | ORD CORR 3 | ORDERLY CORRIDOR 1600 TO 2400 | 12-14-1994 0001 | 06-09-1995 0001 | | |
| THA | FS-DIN RM | FOOD SERVICE DINING ROOM CREW | 12-10-1994 0001 | 12-14-1994 0001 | | |
| THA | FS-GEN | FOOD SERVICE GENERAL ASSIGNMNT | 12-09-1994 0001 | 12-10-1994 0001 | | |
| THA | ORD CORR 3 | ORDERLY CORRIDOR 1600 TO 2400 | 07-04-1990 0001 | 12-09-1994 0001 | | |
| THA | ORD CORR 2 | ORDERLY CORRIDOR 0800 TO 1600 | 07-03-1990 0001 | 07-04-1990 0001 | | |
| THA | FS | FOOD SERVICE | 06-29-1990 0001 | 07-03-1990 0001 | | |
| THA | A/O 3 | ADMISSION & ORIENTATION UNIT 3 | 06-21-1990 0811 | 06-29-1990 0001 | | |
| THA | UNASSG | UNASSIGNED WORK DETAIL | 06-20-1990 1235 | 06-21-1990 0811 | | |
| SRE | ADM DET | ADMINISTRATIVE DETENTION | 06-13-1990 2230 | 06-20-1990 0630 | | |
| LVN | SEG UNASSG | UNASSIGNED DUTY | 05-10-1990 1220 | 06-13-1990 1630 | | |
| LVN | FOOD | FOOD SERVICE | 04-11-1990 0001 | 05-10-1990 1220 | | |

# INMATE SKILLS DEVELOPMENT PLAN
## Name: BOWERS, VERONZA LEON

### PROGRESS REPORT: 11-04-2011
RegNo: 35316-136

```
LVN    RECREATION   RECREATION                11-24-1989 0001 04-11-1990 0001
LVN    YARD-E       EAST YARD ORDERLY         11-03-1989 0001 11-24-1989 0001
LVN    UNASSG       UNASSIGNED WORK DETAIL    10-13-1989 1513 11-03-1989 0001
ERE    PSYCH REV    SEG PSYCHIATRIC REVIEW    10-06-1989 2105 10-13-1989 0700
ERE    ADM DET      ADMINISTRATIVE DETENTION  10-06-1989 2041 10-13-1989 0700
ERE    UNASSG       UNASSIGNED WORK DETAIL    10-04-1989 2315 10-06-1989 2041
SHE    UNASSG       UNASSIGNED WORK DETAIL    09-25-1989 1431 10-04-1989 1157
LOM    REC PM       RECREATION DEPT PM        09-12-1985 0001 04-05-1988 1118
LOM    REC AM       RECREATION DEPT AM        09-12-1985 0001 04-05-1988 1118
LOM    REC          RECREATION DEPARTMENT     09-12-1985 0001 09-12-1985 0001
LOM    RECREATION   RECREATION DEPT           09-12-1985 0001 09-12-1985 0001
LOM    UNASSG       UNASSIGNED                09-04-1985 0001 09-12-1985 0001
LOM    RECREATION   RECREATION DEPT           12-05-1984 0001 09-04-1985 0001
LOM    IDLE 2       MEDICAL IDLE STATUS       03-05-1985 2116 03-07-1985 0001
LOM    VACATION     VACATION                  11-16-1984 0001 12-05-1984 0001
LOM    RECREATION   RECREATION DEPT           08-15-1983 0001 11-16-1984 0001
LOM    VACATION     VACATION                  07-29-1983 0001 08-15-1983 0001
LOM    RECREATION   RECREATION DEPT           09-02-1982 1534 07-29-1983 0001
LOM    FOOD SVC     FOOD SERVICE              08-31-1982 1655 09-02-1982 1534
ERE    UNASSG       UNASSIGNED                04-22-1981 1600 05-08-1981 0600
PET    NA           NOT APPLICABLE            03-05-1980 2041 03-07-1980 1525
```

```
G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

## DISCIPLINE DATA

| History |
| --- |

DISCIPLINE DATA DOES NOT EXIST FOR THIS INMATE

## MOVEMENT DATA

| Facility | Assignment | Description | Start Date | Stop Date |
| --- | --- | --- | --- | --- |
| ATL | A-DES | DESIGNATED, AT ASSIGNED FACIL | 03-31-2009 | CURRENT |

| History |
| --- |

| SUB-FACL | ASSIGNMENT | CODE | MOVEMENT DESCRIPTION | DATE |
| --- | --- | --- | --- | --- |
| ATL | A-DES | 164 | OTHER AUTH ABSENCE RETURN | 03-31-2009 |
| ATL | LOCAL HOSP | 254 | ESC TRP TO LOCAL HOSP W/RETN | 03-31-2009 |
| ATL | A-DES | 198 | TRANSFER RECEIVED | 06-10-2008 |
| S39 | RELEASE | 391 | RELEASED FROM IN-TRANSIT FACL | 06-10-2008 |
| S39 | A-ADMIT | 091 | ADMITTED TO AN IN-TRANSIT FACL | 06-10-2008 |
| BEN | TRANSFER | 339 | TRANSFER-CARE LEVEL INCREASED | 06-10-2008 |
| BEN | A-DES | 198 | TRANSFER RECEIVED | 01-10-2008 |
| B03 | RELEASE | 391 | RELEASED FROM IN-TRANSIT FACL | 01-10-2008 |
| B03 | A-ADMIT | 091 | ADMITTED TO AN IN-TRANSIT FACL | 01-10-2008 |
| ATL DCU | HLD REMOVE | 265 | HOLDOVER REMOVED | 01-10-2008 |
| ATL DCU | A-BOP HLD | 162 | HOLDOVER FOR INST TO INST TRF | 01-04-2008 |
| B14 | RELEASE | 391 | RELEASED FROM IN-TRANSIT FACL | 01-04-2008 |
| B14 | A-ADMIT | 091 | ADMITTED TO AN IN-TRANSIT FACL | 01-04-2008 |
| TAL DCU | HLD REMOVE | 265 | HOLDOVER REMOVED | 01-04-2008 |
| TAL DCU | A-BOP HLD | 162 | HOLDOVER FOR INST TO INST TRF | 01-03-2008 |
| B14 | RELEASE | 391 | RELEASED FROM IN-TRANSIT FACL | 01-03-2008 |
| B14 | A-ADMIT | 091 | ADMITTED TO AN IN-TRANSIT FACL | 01-03-2008 |
| COM | TRANSFER | 313 | TRANSFER-NEARER RELEASE | 01-03-2008 |
| COM | A-DES | 198 | TRANSFER RECEIVED | 11-04-2001 |

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

## PROGRESS REPORT: 11-04-2011
RegNo: 35316-136

```
COM  SKILLS    A-DES        325    TRANSFER-PROGRAM COMPLETED      11-04-2001
COM  SKILLS    A-DES        198    TRANSFER RECEIVED               07-07-2000
COM            A-DES        324    TRANSFER-PROGRAM PARTICIPATION  07-07-2000
COM            A-DES        164    OTHER AUTH ABSENCE RETURN       02-03-2000
COM            LOCAL HOSP   254    ESC TRP TO LOCAL HOSP W/RETN    02-03-2000
COM            A-DES        164    OTHER AUTH ABSENCE RETURN       01-18-2000
COM            LOCAL HOSP   254    ESC TRP TO LOCAL HOSP W/RETN    01-18-2000
COM            A-DES        164    OTHER AUTH ABSENCE RETURN       01-04-2000
COM            LOCAL HOSP   254    ESC TRP TO LOCAL HOSP W/RETN    01-04-2000
COM            A-DES        164    OTHER AUTH ABSENCE RETURN       12-17-1999
COM            LOCAL HOSP   254    ESC TRP TO LOCAL HOSP W/RETN    12-17-1999
COM            A-DES        164    OTHER AUTH ABSENCE RETURN       12-02-1999
COM            LOCAL HOSP   254    ESC TRP TO LOCAL HOSP W/RETN    12-01-1999
COM            A-DES        164    OTHER AUTH ABSENCE RETURN       11-29-1999
COM            LOCAL HOSP   254    ESC TRP TO LOCAL HOSP W/RETN    11-29-1999
COM            A-DES        164    OTHER AUTH ABSENCE RETURN       11-25-1999
COM            LOCAL HOSP   254    ESC TRP TO LOCAL HOSP W/RETN    11-25-1999
COM            A-DES        164    OTHER AUTH ABSENCE RETURN       11-19-1999
COM            LOCAL HOSP   254    ESC TRP TO LOCAL HOSP W/RETN    11-19-1999
COM            A-DES        198    TRANSFER RECEIVED               04-01-1998
A01            RELEASE      391    RELEASED FROM IN-TRANSIT FACL   04-01-1998
A01            A-ADMIT      091    ADMITTED TO AN IN-TRANSIT FACL  04-01-1998
OKL  M         HLD REMOVE   265    HOLDOVER REMOVED                04-01-1998
OKL  M         A-HLD        165    HOLDOVER, TEMPORARILY HOUSED    03-19-1998
A01            RELEASE      391    RELEASED FROM IN-TRANSIT FACL   03-19-1998
A01            A-ADMIT      091    ADMITTED TO AN IN-TRANSIT FACL  03-19-1998
THA            TRANSFER     908    TRANSFER-CLASSIF, LESS SEC      03-19-1998
THA            A-DES        164    OTHER AUTH ABSENCE RETURN       10-11-1996
THA            LOCAL HOSP   254    ESC TRP TO LOCAL HOSP W/RETN    10-10-1996
THA            A-DES        164    OTHER AUTH ABSENCE RETURN       10-10-1996
THA            LOCAL HOSP   254    ESC TRP TO LOCAL HOSP W/RETN    10-10-1996
```

## CASE MANAGEMENT ASSIGNMENTS

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| ATL | PROG RPT | NEXT PROGRESS REPORT DUE DATE | 11-04-2014 | CURRENT |
| ATL | RPP PART | RELEASE PREP PGM PARTICIPATES | 02-04-2005 | CURRENT |
| ATL | RPP UNT C | RELEASE PREP UNIT PGM COMPLETE | 05-08-2003 | CURRENT |
| ATL | CF REMOVAL | COMMON FARE PROGRAM REMOVAL | 04-27-1998 | CURRENT |
| ATL | V94 CVB913 | V94 CURR VIOL BEFORE 91394 | 12-16-1995 | CURRENT |

## MEDICAL DUTY STATUS ASSIGNMENTS

| Facility | Assignment | Description | Start Date | Stop Date |
|---|---|---|---|---|
| ATL | NO F/S | NO FOOD SERVICE WORK | 08-05-2008 | CURRENT |
| ATL | REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 01-10-2008 | CURRENT |

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

## PROGRESS REPORT: 11-04-2011
RegNo: 35316-136

## ACADEMIC

| Status | Response Summary |
|---|---|
| ✓ | **INTELLECTUAL FUNCTIONING**<br>⊕ no intellectual deficits<br>ⓘ has NOT attended special education classes |
| ✓ | **LITERACY**<br>⊕ GED obtained<br>ⓘ not obtained through BOP |
| ✓ | **LANGUAGE**<br>⊕ fluent in English as primary language |
| ❗ | **COMPUTER SKILLS**<br>⊖ lacks keyboarding skills<br>⊖ lacks word processing skills<br>⊖ lacks internet navigation skills |

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

# PROGRESS REPORT: 11-04-2011
RegNo: 35316-136

## ACADEMIC

| Progress and Goals |
| --- |
| PREVIOUS PROGRESS REPORT: 20110913 |
| PREVIOUS TEAM: 20081224 |
| Inmate has completed his GED requirement |
| Recommend enrollment in typing class |
| PREVIOUS TEAM: 20090102 |
| Inmate Bowers completed the Basic Spanish course on 10-5-08. |
| Recommend enrollment in typing class. |
| PREVIOUS TEAM: 20090619 |
| RECOMMEND PARTICIPATION IN CORRESPONDENCE AND ACE PROGRAMS BY 12/2009. |
| PREVIOUS TEAM: 20091206 |
| Continue to improve in Correspondence course. |
| PREVIOUS TEAM: 20100512 |
| Continue progress in Correspondence course |
| PREVIOUS TEAM: 20100929 |
| He continues to progress in Correspondence Course |
| PREVIOUS TEAM: 20101011 |
| HE IS PARTICIPATING IN A CORRESPONDENCE COURSE.  WE RECOMMEND HE CONTINUE TO SO AND PROVIDE US PROOF UPON COMPLETION NLT 10-11-11. |
| PREVIOUS TEAM: 20110407 |
| HE IS CURRENTLY PARTICIPATING IN A CORRESPNDENCE COURSE.  HE IS PROGRAMMING IN THIS AREA. |
| 5-23-2011 COMPLETED CORRESPONDENCE COURSE WITH 80 HOURS RECOMMEND PARTICIPATION IN ANY ACE PROGRAM, NLT 12-2011 |
| PREVIOUS TEAM: 20110927 |
| 5-23-2011 COMPLETED CORRESPONDENCE COURSE WITH 80 HOURS RECOMMEND PARTICIPATION IN ANY ACE PROGRAM, NLT 12-2011 |

## VOCATIONAL/CAREER

| Status | Response Summary |
| --- | --- |
|  | **EMPLOYMENT HISTORY**<br>ⓘ unemployed at time of arrest<br>⊖ no consistent history of employment 5 years prior to incarceration<br>ⓘ other: According to PSI, employment history is unverified, but the i/m reported that he worked as a carpenter apprentice, auto mechanic, & oil refinery laborer. |
|  | **CAREER DEVELOPMENT**<br>⊕ possesses significant expertise in field |

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

**PROGRESS REPORT: 11-04-2011**
RegNo: 35316-136

## VOCATIONAL/CAREER

| | |
|---|---|
| | ① Construction and Extraction - 47<br>① Other, specify.... Auto Mechanic Oil Refinery Laborer<br>⊖ no realistic career/job goals upon release |
|  | **INSTITUTION WORK HISTORY**<br>⊕ has a consistent institution work history<br>Eval: 10-31-2011 Good<br>Eval: 09-30-2011 Good<br>Eval: 08-31-2011 Good<br>Eval: 07-31-2011 Good<br>Eval: 06-30-2011 Good<br>Eval: 05-31-2011 Good |
|  | **POST INCARCERATION EMPLOYMENT**<br>⊖ post-incarceration employment not secured<br>① other: Life Sentence<br>⊖ no release documents obtained to date |

**INMATE SKILLS DEVELOPMENT PLAN**
Name: BOWERS, VERONZA LEON

**PROGRESS REPORT: 11-04-2011**
RegNo: 35316-136

## VOCATIONAL/CAREER

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20110913 |
| PREVIOUS TEAM: 20081224 |
| Enroll in two classes of choice such as Yoga and Bike Spin by next review. |
| PREVIOUS TEAM: 20090102 |
| Enroll in two classes of choice such as Yoga or Bike Spin by next review. |
| PREVIOUS TEAM: 20090619 |
| RECOMMEND PARTICIPATION IN ANY VOCATIONAL EDUCATION PROGRAM OF INTEREST BY 12/2009. |
| Complete the Vocational course by 12/2017. |
| PREVIOUS TEAM: 20091206 |
| |
| PREVIOUS TEAM: 20100512 |
| Recommend enrollment in Career Development by Oct 2010 |
| PREVIOUS TEAM: 20100929 |
| No documentation which suggest you are enrolled in Career Development Courses. |
| PREVIOUS TEAM: 20101011 |
| HE IS NOT INVOLVED IN A VT CLASS I.E. CAREER DEVELOPMENT COURSE. WE RECOMMEND YOU ENROLL IN A VT CLASS 2 MONTHS AFTER COMPLETION OF THE ABOVE CORRESPONDENCE COURSE |
| PREVIOUS TEAM: 20110407 |
| WITHIN 2 MONTHS OF COMPLETING THE CORRESPONDENCE COURSE, WE RECOMMEND YOU ENROLL IN A VT CLASS OF YOUR CHOICE. |
| NO ENROLLMENT TO DATE |
| PREVIOUS TEAM: 20110927 |
| Progress: NO ENROLLMENT TO DATE |
| Goal: 1. Recommend that you enroll in a VT program of choice by 09-2012. <br> 2. Maintain an institution work assignment through 09-2012 striving for outstanding work performance evaluations. |

## INTERPERSONAL

| Status | Response Summary |
|---|---|
| ✓ | **RELATIONSHIPS** <br> ⊕ no adverse life experiences <br> ⊕ no negative peer influences prior to incarceration |
| ✓ | **FAMILY TIES/SUPPORT SYSTEM** <br> ⊕ consistent social support available <br> Immediate Family: Financial |

# INMATE SKILLS DEVELOPMENT PLAN

**PROGRESS REPORT: 11-04-2011**

Name: BOWERS, VERONZA LEON

RegNo: 35316-136

## INTERPERSONAL

| | |
|---|---|
| | Immediate Family: Emotional<br>Immediate Family: General<br>Relative: Financial<br>Relative: Emotional<br>Relative: General<br>Friend: Financial<br>Friend: Emotional |
|  | **PARENTAL RESPONSIBILITY**<br>ⓘ no children under the age of 21<br>ⓘ no children under the age of 21 financially responsible for<br>ⓘ RRC (MINT) Placement is not applicable |
|  | **COMMUNICATION**<br>⊕ displays good communication skills |

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

## PROGRESS REPORT: 11-04-2011
RegNo: 35316-136

## INTERPERSONAL

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20110913 |
| PREVIOUS TEAM: 20081224 |
| Maintain clear conduct, and earn satisfactory work ratings. |
| PREVIOUS TEAM: 20090102 |
| Maintain clear conduct, and earn satisfactory work ratings. |
| PREVIOUS TEAM: 20090619 |
| Maintain clear conduct, and earn satisfactory work ratings. |
| PREVIOUS TEAM: 20091206 |
| |
| PREVIOUS TEAM: 20100512 |
| THE UNIT TEAM RECOMMENDS YOU CONTINE TO MAINTAIN CORRESPONDENCE WITH YOUR FAMILY AND FRIENDS AS YOU INDICATED. |
| PREVIOUS TEAM: 20100929 |
| He continues to maintain correspondence with his family. |
| PREVIOUS TEAM: 20101011 |
| HE INDICATED HE CORRESPONDS WITH FAMILY AND FRIENDS.  WE ENCOURAGE HIM TO DO SO THROUGHOUT HIS ENTIRE PERIOD OF INCARCERATTION. |
| PREVIOUS TEAM: 20110407 |
| HE STILL CORRESPONDES WITH FAMILY, FRIENDS, AND ASSOCIATES.  WE RECOMMEND YOU CONTINUE TO DO SO THROUGHOUT YOUR ENTIRE PERIOD OF INCARCERATION. |
| PREVIOUS TEAM: 20110927 |
| Progress:  Bowers has made contact with family and friends via        since last program review. |
| Goal:  Recommend that you utilize all mehods of communication at least bi-monthly with family and friends via email, telephone calls, correspondence, and visits through 03-2012. |

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

**PROGRESS REPORT: 11-04-2011**
RegNo: 35316-136

## WELLNESS

| Status | Response Summary |
|---|---|
| ⊕ | **HEALTH PROMO/DISEASE PREVENT** |
| | ⊖ overweight |
| | ① height 5 ft. 10 in. |
| | ① weight (lbs) 202 |
| | ① BMI Score 29 |
| | ① date calculated 11-20-2008 |
| | ⊖ no regular exercise |
| | ⊖ evidence of behaviors associated with increased risk of infectious disease |
| | ① unprotected promiscuous sexual activity |
| | ⊕ does not use tobacco (cigarettes, cigars, and/or smokeless tobacco) |
| | ⊕ had a primary care provider or clinic (prior to incarceration) |
| | ⊖ does not have health insurance coverage upon release |
| ⊕ | **DISEASE/ILLNESS MANAGEMENT** |
| | ⊕ complies with treatment recommendations and/or takes medications as prescribed, or none required |
| | ⊖ medical Care Level II (Chronic care - stable) - See Exit Summary |
| | ⊖ dental problems - See Exit Summary |
| | ⊕ no non-routine services/assistance devices needed |
| ❓ | **TRANSITIONAL PLAN** |
| | ⊕ does not require medication upon release from custody |
| | ⊖ requires on-going treatment or follow-up after release from custody - See Exit Summary |
| | ① TB Clearance NOT Complete |
| | ⊕ health Services recommends for RRC placement |
| ⊕ | **GOVERNMENT ASSISTANCE** |
| | ① has not previously received Social Security assistance |
| | ⊕ eligible for Social Security assistance after release |
| | ⊖ application not submitted to SSA |
| | ① has served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard |
| | ① spouse or a parent has not served in the U.S. Armed Forces, U.S. Military Reserves, AND/OR U.S. National Guard |
| | ⊖ application not submitted to VA |
| | ① has previously received veterans benefits |

# INMATE SKILLS DEVELOPMENT PLAN

## PROGRESS REPORT: 11-04-2011

Name: BOWERS, VERONZA LEON

RegNo: 35316-136

## WELLNESS

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20110913 |
| PREVIOUS TEAM: 20081224 |
| PREVIOUS TEAM: 20090102 |
| Inmate Bowers is currently enrolled in the Health Education course. Continue satisfactory participation through next review. |
| Complete Health Education by 12/2009. |
| PREVIOUS TEAM: 20090619 |
| Inmate Bowers completed the Health Edcuation course in 9/08. |
| PREVIOUS TEAM: 20091206 |
| PREVIOUS TEAM: 20100512 |
| YOU HAVE ENROLLED IN 2 RUN AND JOG YOUR WAY TO FIT WHILE PARTICIPATING IN YOGA AND MEDITATION CLASSES. |
| PREVIOUS TEAM: 20100929 |
| Continue currentl programs. |
| PREVIOUS TEAM: 20101011 |
| HE INDICATED HE WALKS, DOES YOGA, AND MEDITATES.  STAFF ARE AWARE OF THIS AND RECOMMEND HE CONTINUE TO DO SO DURING HIS ENTIRE PERIOD OF INCARCERATION . |
| PREVIOUS TEAM: 20110407 |
| HE IS STILL WALKING AND INVOLVED WITH YOGA.  WE RECOMMEND YOU CONTINUE WITH YOUR YOGA AND POSSIBLY BEGIN TEACHING CLASSES AGAIN.  HE INDICATED THIS IS A LIFE STYLE FOR HIM AND HE WILL CONTINUE TO DO SO. |
| PREVIOUS TEAM: 20110927 |
| Progress: |
| Goal: 1.  Continue with participation in yoga  2.  Look at other wellness programs offered by 03-2012. |

## MENTAL HEALTH

| Status | Response Summary |
|---|---|
| ① | **SUBSTANCE ABUSE MANAGEMENT** <br> ① no evidence of inappropriate use of alcohol, prescription medications and/or illegal drugs in the year prior to arrest <br> ⊖ no history of substance abuse treatment <br> ① not currently participating in substance abuse treatment |
| ✓ | **MENTAL ILLNESS MANAGEMENT** <br> ⊕ no history of mental health diagnosis prior to incarceration |

# INMATE SKILLS DEVELOPMENT PLAN
## PROGRESS REPORT: 11-04-2011
· Name: BOWERS, VERONZA LEON

RegNo: 35316-136

## MENTAL HEALTH

|  |  |
|---|---|
|  | ⊕ no mental health diagnosis during incarceration |
|  | ⊕ no history of serious suicidal ideation or attempts |
|  | **TRANSITIONAL PLAN**<br>⊕ no medication required upon release from custody<br>⊕ does not require on-going treatment after release from custody<br>⊕ psychology services recommends RRC placement |
|  | **APPROPRIATE SEXUAL BEHAVIOR**<br>⊕ no evidence of sexually inappropriate behavior |

### Progress and Goals

PREVIOUS PROGRESS REPORT: 20110913

PREVIOUS TEAM: 20081224

adjusting appropriately and plans for routine release.

PREVIOUS TEAM: 20090102

adjusting appropriately and plans for routine release.

PREVIOUS TEAM: 20090619


PREVIOUS TEAM: 20091206


PREVIOUS TEAM: 20100512


PREVIOUS TEAM: 20100929

* Visit the Psychology Department at USP Atlanta and enroll in sociology classes that encourage you to "Refrain from using drugs" and "Refrain from excessive alcohol use" NLT 01-2011.

PREVIOUS TEAM: 20101011

HE WILL CONTACT THE PSYC. DEPT IF NEED BE. HE WILL REFRAIN FROM USING DRUGS AND ALCOHOL. WE RECOMMEND HE CONTINUE TO DO SO THROUGHOUT HIS ENTIRE PERIOD OF INCARCERATION.

PREVIOUS TEAM: 20110407

HE HAS NOT NEEDED THE ASSISTANCE OF THE PSYCHOLOGY DEPT. HOWEVER, HE INDICATED HE WOULD SEEK THEIR ASSISTANCE IF NEEDED. WE RECOMMEND YOU ENROLL IN ANY OF THE MANY PSYCHOLOGY COURSES BY 10-1-11.

PREVIOUS TEAM: 20110927

Progress: No mental health concerns.

# INMATE SKILLS DEVELOPMENT PLAN

Name: BOWERS, VERONZA LEON

## PROGRESS REPORT: 11-04-2011

RegNo: 35316-136

## COGNITIVE

| Status | Response Summary |
|---|---|
| ✓ | **GENERAL BEHAVIOR**<br>⊕ no evidence of behavioral problems as a juvenile<br>⊕ no evidence of behavioral problems as an adult |
| ❗ | **CRIMINAL HISTORY**<br>⊖ violent and/or sex offender (current/prior)<br>  homicide/manslaughter/murder: Single occurrence(s)<br>  escape: Single occurrence(s)<br>  other (Burglary): Single occurrence(s)<br>  other (Abusing an Officer): Single occurrence(s) |
| ✓ | **DOMESTIC VIOLENCE/ABUSE**<br>⊕ no history of domestic violence or abuse |
| ❗ | **CRIMINAL BEHAVIOR**<br>⊕ no onset of criminal behavior before the age of 14<br>⊕ no criminal versatility: Convictions in less than 3 categories<br>⊖ significant history of violence: 2 or more violent convictions |

# INMATE SKILLS DEVELOPMENT PLAN

## PROGRESS REPORT: 11-04-2011

Name: BOWERS, VERONZA LEON

RegNo: 35316-136

## COGNITIVE

| Progress and Goals |
|---|
| PREVIOUS PROGRESS REPORT: 20110913 |
| PREVIOUS TEAM: 20081224 |
| PREVIOUS TEAM: 20090102 |
| Inmate Bowers' institutional adjustment has been satisfactory.  He was scheduled to attend his Parole Hearing in 12/2008; however, he declined the Hearing and refused to appear.  He also refused to signed the Application for Hearing Waiver on 10/30/08. |
| PREVIOUS TEAM: 20090619 |
| To date, the latest Notice of Action (NOA) has not been received by Unit Team.  Case Manager requested NOA 6/19/09. |
| PREVIOUS TEAM: 20091206 |
| PREVIOUS TEAM: 20100512 |
| PREVIOUS TEAM: 20100929 |
| * Enroll in Classes that encourage you to "Maintain clear conduct throughout incarceration" and "Refrain from associating with unsavory characters, to prevent the possibility of committing another crime" NLT 12-2010. |
| PREVIOUS TEAM: 20101011 |
| WE CONTINUE TO RECOMMEND YOU MAINTAIN CLEAR CONDUCT THROUGHOUT YOUR ENTIRE PERIOD OF INCARCERATION. |
| PREVIOUS TEAM: 20110407 |
| HE HAS MAINTAINED CLEAR CONDUCT.  WE CONTINUE TO RECOMMEND YOU MAINTAIN CLEAR DEPORTMENT THROUGHOUT YOUR ENTIRE PERIOD OF INCARCERATION. |
| PREVIOUS TEAM: 20110927 |
| Progress:  Bowers maintain a clear conduct record since incarceration. |

## CHARACTER

| Status | Response Summary |
|---|---|
|  | **PERSONAL CHARACTER** |
| | ⊖ insufficient variety of behaviors to warrant overall positive personal character |
| | ⊕ evidence of spirituality |
| | talks to a friend or mentor about spiritual/religious issues: Always |
| | active participation in a faith group: Always |
| | connected to outside spiritual/religious community: Always |
| | examines actions to see if they reflect values: Always |
| | finds meaning in times of hardship: Always |
| | ① religious assignment: AMER IND |
| | ⊕ no evidence easily influenced by other |

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

**PROGRESS REPORT: 11-04-2011**
RegNo: 35316-136

## CHARACTER



**PERSONAL RESPONSIBILITY**

① reports responsibility for current incarceration as:
⊖ informants
⊖ government corruption
⊖ law enforcement corruption

⊖ no efforts to make amends for their crime(s)

---

**Progress and Goals**

PREVIOUS PROGRESS REPORT: 20110913

PREVIOUS TEAM: 20081224

Continue satisfactory ratings, and continue participation in the Spanish class, and enroll in one counseling course.  Complete Spanish class by 7-2010.

PREVIOUS TEAM: 20090102

Continue satisfactory ratings. Enroll in two programs of choice such as a counseling group or exercise course.

PREVIOUS TEAM: 20090619

Continue satisfactory ratings. Enroll in two programs of choice such as a counseling group, education or exercise course.

PREVIOUS TEAM: 20091206

PREVIOUS TEAM: 20100512

PREVIOUS TEAM: 20100929

* Visit the Religious Services Department and enroll in Classes that encourage you to "Use spirituality in a positive way, to stay connected with your values, by attending religious services regularly and
Assume always responsibility for your actions.# NLT 01-2011.

PREVIOUS TEAM: 20101011

HE INDICATED HE PARTICIPATES IN ACTIVITIES OF THE RELIGIOUS SVC. DEPT THROUGHOUT YOUR ENTIRE PERIOD OF INCARCERATION.

PREVIOUS TEAM: 20110407

HE HAS CONTINUED HIS INVOLVEMENT WITH RELIGIOUS SERVICE ACTIVITIES.  WE RECOMMEND YOU CONTINUE TO DO SO THROUGH OUT THE REMAINDER OF YOUR INCARCERATION.  KEEP UP THE GOOD WORK.

PREVIOUS TEAM: 20110927

Progress: He has been the instructor for the meditation program.

Goal:  Reommend that you continue instructing this class through next review in 03-2012.

# INMATE SKILLS DEVELOPMENT PLAN

Name: BOWERS, VERONZA LEON

## PROGRESS REPORT: 11-04-2011

RegNo: 35316-136

## LEISURE

| Status | Response Summary |
|---|---|
|  | **USE OF LEISURE TIME**<br>⊕ activities indicative of positive use of leisure time;<br>⊕ participation in a faith group<br>⊕ participation in a social/civic/community organization(s)<br>⊕ charitable organizations/volunteer work<br>⊕ family time<br>⊕ sports/exercise<br>⊕ movies/television/music<br>⊕ reading<br>⊕ hobbies (includes hunting, fishing, etc.) |

### Progress and Goals

PREVIOUS PROGRESS REPORT: 20110913

PREVIOUS TEAM: 20081224

Continue Spanish studies.

PREVIOUS TEAM: 20090102

PREVIOUS TEAM: 20090619

RECOMMEND ENROLLING IN RECREATIONAL PROGRAMS SUCH AS WALKING, NFPT, BIKE SPINNING OR MEN'S HEALTH CLASSES BY OCT 2009. Completes one course of interest by 12/2009.

PREVIOUS TEAM: 20091206

completed the Yoga Class.

PREVIOUS TEAM: 20100512

Continue progress in Run and Jog class.

PREVIOUS TEAM: 20100929

* NLT December 2010, engage in leisure activities such as reading, walking, meditating, or any others that may help you enjoy your free time in a positive way.

PREVIOUS TEAM: 20101011

HE READS, EXERCISES AND MEDITATES. STAFF ARE AWARE OF THIS. WE CONTINUE TO ENCOURAGE HIM TO DO SO THROUGHOUT HIS ENTIRE PERIOD OF INCARCERATION.

PREVIOUS TEAM: 20110407

HE HAS COMPLIED WITH THE PRIOR TEAM'S RECOMMENDATION. WE CONTINUE TO RECOMMEND YOU READ, EXERCISE AND MEDITATION DURING THE REMAINDER OF YOUR INCARCERATION.

NO ADDITIONAL PROGRAM PARTICIAPTION

PREVIOUS TEAM: 20110927

Progress: NO ADDITIONAL PROGRAM PARTICIAPTION.

Goal: Stay abreast of current issues via newspaper, magazines, or television, and discuss a current event at your next program review in 03-2012.

# INMATE SKILLS DEVELOPMENT PLAN

**PROGRESS REPORT: 11-04-2011**

Name: BOWERS, VERONZA LEON

RegNo: 35316-136

## DAILY LIVING

| Status | Response/Summary |
|---|---|
| ⊗ | **FINANCIAL MANAGEMENT** <br> ⊖ no knowledge in maintaining checking account <br> ⊖ no knowledge in maintaining savings account <br> ⊖ no knowledge in utilizing an ATM debit card <br> ⊖ no knowledge in obtaining loans? <br> ⊖ no positive credit history <br> ⊖ did not live within financial means <br> ⊖ does not pay monthly bills on time |
| ✓ | **FOOD MANAGEMENT** <br> ⊕ possesses grocery shopping/consumer skills <br> ⊕ makes good nutritional choices to maintain health <br> ⊕ possesses basic food preparation skills <br> ⊕ knowledgeable in accessing community resources to obtain food |
| ✓ | **PERSONAL HYGIENE/SANITATION** <br> ⊕ good personal hygiene and sanitation <br> ① quarters assignment: HOUSE D/RANGE 05/BED 510L |
| ⊗ | **TRANSPORTATION** <br> ⊖ does not have valid driver's license <br> ⊕ No outstanding motor vehicle violations <br><br> ⊖ does not own personal vehicle with appropriate insurance <br> ⊕ possesses public transportation skills and has access to public transportation |
| ⊗ | **IDENTIFICATION** <br> ⊖ does not have photo identification <br> ⊖ does not have birth certificate <br> ⊕ has social security card |
| ✓ | **HOUSING** <br> ⊕ established housing year prior to incarceration <br> ① established housing: paid rent <br> ① established housing: lived with family <br> ① established housing: non-publicly assisted <br> ⊕ established housing not in a high crime neighborhood <br><br> ⊕ housing upon release <br> ① supervision district is not a relocation <br> ① anticipated housing plan NOT approved by USPO(s) <br> ① other: Proposed release residence must be approved by USPO. |
| ⊗ | **RESIDENTIAL REENTRY CENTER (RRC) PLACEMENT** <br> ⊖ not recommended for RRC placement <br> ① Managment Decision: Inmate is currently serving a life sentence. If he is granted a release, he will be reviewed for a halfway house placement. |
| ✓ | **FAMILY CARE** <br> ⊕ not responsible for obtaining child care for any dependent children upon release <br> ⊕ not responsible for obtaining elder care for any dependent(s) upon release |

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

## PROGRESS REPORT: 11-04-2011
RegNo: 35316-136

## DAILY LIVING

| | |
|---|---|
| ⊕ not responsible for obtaining any other special services for dependents upon release | |

### Progress and Goals

PREVIOUS PROGRESS REPORT: 20110913

PREVIOUS TEAM: 20081224

Maintain clear conduct, and earn satisfactory work and cell sanitation ratings.

PREVIOUS TEAM: 20090102

Maintain clear conduct, and earn satisfactory work and cell sanitation ratings.

PREVIOUS TEAM: 20090619

Maintain clear conduct, and earn satisfactory work and cell sanitation ratings.

PREVIOUS TEAM: 20091206

Unit team recommends Mr. Bowers save $25 per month toward his release date. Next team he should have $25.00 + $185.03 (current account bal) = $210.03 in his inmate account.

PREVIOUS TEAM: 20100512

HE HAS FAILED TO SAVE THE $210 AT THIS TIME. HE'S SPENDING THE MONEY IN COMMISSARY ON FOOD.

PREVIOUS TEAM: 20100929

He has saved $90.11 toward release funds.

PREVIOUS TEAM: 20101011

HE HAS $68.66 IN HIS ACCOUNT. WE RECOMMEND YOU HAVE $100.00 IN YOUR ACCOUNT BY 2-1-11.

PREVIOUS TEAM: 20110407

HE HAS $249.00 IN HIS ACCOUNT. HE HAS COMPLIED WITH THE TEAM'S RECOMMENDATION. BY YOUR NEXT TEAM, WE RECOMMEND YOU HAVE AN ADDITIONAL $75.00.

PREVIOUS TEAM: 20110927

Progress: Bowers has an account balance of $114.77.

Goal: Recommend that you continue to maintain some funds in your account. Recommend that you strive for outstanding cell sanitation and comply with inmate personal property limits.

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

## PROGRESS REPORT: 11-04-2011
RegNo: 35316-136

## INMATE SKILLS STATUS

| Status | | Initial Assessment 12-24-2008 | Previous Assessment 09-27-2011 | Current Assessment 11-04-2011 |
|---|---|---|---|---|
| ! | Attention Required | 56.1% | 41.1% | 37.8% |
| | Mitigating Issues | 0% | 0% | 0% |
| ? | Unanswered | 8.3% | 6.7% | 2.8% |
| ✓ | Satisfactory | 32.8% | 49.4% | 56.7% |
| ⊘ | Not Applicable | 2.8% | 2.8% | 2.8% |

| Skill Area | Attention Required ! | Mitigating Issues | Unanswered ? | Satisfactory ✓ | Not Applicable ⊘ |
|---|---|---|---|---|---|
| Academic | 5% | 0% | 0% | 95% | 0% |
| Vocational/Career | 60% | 0% | 0% | 40% | 0% |
| Interpersonal | 0% | 0% | 0% | 90% | 10% |
| Wellness | 60% | 0% | 25% | 15% | 0% |
| Mental Health | 10% | 0% | 0% | 75% | 15% |
| Cognitive | 60% | 0% | 0% | 40% | 0% |
| Character | 80% | 0% | 0% | 20% | 0% |
| Leisure | 0% | 0% | 0% | 100% | 0% |
| Daily Living | 65% | 0% | 0% | 35% | 0% |

# INMATE SKILLS DEVELOPMENT PLAN
Name: BOWERS, VERONZA LEON

## PROGRESS REPORT: 11-04-2011
RegNo: 35316-136

## SIGNATURES

| Individual | Signature | Date |
|---|---|---|
| Case Manager:<br>S. PAYNE, 404-635-5283 | R. Taylor | 11/4/11 |
| [] Chairperson<br>or<br>Unit Manager:<br>TAYLOR | R. Taylor | 11/4/11 |
| Inmate:<br>BOWERS, VERONZA<br>LEON | V. Bowers | 11/4/11 |

09/27/2007  11:13   202-547-°° 90                    GRANDLDGFOPLEGISOFC                    PAGE  02



## GRAND LODGE
# FRATERNAL ORDER OF POLICE®

309 Massachusetts Ave., N. E.
Washington, DC 20002
Phone 202-547-8189 • Fax 202-547-8190

**CHUCK CANTERBURY**
NATIONAL PRESIDENT

**JAMES O. PASCO, JR.**
EXECUTIVE DIRECTOR

25 September 2007

The Honorable Edward F. Reilly, Jr.
Chairman
United States Parole Commission
5550 Friendship Boulevard, Suite 420
Chevy Chase, MD 20815-7286

Dear Chairman Reilly,

I am writing on behalf of the members of the Fraternal Order of Police as an "interested party" in the case of Veronza L. Bowers, Jr. (#35316-136), the murderer of a Federal law enforcement officer, U.S. Park Ranger Kenneth C. Patrick. I previously submitted information on this case to the U.S. Parole Commission in 2005.

On Wednesday, 1 August, staff members in the FOP's Washington, D.C. office were contacted by Tomie Patrick Lee, the widow of Ranger Patrick, who advised us that her husband's killer was to have a parole hearing on Friday morning, 3 August. This was the first notice she had received about this hearing and, as she is a Federal employee currently serving in Alaska, there was no time at all for her to make arrangements to attend the hearing or to provide information to the hearing officer. The FOP, which was identified by you as an "interested party" with respect to this case in the summer of 2005, also received no notice of the hearing.

Fortunately, intervention by the FOP helped to get the hearing rescheduled so that the Commission would have the benefit of hearing from the family of Ranger Patrick. Yet it is very disturbing that, for the second time in as many years, the Commission initiated a process that could result in the release of a murderer without providing notice to the family of the victim.

The FOP became involved in this case in February 2005 when we were contacted by who learned that her husband's murderer was scheduled to be released from prison after a single member of the U.S. Parole Commission approved his release--despite the fact that this was an original jurisdiction case. She was never notified of the hearing that was held in December 2004, never afforded any opportunity to submit her views on the release of this killer to the Commission, and never officially notified by either the Commission, the Bureau of Prisons (BOP), or any other agency of the U.S. Department of Justice that the release was imminent. Fortunately, the Justice Department was able to block his scheduled release and tragedy was averted.

**Exhibit   90**

—BUILDING ON A PROUD TRADITION—



In 2005, the Commission held a hearing in March to consider the views of our organization and those of Ranger Patrick's widow. Yet, inexplicably, the Commission again ordered the killer's release–despite the fact that the decision did not have the support of a majority of the Commissioners. The Commission was ultimately forced to reconsider its action in this case after U.S. Attorney General Alberto R. Gonzales exercised his authority under 18 USC 4215(c) appealing the decision. The exercise of this authority was unprecedented and underscored the need for much greater oversight of the Commission by the Congress, the Department of Justice, and organizations like the FOP.

Fortunately, given another chance to review the case, the Commission chose to deny parole for a cop-killer who to this day believes himself to be a "political prisoner" of "fascist America." The FOP expects the Commission to deny his parole again because, in cases like this, the controlling statute (now repealed), 18 USC 4206(d), requires the Commission to *deny* parole if it is determined that:

- the inmate has seriously violated institution rules and regulations; or
- the inmate has frequently violated institution rules and regulations; or
- there is a reasonable probability that the inmate, if released, will commit a Federal, State, or local crime.

Under Federal law, the Commission is compelled to deny parole if the Federal inmate satisfies any one of these three statutory prongs. Veronza Bowers meets all three.

During his incarceration at the Lompoc Federal Correctional Complex, Bowers and a cohort tried to escape. He and a cohort successfully scaled the inner perimeter fence, prompting correctional officers to open fire, hitting both escapees and forcing them surrender. Apart from the murder or aggravated assault on a prison employee or fellow inmate, an escape attempt is the most serious offense a prisoner can commit. In the view of the FOP, the escape attempt alone should be enough to deny this killer parole because it meets the first prong of the statutory test--a serious violation of the institution's rules and regulations. The statute does not allow the Commission any latitude to discount any serious violations simply based on the passage of time.

However, the escape attempt was not Bowers' only serious violation. While an instructor at the Federal Law Enforcement Training Center in Glynco, Georgia in 1990, Tomie Lee Patrick, the widow of Ranger Patrick, received a hand-written letter at her home from the man who killed her husband. As the Commission is no doubt aware, contact with the victims of their crime is prohibited conduct for a Federal prisoner. Bowers had obtained her home address because of a mail mix-up at the BOP and used this information in a decidedly sinister way by deliberately crafted a letter designed to intimidate and terrorize the widow of his victim. When confronted with the letter, Bowers lied, saying that he was not aware that the person he was sending this letter to was the widow of the man he murdered. To the contrary, he knew her name very well–she attended every day of his trial.

By contacting the widow of his victim, Bowers did more than violate the rules, he committed an act of terror. The Commission must keep in mind that he killed a Federal law enforcement

officer in cold-blood to demonstrate the depth of his hatred for the United States and its government. To him, the murder was not a criminal act, but a political one and his subsequent incarceration for this act of political expression makes him a political prisoner, not a common murderer. The only difference between Veronza Bowers and Mohammed Atta is the scale of the slaughter—the motivations for their acts are identical.

If the Commission deems these two incidents--the escape and contact designed to terrorize the widow of his victim--as serious violations of institution rules and regulations, then the statute *requires* that his parole be denied.

In addition to these serious violations, the FOP has learned that, during the time of his incarceration, he has been cited for no less than nineteen (19) violations of institutional rules and regulations. I do not have more specific details, as neither the Commission nor the other components of the U.S. Department of Justice which we targeted with requests for information related to his prison record under the Freedom of Information Act responded within the statutorily mandated time frame. In fact, it has been two years since our request. The Commission, however, does--or should--have access to this data and must determine whether the number of his violations are numerous enough to be considered "frequent" and thus require the denial of his parole.

The last statutory prong to be considered is the likelihood that he will reoffend if released. Under Federal law, if there exists "a reasonable probability" that he will commit any Federal, State, or local crime then the Commission is required to deny parole. Aside from statistics showing that most crimes are committed by recidivist offenders, the Commission must take into consideration his continued refusal to admit his guilt or express any feelings of remorse for the murder of a Federal law enforcement officer and his motivation for this crime--a deep-seated hatred of the United States and its government. It is the intensity of this hatred which led to his killing of U.S. Park Ranger Patrick. One witness at his trial testified that Bowers discussed his desire to kill a law enforcement officer prior to the murder, saying he "just had to get me one." It is clear from the testimony at the trial that Bowers was determined to kill a law enforcement officer as a way to strike back at a society he hated then and still hates today.

At his sentencing, Judge Leo Brewster allowed Bowers to take the stand and read into the record a nine-page political dissertation outlining his grievances against the United States. Judge Brewster responded to the hate-filled rant by saying, "...you are so imbued with bitterness that I don't think it has entered your mind to be repentant. ...I would think that a life sentence would be the least sentence you should get for a murder as cold-blooded as this."

While it is certainly telling that the presiding judge believed that a life sentence was the "least" Bowers should get, I think that more recent statements, demonstrating that this killer has not changed the views which led him to kill, should also be considered carefully by the Commission. Bowers recently wrote the following on an Internet website:

> *I am in my 28th year of imprisonment as a political prisoner in a*
> *land where government officials claim that no political prisoners*
> *exist. ...Well, I exist. Over 150 of us exist.*

Sep 26 2007 2:00PM    Law Office Bryan Gaynor    7078268545              p.2

# BRYAN GAYNOR
### Attorney at Law

Sowash Building
1160 G. Street, Suite A
Arcata, California 95521

Telephone: 707.826.8544
Facsimile: 707.826.8545
bwgaynor@humboldt1.com

**Sent by U.S. Mail & Facsimile to (301) 492-7005**

September 26, 2007

Stephen J. Husk
Case Operations Administrator
United States Parole Commission
5550 Friendship Boulevard, Suite 420
Chevy Chase, MD 20815-7286

Re: Veronza Bowers, Reg. No. 35316-136

Dear Mr. Husk:

I am in receipt of your letters of September 10, 2007, addressed to me, and
September 19, 2007, addressed to Thomas Stoever.

With respect to Mr. Bowers's hearings before the Commission, please be
advised that both Mr. Stoever and I represent Mr. Bowers. However, Mr. Stoever is
lead counsel in these matters and therefore all correspondence concerning the
Commission's hearings should be addressed to him.

As you may know I represented Mr. Bowers in connection with the hearing that
occurred in October 2005 and continue to represent him in matters related both to that
hearing and the pending hearing that has now been continued.

Our legal team consists of a number of attorneys, one of whom retained
WilmerHale for the purpose of filing FOIA requests. As I understand it, WilmerHale
has submitted two requests to the Commission, dated September 7 and September 18,
2007. Mr. Bowers has consented in writing to these requests as required by the Privacy
Act. The Commission's responses to WilmerHale's pending FOIA requests will be
important to Mr. Stoever and me in connection with our preparation for the continued
hearing.

I hope this clarifies matters for you. However, if you have any other questions
regarding these matters, do not hesitate to contact me.

**Exhibit ___91___**

Sep 26 2007 2:00PM    Law Office Bryan Gaynor       7078268545          p.3

Stephen J. Husk
September 26, 2007

Page 2 of 2

Respectfully submitted,

Bryan Gaynor

Cc- Veronza Bowers
    Thomas Stoever
    WilmerHale



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5990*
*Facsimile: (301) 492-5307*

October 2, 2008

Thomas W. Stoever, Jr.
Arnold & Porter, LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-1370

Re:  Bowers, Veronza
Reg. No. 35316-136

Dear Mr. Stoever:

The Parole Commission has scheduled Mr. Bowers for a mandatory parole hearing on the December 2008 hearing docket at the U.S. Penitentiary, Atlanta, Georgia.  The docket is tentatively scheduled for the week of December 1, 2008.  As you know, you may appear as a representative for Mr. Bowers at the proceeding.  If Mr. Bowers decides not to proceed with the December hearing, please advise this office at your earliest convenience.

Sincerely,

/S/

Stephen J. Husk
Case Operations Administrator
U.S. Parole Commission

SJH/rjc

Exhibit __93__

Page 1 of 1                                                        10/20/08

# Memorandum



---

**Subject**

Bowers, Veronza

**Date**

October 15, 2008

---

**To**

File

**From**

*Rc*

Rockne Chickinell
General Counsel
U.S. Parole Commission

Returned phone call to Thomas Stoever, attorney for the inmate.  Mr. Stoever had several questions concerning parole hearing procedures.  Questions pertained to the location of the hearing, whether the hearing would be in person, the attendance of witnesses, pre-hearing disclosure of statements opposing parole, whether the case would remain original jurisdiction, whether the hearing would be "de novo."  I confirmed that the case was oj until declassified and that the hearing would be de novo.  Mr. Stoever said he would consult with his client and they would decide on their next course of action.

---

**Exhibit** __94__

10/15/08

10/23/2008  11:55 FAX   3038320428          USPC
                                          ARNOLD & PORTER                    ☑002/002
                                                                             ☑002/002

# ARNOLD & PORTER LLP

Thomas W. Stoever, Jr.
Thomas.Stoever@aporter.com

303.863.2928
303.832.0428 Fax

Suite 4500
370 Seventeenth Street
Denver, CO 80202-1370

October 22, 2008

*Via Facsimile Transmission and US Mail*

Stephen J. Husk
Case Operations Administrator
U.S. Parole Commission
U.S. Department of Justice
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

Re:  Veronza Bowers, BOP Reg. No. 35316-136

Dear Mr. Husk:

I am writing in response to your letter dated October 2, 2008, which was faxed from your office on October 8. After reviewing the issues with Mr. Bowers, he has decided to ask that the mandatory parole hearing scheduled for the week of December 1 be taken off the docket. Mr. Bowers submitted his request for a mandatory parole hearing in April. After that time, Mr. Bowers filed a habeas petition with the U.S. District Court in Atlanta (Bowers v. Grayer, No. 1:08-CV-2095-CAM). The Parole Commission responded to the habeas petition on October 3, 2008. At this point, Mr. Bowers wishes to have the claims he has raised in the petition resolved through the courts rather than proceeding with a hearing before the Commission. This request is made without prejudice to Mr. Bower's right to seek a mandatory or interim parole hearing at a future date.

Please provide me with written confirmation of the fact that the mandatory parole hearing has been removed from the December docket.

Thank you for your attention to this matter.

Sincerely,

Thomas W. Stoever, Jr.

cc:  Rockne Chicknell

Exhibit __95__



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5990*
*Facsimile: (301) 492-5307*

October 23, 2008

Thomas W. Stoever, Jr.
Arnold & Porter, LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-1370

Re:  Bowers, Veronza
Reg. No. 35316-136

Dear Mr. Stoever:

The purpose of this letter is to acknowledge receipt of your correspondence of October 22 in which you advised this office that Mr. Bowers wanted his scheduled hearing taken off the December 2008 hearing docket at the USP Atlanta.  His name has been taken off the December hearing docket. Because Mr. Bowers has waived the December hearing, if he wants a parole hearing in the future he will have to reapply for parole by completing a Parole Form I-24 at his institution.  After he reapplies, Mr. Bowers will be placed on a hearing docket for another mandatory parole hearing.

Sincerely,

Stephen J. Husk
Case Operations Administrator
U.S. Parole Commission

Exhibit ___96___



**U.S. DEPARTMENT OF JUSTICE**
**United States Parole Commission**

*Office of the General Counsel*

*5550 Friendship Boulevard*
*Chevy Chase, Maryland 20815-7201*

*Telephone: (301) 492-5959*
*Facsimile: (301) 492-5563*

April 8, 2009

Dear Ms. Lee:

The purpose of this letter is to give you an update concerning the status of parole determination proceedings for Veronza Bowers, and the habeas corpus petition Mr. Bowers has filed in the U.S. District Court for the Northern District of Georgia. There has been some speculation that Mr. Bowers was scheduled for another parole hearing in the near future.

Mr. Bowers is not scheduled for a parole determination hearing. He waived a parole hearing that had been scheduled for the December 2008 docket at the U.S. Penitentiary, Atlanta, Georgia. I spoke with his case manager several days ago and she confirmed that there was no change in Mr. Bowers's status from last year. Mr. Bowers must reapply for parole in order to be placed on a hearing docket.

With regard to the pending litigation, the parties have filed their briefs and the issues of the case have been put before the magistrate judge for her review. One of Mr. Bowers's claims is that the Parole Commission violated its regulations in reopening his case for new adverse information in February 2005, and that Mr. Bowers is entitled to the parole granted to him before the Commission ordered the reopening. In defending the Commission's reopening decision, the government was required to inform the court, the prisoner, and opposing counsel of your actions in sending two letters to the Commission opposing Mr. Bowers's release. The government initially submitted the letters for the review of the court, without disclosing the letters to Mr. Bowers and his attorneys. But they opposed the motion to submit the letters "under seal" and the government withdrew the motion after it determined that no evidentiary privilege supported withholding the letters from Mr. Bowers and his counsel. Because your information was critical to the defense of the Commission's parole denial, the government allowed the letters to be placed as exhibits in the discloseable record of the case file.

The Commission will keep you advised of further developments concerning Mr. Bowers's parole determination proceedings. The contact person with the Commission is Stephen J. Husk, Case Operations Administrator. He may be reached at the address on the letterhead of this correspondence. You will be hearing shortly from the U.S. Attorney's Office in Atlanta, Georgia on the status of the litigation.

Exhibit __97__

- 1 -

Sincerely,

Rockne Chickinell
General Counsel
U.S. Parole Commission

RJC

# Memorandum



---

**Subject**

11th Circuit decision in *Bowers v. Keller*

**Date**

August 30, 2011

---

**To**

The Commission

**From** *Rockne Chickinell*

Rockne Chickinell
General Counsel
U.S. Parole Commission

Today I received a copy of the 11th Circuit's decision in *Bowers v. Keller*. The court of appeals ordered the Commission to initiate proceedings within 60 days to reconsider Bowers for mandatory parole, and if it does not, start release planning for the prisoner and discharge him on parole. The court found that the June 2005 reopening of the case was tainted by the bias of former Commissioner Spagnoli and required a reconsideration of Bowers's parole application. The court affirmed the denial of habeas relief to Bowers in all other respects. The positive aspects of the decision are: (1) the court affirmed the Commission's authority to reopen a case to consider a victim's letter (the February 2005 reopening for new adverse information); (2) the court affirmed the limited standard of judicial review over parole decision-making and refrained from directing Bowers's parole; and (3) the court did not find that Commissioner Spagnoli's bias against Bowers tainted the decisions of the other Commissioners. After I study the decision further and discuss the opinion with Assistant U.S. Attorney Powell, I will provided another memo to the Commissioners on how to comply with the circuit's decision.

**Exhibit** 98

# Memorandum



| Subject | Date |
|---|---|
| BOWERS, Veronza 35316-136<br>Order in <u>Bowers</u> v. <u>Keller</u>, No. 10-<br>12170 (11th Cir. Aug. 26, 2011) | September 22, 2011 |

| To | From _Rockne Chickinell_ |
|---|---|
| Vice Chairman Cranston J. Mitchell<br>Commissioner Patricia K. Cushwa | Rockne Chickinell<br>General Counsel<br>U.S. Parole Commission |

## Summary

In this case, the Court of Appeals for the 11th Circuit affirmed in part, and reversed in part, the district court's denial of habeas corpus relief to petitioner Veronza Bowers. (See opinion and decision attached). Because the court found that former Commissioner Spagnoli was biased in the June 14, 2005 Commission vote to reopen Bowers's case, the court of appeals vacated the June 2005 reopening and the October 6, 2005 decision denying Bowers mandatory parole.[1] The court ordered that the parole determination proceeding should return to the status as it existed on May 17, 2005, when the votes of four Commissioners were evenly split on granting or denying Bowers mandatory parole. The court ordered that the Parole Commission "immediately review" Bowers's case to determine whether any further action for Bowers was necessary or authorized, and that if the Commission failed to initiate proceedings within 60 days, the district court grant Bowers's petition for habeas corpus and order the Commission to begin release planning and grant mandatory parole to the prisoner. I recommend that the Commission promptly review this case on the record, order and conduct a re-vote, and decide whether it should make one of the findings that would deny Bowers mandatory parole.

## Discussion

The 11th Circuit opinion describes the procedural history of this case and will not be repeated here. As of May 17, 2005, the four Commissioners who voted on Bowers's case were equally split on granting or denying him mandatory parole.[2] Vice Chairman Mitchell and former Chairman Reilly voted for mandatory parole and Commissioner Cushwa and former Commissioner Spagnoli voted to

---

[1] The court denied Bowers's request for an order granting him release without allowing the Commission the opportunity to review the case again. The court also found that there was no basis for Bowers's contention that the votes of the Commissioners other than Commissioner Spagnoli were tainted by Spagnoli's lack of impartiality.

[2] Commissioner Fulwood recused himself from voting on the case and his recusal remains in effect.



**Exhibit 99**

deny mandatory parole. ... the Commission decides not to take ...y further action in this case, the Commission will not have made a finding on one of the criteria for denying mandatory parole by a majority vote and the Commission would be required to parole Bowers by the terms of 18 U.S.C. § 4206(d). (See my memorandum dated May 13, 2005 in the file). The consequence of an unresolved tie vote in a mandatory parole case is described in the revised regulation on a Commission quorum (28 C.F.R. § 2.63, as amended by 75 FR 81457-59 (Dec. 28, 2010)). As the court of appeals recognized in its opinion at p. 44, note 21, the revised regulation provides that the Commission has the authority to re-vote to resolve a tie vote or other impasse in satisfying a voting requirement under its rules. § 2.63(b)(3).

I recommend that the two Commissioners remaining from the 2005 vote (Vice Chairman Mitchell and Commissioner Cushwa) should initiate a re-vote on whether Bowers should be granted a mandatory parole. If they initiate the re-vote, Commissioner Smoot may participate in the second round of voting. [3] The court of appeals clearly indicated that a possible parole for Bowers should be a matter for the Commission to decide, not the court. Given the circumstances that led to the court's decision to vacate the June 2005 reopening of Bowers's case, the Commission should do all it can at this juncture to ensure that the public has confidence in the decision on granting or denying parole to Bowers, whatever the result of a re-vote. A re-vote provides an opportunity to reconsider the case with the arguments presented by participating parties following the vacated reopening, and to fully explain the reasons for a parole grant or denial. I do not interpret the appellate court's order to freeze the administrative record as of May 17, 2005, and preclude the Commission from reviewing and using the briefing of relevant issues from all parties that took place in the summer and fall of 2005. Such an interpretation would be inconsistent with well-established principles of limited judicial review of administrative agency decisions, including the decisions of the Parole Commission. Bridge v. U.S. Parole Commission, 981 F.2d 97, 104-06 (3rd Cir. 1992).

Even though 6 years have passed since the 2005 vote, I would not postpone a re-vote for an examiner to conduct another hearing. Bowers has waived an interim hearing that would update the record. In the interests of finality, the Commission should make its decision on the basis of any information and arguments in the present record, with any new letters the participating parties want to send in for the Commission's review. If Bowers decides to re-apply for a hearing, we can schedule the case later for an interim hearing to comply with 18 U.S.C. § 4208(h)(2) (requiring an interim hearing every 24 months).

In conducting the re-vote, the Commission should first examine the criterion of whether Bowers has seriously violated the rules of the institution during his incarceration. In the October 2005 decision, Vice Chairman Mitchell denied Bowers mandatory parole for the sole reason that the 1979 escape attempt constituted a serious institutional rule violation. Commissioner Cushwa concurred in this finding.[4] Though the 11th Circuit vacated the October 2005 parole denial, the Commission is not

---

[3] The revised rule on a Commission quorum does not prevent Commissioner Smoot from participating in the re-vote even though she was not in office at the time of the split vote in 2005.

[4] Commissioner Cushwa also found that Bowers seriously violated prison rules by sending a letter to Ranger Patrick's widow in 1990. However, in making its decision on whether Bowers has seriously violated prison rules, I recommend that the Commission not rely on the 1990 incident. The institution made no finding that this act violated prison rules. In the absence of such a finding by a discipline hearing officer, the Commission normally does not use the alleged infraction in its decision-making. Nonetheless, this incident is arguably relevant in determining whether there is a reasonable probability that Bowers would commit another crime if paroled.

restricted by the appell    court's decision from finding that I    ers's 1979 escape attempt was a serious violation of institutional rules.[5]   The court of appeals expressly withheld any opinion on the "substantive merits of the Parole Commission's October 6, 2005, decision [denying Bowers mandatory parole]." Opinion at p. 43, n.19.   In considering the 1979 escape attempt, my advice is that the Commission must deny mandatory parole to Bowers if it determines that the escape attempt seriously violated prison rules, regardless of the passage of time after the incident.   I concurred with this interpretation of the § 4206(d) criteria by Justice Department attorneys and former Commission attorney Doug Thiessen in 2005, and my opinion has not changed since then.[6]   The Commission has not as yet promulgated a rule adopting this statutory interpretation.

If the Commission concurs with that interpretation, the remaining task is to determine the relative severity of Bowers's escape attempt when judged against other types of escape. As Bowers's attorneys pointed out in their briefing to the appellate court, the Commission has granted mandatory parole to other escapees in recent years, citing to the cases of Zvonko Busic and Sara Jane Moore. The government's brief suggested some aggravating circumstances of Bowers's escape attempt (e.g., the attempt drew gunfire from the prison tower) which arguably distinguishes his crime from other escapes. In past decisions the Commission has refrained from categorizing all escapes as "serious" in applying the criteria for denying mandatory parole, and I recommend that the Commission continue this practice in re-assessing whether Bowers's 1979 offense is sufficiently serious to justify a parole denial under § 4206(d). As noted earlier, the two Commissioners are not prevented by the court's decision to reach the same conclusions they did in October 2005 on the gravity of the escape attempt. They are also free to find that, in retrospect, the findings they made in October 2005 as to the severity of the attempt are not appropriate.

In a re-vote the Commission may also reconsider whether there is a reasonable probability that Bowers would commit another crime if released.   There was no unanimity of the voting Commissioners on this point in 2005. But the criterion is open for reconsideration in a re-vote.

## Recommendation

I recommend that the Commission take the following actions to comply with the appellate court's August 26, 2011 decision:  (1) Vice Chairman Mitchell and Commissioner Cushwa should order a re-vote regarding the votes they made on May 6, 2005 and April 20, 2005, respectively;  and (2) if a re-vote is ordered, then the Victim-Witness Coordinator should contact Ranger Patrick's widow, Bowers and his representative, the Justice Department and all previously-interested persons and organizations notifying them of the re-vote and giving the parties 20 days to submit their views and recommendations concerning the decision for the prisoner.

---

[5] In 2005, the Commission did not find that Bowers had frequently committed prison rule violations and there is no reason to revisit this issue in the re-vote.
[6] Attorney General Holder advanced the same interpretation of § 4206(d) in opposing mandatory parole for prisoner Henry Gargano in January of this year.

# 35316-136

October 2, 2011

**RE: Veronza Bowers, Jr.**

Issac Fulwood, Jr.
Chairman
United States Parole Commission
90 K Street, NE, Third Floor
Washington, D.C. 20530

OCT 1 3 2010
U.S. Parole Commission

Dear Sir:

I am writing to you in reference to the forthcoming record review regarding Veronza Bowers' Jr. I understand this is a review to determine if whether or not a re-vote should be held.

I am sure the Parole Commission is very much aware of Mr. Bowers' background in this matter, but to recap a portion of it:                    in the murder of National Park Service Ranger, Kenneth Patrick. The murder occurred on the morning of August 5th, 1973 at Pt. Reyes National Seashore. Mr. Bowers was arrested on September 15th, 1973 and he was subsequently charged with Ranger Patrick's murder. He was found guilty by a jury trial in USDC, San Francisco on April 22nd, 1974. At sentencing, USDC Judge Leo Brewster advised Mr. Bowers, "I think life is the least sentence you should receive. That ought to tell you something. I order you committed to the custody of the U.S. Marshal for the rest of your natural life."

During the thirty eight years of Mr. Bowers' incarceration, and reading from his voluminous websites, postings, and radio interviews, he has never admitted to the cold blooded and senseless murder of Ranger Patrick. He has chosen to hide behind the ludicrous claim that he is a political prisoner who was framed by the FBI Cointel Program because he was a member of the Black Panther Party. He claims there were *no eye witnesses* to the murder, *no physical evidence*, and he was convicted on the strength of *two FBI informants*. All three of these assertions are false and have been used by Mr. Bower's, over and over to give the impression that he has been unjustly incarcerated.

There were *two eye witnesses* in the car the morning that Mr. Bowers shot Ranger Patrick, neither were FBI informants: Mr. Alan Veale was in the back seat and Mr. Jonathan Shoher was driving. Mr. Veale testified at Mr. Bowers' trial and provided detailed information of the murder that only someone at the scene of the crime that morning would have known. In addition, one of Mr. Bower's close acquaintance, Arthur White, testified at Mr. Bower's trial that he (Mr. Bowers) confessed to shooting Ranger Patrick. Mr. Shoher later pled guilty to accessory in the murder and at sentencing admitted he was there when the Ranger was murdered and that the weapon had been cut up and disposed of.

The facts of the case revealed that as Ranger Patrick looked into the driver's side of the car, driven by Mr. Shoher, Mr. Bowers shot him in the chest. As he staggered downhill dying, Mr. Bowers fired again hitting Ranger Patrick in the hand. Ranger Patrick fell into a bush beside the

**Exhibit   101**

roadway. Mr. Bowers ordered Mr. Shoher to drive to the bush and stop. At that point Mr. Bowers leaned out of the passenger side window and shot Ranger Patrick again. This was a totally senseless, cold blooded, premeditated act on the part of Mr. Bowers, and an act that he has never admitted committing.

As for no physical evidence being present at Mr. Bowers' trial, this too is ridiculous. The clandestine house in which Mr. Bowers was living was described at the time as "wall to wall crime." Essentially everything in the house was stolen or obtained through illegal means. Numerous guns and thousands of rounds of ammunition were taken in the search. One live bullet taken from Mr. Bowers' attach case was examined by the F.B.I. Laboratory and it was determined the bullet had at one time been loaded into the *same source* as one of the two bullets removed from Ranger Patrick's body. The four cross bow bolts found near Ranger Patrick's body the morning of the murder were unique to the San Francisco Bay area and sold in only one store in the East Bay area where Mr. Bowers and his small band of friends once lived. One of his housemates arrested with Mr. Bowers, was identified as buying a crossbow and crossbow bolts using false identification. Matching cross bow bolts were found at Mr. Bowers' home and were identified as coming from the same State of Washington arrow company. This is just a few of over a hundred items of *physical evidence* presented at Mr. Bower's trial. The jury deliberated less than a day and a half before finding him guilty.

In addition to his continuous denial of guilt in this cold blooded murder, Mr. Bowers' has expressed extreme hatred of the American system. In my opinion, if released, he will very likely be a part of some violent action or actions again. I view Mr. Bowers' as a danger to America and respectfully caution the Parole Commission to consider the possibility of his release very carefully.

I also request that my physical address and any other personal information be kept in confidence and not divulged to any person representing Mr. Bowers.

Sincerely yours,

October 3, 2011

The Honorable Issac Fulwood Jr., Chairman
U.S. Parole Commission
90 K Street, N.E.
Washington, D.C. 20530

Honorable Chairman Fulwood, Jr. and Commissioners,

I am grateful once again for the opportunity to provide the Commission with Ken's family's and my views concerning the incarceration of Veronza L. Bowers, Jr. (#35316-136) for the murder of our son, husband, father and brother, U.S. Park Ranger Kenneth C. Patrick in 1973.

At the time of my last letter and hearing for Mr. Bowers, I was not aware of any internal issues within the Parole Commission which have since resulted in the need for another hearing in order to fulfill the original sentence of "life without parole for... [Bowers']... natural life" and to safeguard our family and the American public. I do realize that with all of the publicity and various court decisions that it would be much easier to do nothing and let Veronza Bowers walk out of prison as a free man by default, but, we plead deeply and sincerely that you hold a new hearing.

Please be assured that Ken's surviving family and I remain strongly opposed to the release of this killer, who would pose a threat to our family (especially to me as I have been delegated by our family to write to you over the years and through "discovery" have been clearly identified to Mr. Bowers, his representatives and the media), and a danger to the American public if he were freed.

We have been told that you have all of the past correspondence and Bowers' prison records available for your review.  I sincerely hope that you will carefully consider all of that information, although it will not be "new" to many of you.  All of this information remains pertinent, although there are fewer current internet postings expressing Bowers' contention that he is a "political prisoner" and his hatred for America and our system of government due to a warning issued to Bowers' supporters (and undoubtedly to Bowers himself) by Bowers' representatives to moderate the language in order that Bowers' hatred, rage and lack of rehabilitation for his crime of murder not be so obvious and not be used by the appeals courts or Commission during hearings and deliberations. That warning is/was on the internet. However, the lack of current electronic raging by Bowers since the warning does not negate his true feelings or lack of rehabilitation.

*page 1 of 5*

Exhibit __102__

OCT 17 2011

We do understand that the criteria for denying parole to Bowers is very limited, and that the Commission cannot consider the brutality of his murder or other crimes which earned him his life sentence. The Commission may consider information and/or evidence that he has seriously or frequently violated the rules of conduct while in Federal prison and the probability that he will commit future crimes if released. Both of these requirements are easily met and readily apparent. Although this information has been presented in past correspondence, I believe it may be necessary to reiterate much of it again so that it does not get overlooked or skimmed through.

An examination of Bowers' file reveals the details of his 1979 escape attempt. He and another Federal inmate attempted to escape from the Lompoc Federal Correctional Complex in California. During this attempt, shots were fired. Bowers was not hit, but the other inmate was shot and wounded. The fact that deadly force was employed to prevent this escape speaks to both the seriousness of their attempt and the danger that Bowers and his partner would have posed to the public if the attempt was successful. Bowers was convicted of the escape attempt and six additional months were added to his life sentence.

An attempt to escape is the most serious offense that an inmate can commit, short of the murder or aggravated assault on a prison employee or fellow prisoner. The seriousness of this crime (his escape) is **not diminished by time**.

In addition to this escape attempt, I am aware that Bowers has been implicated in other serious breaches of conduct while incarcerated. While I was an instructor at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia, I taught many classes for the correctional officers employed by the Federal Bureau of Prisons (BOP). When introducing myself to each class, I would explain that I understood how difficult but important their jobs were. I would tell them how my family had suffered immeasurable grief when Kenneth Patrick was killed in the line of duty by an inmate now serving a life sentence in one of the very Federal prisons in which they would be serving. On two separate occasions, BOP officers approached me with information about direct knowledge they had of Bowers' conduct in prison. I was told by these students that he was implicated in two serious incidents involving what was suspected to be contract killings—"hits" on fellow inmates. The BOP officers said there was not enough proof to charge Bowers for his role in these crimes, but that prison staff knew him to be a dangerous inmate who was to be handled with great caution and attention to the safety of correctional officers and prison staff. I hope the U.S. parole Commission carefully reviews all material related to the crimes in which Bowers has been implicated during his incarceration.

Another of the BOP officers stated that Bowers had been repeatedly moved from one Federal institution to another, a practice which indicates that the inmate was involved in, or there was probable cause to suspect, serious misconduct.

I urge the Commission to fully review Bowers' file and examine in detail the reasons behind his multiple transfers during his time in Federal prisons as they relate directly to his propensity to re-offend if this murderer (a cop-killer) is released.

In 1990, Bowers again engaged in proscribed conduct for an inmate. I received a hand-written letter from my husband's murderer at my home in Georgia. Apparently, the mailroom at the U.S. penitentiary in Leavenworth, Kansas, had misdirected a returned receipt, with my name and address printed on it to Bowers instead of to prison administrators. In the letter he wrote to me, Bowers deliberately concealed his misconduct by trying to plead ignorance as to my identity and asked why I would have returned a receipt for a registered letter from Leavenworth. This man is well aware of who I am. Tomie Patrick is an uncommon name for a woman, and the tone of his letter was clearly directed toward a woman and not a man. I was also one of the first witnesses against him at the trial which resulted in his life sentence. (I will never forget the intense hatred he directed at me through is eyes and the expression on his face. Never again have I experienced such an intense, overt rage and hatred, even though I pursued a career in law enforcement with the National Park Service after my husband's murder and made numerous arrests, many for serious crimes.) My name was also in the daily newspapers to which he and his attorneys had access.

The letter from this killer was a clear effort to intimidate me – to let me know he knew where I lived. He succeeded. I was extremely upset by this breach in security, which resulted in my husband's murderer sending a letter to *my home*. At the time, even the knowledge that Bowers would spend his life in a Federal prison was of little comfort. Although I am no longer living in Georgia, it is apparent that I am not difficult to locate as several newspaper reporters have called my home regarding Bowers' case in the past several weeks.

Following my receipt of Bowers' letter, I contacted the BOP and provided them with a copy. After alerting BOP that Bowers had contacted me, I received an apology from someone with BOP and was assured that Bowers' outgoing mail would be monitored in the future. Shortly after this violation of prison regulations, he was once again transferred to another federal prison. This incident is another clear example of Bowers' disregard for prison rules and regulations, highlights his use of subterfuge to conceal such violations, and demonstrates a complete lack of compassion for the victims of his crimes.

By any objective estimation, he has *not* been a "model prisoner" over the course of his incarceration. He may have behaved himself in the past few years in an effort to position himself for parole, but this is just more subterfuge from a cold-blooded killer who to this day refuses to admit his guilt, continues to claim that he is a "political prisoner", that there were no eyewitnesses and no physical evidence to his murder of

Kenneth Patrick. That is patently false and self serving, and still again clear evidence that he has not been rehabilitated. He views the murder of a federal law enforcement officer as a justified political act instead of a grievous crime, therefore is most likely to offend again given an opportunity to do so.

The copies of the e-mail Bowers posted on his website(s) which you will have in the files from earlier correspondence are clear examples that this man, who murdered Ken Patrick in part because of his intense hatred for the United States and its government, still retains that hatred and is therefore likely to act on it and commit further crimes if he is released. He refuses to acknowledge the fact that he is serving a life term because he murdered a man, and instead persists with the fiction that he was "framed" by government agents.

There is a direct relation between his strong hatred for the United States and our government that led Bowers to commit murder. Testimony at his trial from one witness recounted that Bowers discussed his desire to kill a law enforcement officer. A witness testified that Bowers' boasted of the murder and state that he "just had to get me one." The body of testimony presented at his trial (including two eye witnesses who were not FBI informants as well as physical evidence) demonstrates that he was determined to kill a law enforcement officer who is both a symbol and a protector of the society he hates.

At his sentencing, Bowers requested that he be allowed to take the witness stand and read remarks he had prepared. This was an unusual request, but one granted by the presiding judge (since deceased). Bowers read a nine-page political dissertation outlining his grievances against the United States, which lead the judge to remark, "...you are so imbued with bitterness that I don't think it has entered your mind to be repentant." The judge went on to say, "I would think that a life sentence would be the least sentence you should get for a murder as cold-blooded as this." Federal Judge Brewster wrote letters to the U.S. Parole Board/Commission whenever Bowers had a hearing even after the judge's retirement and until his death a few years ago. These letters should also be in Bowers' file for your review.

I would hope the Commission has a copy of the transcript from the trial and the sentencing in order to reacquaint themselves with these facts.

Based on Bowers' postings on the Internet (numerous items and websites he has written or authorized, including a recording of a 2002 radio interview), there should be no doubt that his hatred which lead him to kill in the first place has not abated. Just as hatred led nineteen hijackers to kill themselves and thousands of our fellow citizens on September 11, 2001 and numerous other terrorist attempts since, the hatred Bowers has for the America and our form of government will motivate him to commit further crimes against the society he despises if he is ever given the opportunity to do so. In his mind, after all, he is a "political prisoner", who rejects any suggestions that his years in prison are the result of his decision to shoot and kill our son, husband, father and brother in the early hours of the August morning. *Page 4 of 5*

If Bowers believes that his politics, not his murder of U.S. Park Ranger Ken Patrick, is the reason for his imprisonment, there is nothing to keep him from killing again. Only next time, he may be smart enough not to leave any eyewitnesses to his crime of murder.

I would expect that he has made and will continue to make a general statement during any hearing that he is remorseful for his "actions" or something similar to manipulate the courts and hearing officer(s), and allow him to evade admitting or accepting his guilt in the brutal murder of Ken Patrick. This is more subterfuge. Any person who refuses to accept responsibility or express remorse for a crime as heinous as murder, will have no hesitation or compunction about committing future acts of violence.

This killer was scheduled to be released in the past because of the sentencing guidelines in effect at the time of his crime. He remains in prison now only because of the Commission's orders after his latest hearing, which was prompted by my intervention, an intervention facilitated by several U.S. Park Rangers and staff members at the Grand Lodge, Fraternal Order of Police. For this reason, I do sincerely fear for my safety and that of other members of my family if he is released. He has already demonstrated that he is willing to flout the prison rules by contacting me at my home soon after acquiring my address. It is apparent that I am not difficult to locate now as I have been contacted by several reporters as recently as a few weeks ago. I am particularly concerned for our youngest son who, like his murdered father and me, is a law enforcement officer and may very well come in contact with this murderer if he is released. Bowers victimized all of us when he murdered Ken -- none of us want him to have another opportunity to hurt our family again.

I sincerely hope that this information reminds the Commission of the many facts about Ken's murderer which the Commission considered when it refused to grant Veronza Bowers' parole. There should be no doubt that this man was known to be a dangerous inmate during his term in prison. And, because the hatred which drove him to murder is as strong today as it was in 1973 when he shot and killed Ken, a Federal law enforcement officer, there is little doubt that he is very likely to commit further crimes if released.

Thank you again for the opportunity to present the Commission with this letter detailing our opposition to his parole. If we can provide you with any further information, please do not hesitate to contact me. I do ask that you do not provide my present address to Veronza Bowers, his representatives or anyone related to him although as stated above, we are apparently not difficult to locate.

Sincerely,

Tomie Patrick Lee                              *page 5 of 5*

10/12/2011  18:27 FAX  202 942 5209          ARNOLD & PORTER LLP                    ☑ 002/002

# ARNOLD & PORTER LLP

Theodore D. Frank
Theodore.Frank@aporter.com

+1 202.942.5790
+1 202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

October 12, 2011

**VIA FACSIMILE**

United States Parole Commission
Office of the Chairman
90 K Street, N.E. 3rd Floor
Washington, D.C. 20530

           Re:   Veronza L. Bowers, Jr.,
                <u>Register No:  35316-136</u>

Dear Sir or Ms:

      This is in response to the fax I received this afternoon advising that the
Commission members who previously participated in the April and May 2005 decision
concerning Mr. Bowers have decided to revote the matter.   This is to advise the
Commission that we will be filing a letter with the Commission by this Friday, the date
specified in Mr. Husk's letter of September 29, 2011, that will demonstrate that the
Commission cannot and should not re-vote.  We will ask the Commission to reconsider
its premature decision to revote in light of our response.

                          Sincerely yours,

                          Theodore D. Frank
                          Counsel for Veronza L. Bowers, Jr.

Exhibit _103_



**United States Department of the Interior**

NATIONAL PARK SERVICE
1849 C Street, N.W.
Washington, D.C. 20240

Office of the Director

W48 (0130)                         OCT 1 3 2011

Mr. Issac Fulwood, Jr.
Chairman
United States Parole Commission
90 K Street, N.E.
Washington, D.C.  20530

Dear Mr. Fulwood:

Thank you for your invitation to comment on the potential parole of Veronza L.C. Bowers
(#35316-136).

Bowers was convicted in 1974 of the brutal, first degree murder of National Park Service Ranger
Kenneth Patrick on August 5, 1973.  The gruesome details of the killing of Ranger Patrick are
well-known to the Parole Commission – and to every Ranger and law enforcement officer in the
National Park Service.

Every day, these dedicated professionals carry out their jobs, protecting the places entrusted to
the care of the National Park Service and the more than 280 million visitors we serve every year.
When duty requires Rangers to put their lives at risk, they do so willingly, with the
understanding that our government has their backs.  That those who would do them harm will be
brought to justice.  That their families will be kept safe.

Whether to release Veronza Bowers is a decision only the Commission can make.  That he could
be released, is a source of intense pain and fear for his widow – a retired National Park Service
employee – and other family members.

We are confident that the Commission will hold a fair and impartial hearing and make a decision
that respects the rule of law and the indisputable facts of this case.

Sincerely,

Jonathan B. Jarvis
Director

OCT 1 9 2011

U.S.

Exhibit 104



# NATIONAL
# FRATERNAL ORDER OF POLICE®

328 MASSACHUSETTS AVE., N.E.
WASHINGTON, DC 20002
PHONE 202-547-8189 • FAX 202-547-8190

**CHUCK CANTERBURY**
NATIONAL PRESIDENT

JAMES O. PASCO, JR.
EXECUTIVE DIRECTOR

14 October 2011

Isaac Fulwood, Jr.
Chairman
United States Parole Commission
5550 Friendship Boulevard, Suite 420
Chevy Chase, MD 20815-7286

Dear Chairman Fulwood,

I am writing pursuant to a letter my office received from Supervisory Victims Coordinator
Amanda K. Pyron regarding the U.S. Parole Commission's (USPC) record review to determine
whether or not the Commission should reconsider its decision to deny parole to Veronza L.
Bowers, Jr. (#35316-136) under 18 USC 4206(d). This response shall serve as our written
statement supporting the June 2005 decision of the 4-0 vote by the Commission to deny parole to
this killer by virtue of his serious institutional misconduct.

Our involvement began almost six years ago, in February 2005, when we were contacted by
Tomie Patrick Lee, the widow of U.S. Park Ranger Kenneth C. Patrick, who was shot and killed
by Bowers in August 1973. She contacted us because she had learned that her husband's
murderer was scheduled to be released in less than a week, after one member of the U.S. Parole
Commission approved his release–despite the fact that Bowers was an original jurisdiction case.
She was never notified of the hearing that was held in December 2004, never afforded any
opportunity to submit her views on the release of this killer to the Commission, and never
officially notified by the Commission, the Bureau of Prisons (BOP), or any other agency of the
U.S. Department of Justice that Bowers' release was imminent. Fortunately, the FOP was able to
bring these facts to the attention of the Justice Department which blocked his scheduled release.

A second parole hearing for Bowers was held in March 2005, which resulted in a
recommendation that this killer be released in June of that same year. The FOP immediately
appealed to then-U.S. Attorney General Alberto R. Gonzales who agreed with us that this
decision was contrary to the interest of public safety and, at our request, exercised his authority
under 18 USC 4215(c) to direct the Commission to reconsider their decision. The use of this
authority was unprecedented, which I believe underscores the fact that Veronza Bowers is an
unrepentant, cold-blooded killer who should remain behind bars for the rest of his life. In its
reconsideration of the case in June 2005, the Commission voted 4-0 to deny parole to this cop-
killer. The FOP supports this decision.

Exhibit ___105___

However, this killer's most recent efforts to escape his life sentence has resulted in an order from the U.S. Court of Appeals for the 11th Circuit that the Commission disregard the 4-0 vote held in June 2005 and instead reconsider the 2-2 vote held in May 2005.

The FOP strongly believes that the stated mission of the U.S. Parole Commission–the promotion of public safety–compels it to deny this parole. This man has refused to admit to the killing or to express any remorse whatsoever for the murder of Ranger Patrick. To this day, a visit to Bowers' website shows that he believes himself to be a "political prisoner" of "fascist America." Further, we believe that 18 USC 4206(d), actually requires the Commission to *deny* parole if it is determined that:

- the inmate has seriously violated institution rules and regulations; or
- the inmate has frequently violated institute rules and regulations; or
- there is a reasonable probability that the inmate, if released, will commit a Federal, State, or local crime.

Under Federal law, the Commission is compelled to deny parole if the Federal inmate satisfies any one of these three statutory prongs. Bowers meets all three.

The Commission is surely aware that, apart from the murder or aggravated assault on a prison employee or fellow prisoner, an attempt to escape is the most serious offense that an inmate can commit. Bowers committed this offense during his escape attempt from the Lompoc Federal Correctional Complex. He and a cohort successfully scaled the inner perimeter fence, prompting correctional officers to open fire, hitting both escapees and forcing them surrender. In the view of the FOP, the escape attempt alone should be enough to deny this killer parole because it meets the first prong of the statutory test–a serious violation of the institutions rules and regulations. The statute does not allow the Commission any latitude to discount any serious violations simply based on the passage of time.

In addition, contact with victims is prohibited conduct for a Federal inmate, and the FOP is disturbed that the Commission does not seem to share our view that Bowers' contact with Patrick Lee constitutes a serious offense. While an instructor at the Federal Law Enforcement Training Center in Glynco, Georgia in 1990, she received a hand-written letter at her home from the man who killed her husband. Ms. Lee provided a copy of this letter to the BOP and the Commission.

This was a serious violation, although it does not appear that Bowers was reprimanded or otherwise sanctioned (beyond having his outgoing mail monitored) for having initiated this contact. In this instance, the BOP mistakenly routed mail to Bowers which allowed him to learn that the widow of his victim was registered with the Victim/Witness Coordinator. Bowers exploited this mix-up in a decidedly sinister way–he deliberately crafted a letter designed to intimidate and terrorize the widow of his victim, who, like her murdered husband, is a Federal law enforcement officer. When confronted with the letter, Bowers lied, saying that he was not aware that the person he was sending this letter to was the widow of the man he murdered. To the contrary, he knew her name very well–she attended every day of his trial.

By contacting the widow of his victim, Bowers did more than violate the rules, he committed an act of terror. The Commission must keep in mind that he killed a Federal law enforcement officer in cold-blood to demonstrate the depth of his hatred for the United States and its government. To him, the murder was not a criminal act, but a political one and his subsequent incarceration for this act of political expression makes him a political prisoner, not a common murderer. The difference between Veronza Bowers and Mohammed Atta is the scale of the slaughter–the motivations for their acts are identical.

If the Commission deems these two incidents--the escape attempt and contact designed to terrorize the widow of his victim--as serious violations of institution rules and regulations, then the statute *requires* that his parole be denied.

The last statutory prong to be considered is the likelihood that he will reoffend if released. Under Federal law, if there exists "a reasonable probability" that he will commit any Federal, State, or local crime then the Commission is required to deny parole. Aside from statistics showing that most crimes are committed by recidivist offenders, the Commission must take into consideration his continued refusal to admit his guilt or express any feelings of remorse for the murder of a Federal law enforcement officer and his motivation for this crime–a deep-seated hatred of the United States and its government. It is the intensity of this hatred which led to his killing of Ranger Patrick. One witness at his trial testified that Bowers discussed his desire to kill a law enforcement officer prior to the murder, saying he "just had to get me one." It is clear from the testimony at the trial that Bowers was determined to kill a law enforcement officer as a way to strike back at a society he hated then and still hates today.

At his sentencing, Judge Leo Brewster allowed Bowers to take the stand and read into the record a nine-page political dissertation outlining his grievances against the United States. Judge Brewster responded to the hate-filled rant by saying, "...you are so imbued with bitterness that I don't think it has entered your mind to be repentant. I would think that a life sentence would be the least sentence you should get for a murder as cold-blooded as this."

While it is certainly telling that the presiding judge believed that a life sentence was the "least" Bowers should get, I think that more recent statements, demonstrating that this killer has not changed the views which led him to kill, should also be considered carefully by the Commission. Bowers recently wrote the following on an Internet website:

> *I am in my 28th year of imprisonment as a political prisoner in a*
> *land where government officials claim that no political prisoners*
> *exist. ...Well, I exist. Over 150 of us exist.*

This statement reaffirms Bowers' belief that his years in prison have nothing to do with the murder of Ken Patrick and everything to do with his political beliefs. Perhaps even more frightening is his intimation that he communicates with more than 150 other Federal inmates in other correctional institutions whom he regards as fellow "political prisoners."

Clearly, he still believes that the killing of a U.S. Park Ranger to be a political, not criminal, act. Not only is there a "reasonable probability" that Bowers will commit additional Federal, State, or local crimes, the FOP strongly believes that his attempt to escape and his deliberate attempt to terrorize and intimidate the widow of his victim suggest that he will pose a very real threat to her and to her children, one of whom is also a law enforcement officer. The Commission has a responsibility to see that this killer does not victimize this family again.

I cannot fathom how any reasonable person could conduct an even cursory review of Bowers' record and not conclude that he seriously violated the rules and regulations of the institutions in which he was confined or that there is a reasonable probability that he will reoffend if released. In the view of the Fraternal Order of Police, his escape attempt, his contact with a victim of his crime, his intransigence on the matter of his guilt, and his insistence that he is a "political prisoner" and not a rehabilitated murderer, leads me to conclude that his release can only occur if the Commission ignores 18 USC 4206(d). It is not unreasonable, then, for me to say that to release Bowers would be a crime in and of itself.

I am hopeful that the Commission will affirm its June 2005 decision to deny parole to this killer. As the judge at his trial noted, life in prison was the "least" of the sentences he could receive. The FOP could not agree more strongly–Veronza L. Bowers, Jr. murdered in cold-blood U.S. Park Ranger Kenneth C. Patrick and was sentenced to life in prison–and life in prison is exactly what he should serve.

I implore you and the other Commissioners to carefully consider the information we have provided and additional information submitted to you by the victim's family. On behalf of the more than 330,000 members of the Fraternal Order of Police, I urge that you deny this cop-killer his parole as required by 18 USC 4206(d). If I can provide you with any further information, please do not hesitate to contact me or Executive Director Jim Pasco in my Washington, D.C. office.

Sincerely,

Chuck Canterbury
National President

cc:   The Honorable Eric H. Holder, Jr., Attorney General of the United States
      The Honorable Patricia K. Cushwa, Commissioner, U.S. Parole Commission
      The Honorable Cranston J. Mitchell, Commissioner, U.S. Parole Commission
      The Honorable J. Patricia Wilson Smoot, Commissioner, U.S. Parole Commission



**U.S. Department of Justice**

Office of the Deputy Attorney General

---

*Associate Deputy Attorney General*                     *Washington, D.C. 20530*

October 10, 2011



The Honorable Cranston J. Mitchell, Vice Chairman
The Honorable Patricia K. Cushwa
The Honorable J. Patricia Wilson Smoot
United States Parole Commission
90 K Street, N.E.
Washington, D.C. 20530

     Re:    Veronza Bowers, Reg. No. 35316-136

Dear Vice Chairman Mitchell and Commissioners:

    We have been advised by Amanda K. Pyron, the Supervisory Victims Coordinator for the Parole Commission, that the Commission is conducting a record review to determine whether it should re-vote on granting or denying Veronza Bowers parole under the criteria of 18 U.S.C. § 4206(d). We urge the Commission to resolve the impasse that existed in May 2005 and to re-vote to deny Bowers parole for the reasons stated in our 2005 submissions, which we attach and resubmit. As noted in our prior submissions, it is undisputed that Bowers has seriously violated institution rules and regulations, and he therefore is not eligible for presumptive parole. Moreover, due to the brutal and callous nature of the murder of Ranger Patrick and Bowers' refusal to accept responsibility for his crime, there is a reasonable probability that if paroled, Bowers will commit a federal, state, or local crime. We therefore reaffirm our strong opposition to his release.

    Thank you for giving us the opportunity to comment on the Bowers matter. If you have any questions about this letter or our prior submissions, please do not hesitate to contact the Department. Finally, we reserve the right to reply to any submission by Bowers.

                       Sincerely yours,

                       David Margolis
                       Associate Deputy Attorney General

Noted
AS
11/4/11

**Exhibit** 106

# Memorandum



| Subject | Date |
|---|---|
| Bowers, Veronza<br>Reg. No. 35316-136 | December 1, 2011 |

| To | From *Rockne Chickinell* |
|---|---|
| Cranston J. Mitchell<br>Vice Chairman<br>U.S. Parole Commission | Rockne Chickinell<br>General Counsel<br>U.S. Parole Commission |
| Patricia K. Cushwa  *PKC*<br>Commissioner | |
| J. Patricia Smoot<br>Commissioner | |

## Summary

This case is before the Commission after a decision to re-vote on whether Bowers should be granted mandatory parole under the criteria of 18 U.S.C. § 4206(d).  Counsel for the prisoner and all interested persons and organizations have been given the opportunity to submit their views and recommendations concerning the re-vote.  I recommend that the Commission deny Bowers mandatory parole because he committed a serious prison rule violation when he attempted to escape from FCI Lompoc in 1979.

## Facts and Procedural History

The relevant facts of Bowers's crime (the murder of Park Ranger Ken Patrick) and his prison record are described in the recent opinion from the U.S. Court of Appeals for the Eleventh Circuit in Bowers v. Keller, 651 F.3d 1277 (11th Cir. 2011) and will not be repeated here.  The prisoner's parole file contains a copy of the opinion.   The court of appeals determined that the Commission's voting process should return to the status of the case as of May 17, 2005, when the four voting Commissioners at the time were equally split in the decision for Bowers.  The court stated that this vote result required the prisoner's parole unless the Commission started the re-determination of the parole case within 60 days of the court's decision, and acted in accordance with applicable laws and regulations.   On October 4, 2011, the Vice Chairman and Commissioner Cushwa – the only two Commissioners remaining from the April-May 2005 voting -- ordered a re-vote of the case pursuant to the Commission's rule at 28 C.F.R. § 2.63(b)(3).

Exhibit __107__

## Discussion

The § 4206(d) criteria are well-known to the Commissioners. Given the statutory terms, the Commission must deny parole to Bowers if it finds, by a majority vote, that any of the criteria listed disqualify Bowers for parole. If a majority vote is not reached, the statute compels the prisoner's parole. Because Chairman Fulwood has recused himself from voting in this case, the finding on a disqualifying criterion, and therefore a parole denial, must be unanimous.

*Has Bowers seriously violated prison rules?*

In deciding the substantive merits of the case, the Commission should first examine the criterion of whether Bowers has seriously violated the rules of the institution during his incarceration. In my opinion, Bowers's 1979 attempted escape was a serious violation of institution rules and disqualifies him from parole under § 4206(d) even though this crime occurred more than 30 years ago. When Justice Department attorneys raised the issue of interpreting the word "seriously" in § 4206(d) in 2005, I conducted my own research on the use of the plain language rule of statutory interpretation and the principle that a statute should not be interpreted to reach an absurd result. I concluded that the plain language of the § 4206(d) did not permit the Commission to weigh a "serious" but dated rule infraction with a subsequent satisfactory disciplinary record and then disregard the serious infraction in ordering a mandatory parole for the prisoner. For this reason I concurred with Mr. Thiessen's recommendation that the Commission deny Bowers mandatory parole in October 2005 if the Commission found that Bowers committed a serious prison rule violation by attempting to escape. In the October 2005 decision, Vice Chairman Mitchell denied Bowers mandatory parole for the sole reason that the 1979 escape attempt constituted a serious institutional rule violation. Commissioner Cushwa concurred in this finding.[1]

In the subsequent defense of the Commission's October 2005 parole denial I drafted the portion of the government's argument that advances the statutory interpretation described above. In sum, the argument is that the plain language rule of statutory interpretation should be enforced to support the finding that the word "seriously" in § 4206(d) does not allow the Commission to consider the antiquity of a particular rule violation. The antiquity of a rule violation is covered by the term "frequently" in describing those infractions that may result in a denial of parole under the statute. Each word in the statute must be given its meaning so as not to render a word, clause or phrase superfluous. The words "serious" or "seriously" convey concepts of weight, gravity and significance, not concepts of time or interludes between events. The plain language rule of statutory interpretation may yield a harsh result, but it is not the function of a federal court to rewrite the law to mitigate the severe consequences of the law.

There are anomalies that result from this interpretation of the word "seriously" in § 4206(d). For example, a prisoner may be paroled under the criteria of § 4206(a) before the two-thirds date even

---

[1] Commissioner Cushwa also found that Bowers seriously violated prison rules by sending a letter to Ranger Patrick's widow in 1990. However, in making its decision on whether Bowers has seriously violated prison rules, I recommend that the Commission not rely on the 1990 incident. The institution made no finding that this act violated prison rules. In the absence of such a finding by a discipline hearing officer, the Commission normally does not use the alleged infraction in its decision-making. Nonetheless, this incident is arguably relevant in determining whether there is a reasonable probability that Bowers would commit another crime if paroled.

though he has committed a serious escape early in his term of confinement. To obtain parole under §
4206(a), the Commission need only determine that the prisoner has "substantially observed" prison
rules, which seems to allow for weighing an extended record of good conduct against an early serious
violation of prison rules and deciding that the former justifies a parole grant. Another problem is that
interim hearings after the denial of mandatory parole for a serious rule violation serve little purpose if
the passage of time does not remove the significance of the rule violation for the Commission's
decision. These anomalies show questionable draftsmanship in the crafting of § 4206, but they do not
permit either the Commission or a federal court to rewrite the statute. Under the plain language of §
4206(d), the Commission is not authorized to grant mandatory parole to Bowers if it finds that he
committed a serious prison rule infraction at any time in serving his life sentence.

The Commission's acceptance of this statutory interpretation in Bowers's case does not
immediately lead to a parole denial. The Commission must still decide that the attempted escape was
of sufficient gravity that he must be denied release. As Bowers's attorneys pointed out in their
briefing to the appellate court, the Commission has granted mandatory parole to other escapees in
recent years, citing to the cases of Zvonko Busic and Sara Jane Moore. (These files are available for
the Commission's review.) In past decisions the Commission has refrained from categorizing all
escapes as "serious" in applying the criteria for denying mandatory parole, and I recommend that the
Commission continue this practice in re-assessing whether Bowers's 1979 offense is sufficiently
serious to justify a parole denial under § 4206(d). Vice Chairman Mitchell and Commissioner Cushwa
are not prevented by the court's decision to reach the same conclusions they did in October 2005 on
the gravity of the escape attempt. They are also free to find that, in retrospect, the findings they made
in October 2005 as to the severity of the attempt are not appropriate.

In making a decision on the severity of Bowers's escape attempt, there are several factors that
the Commission may weigh in the prisoner's favor. Neither Bowers nor his accomplice possessed or
used a weapon in the attempt, nor did they use force against prison personnel. They did not employ
the assistance of persons outside the institution to make their escape. On the other hand, there are
some aggravating circumstances of Bowers's crime. He and his accomplice attempted to escape from
a secure prison by climbing a perimeter fence at a time when other prisoners were in the yard. They
drew gunfire from the tower when they were trapped between the inner and outer fences, with the
accomplice incurring a gunshot wound. The attempt had the potential of causing considerable turmoil
within the institution.

*Has Bowers frequently violated prison rules?*

At no time in 2005 did the Commission find that Bowers had frequently violated prison rules.
He has a satisfactory prison conduct record since the last determination in October 2005. On the basis
of the present record, there is no rational basis for a decision that Bowers must be denied mandatory
parole for frequent rule violations.

*Is there a reasonable probability that Bowers would commit another crime if released?*

The remaining criterion is whether there is a reasonable probability that Bowers would commit
another crime if paroled. The voting Commissioners in 2005 split on this issue. The reasons for parole
denial in the October 7, 2005 notice of action included the factual basis for this finding, given the
record that existed at that time. But now six years have passed since this determination. (Nine years
since the last event cited by the Commission in support of the finding.) The determination of risk of
recidivism arguably depends on an evaluation of dynamic, as well as static, factors. The previous
reasons for parole denial referred to the prisoner's malevolent beliefs and attitudes toward the United

States Government as the motivation for his previous criminal. Bowers should be given an opportunity to address this issue before the Commission makes another determination on whether he harbors such hatred for the United States Government and its officials that he poses a risk of further criminal behavior. In 2007 Bowers waived parole consideration. If the Commission does not find in the re-vote that Bowers has committed a serious prison rule violation, the Commission may nonetheless order a special reconsideration hearing to give Bowers the opportunity to be heard on whether his release would pose a risk of further criminal behavior.

*Letters opposing parole for the prisoner*

After the Commission informed the widow of Ranger Patrick and other interested persons and organizations of the possible re-vote for Bowers, the Commission received the following correspondence opposing parole for the prisoner: (1) a letter dated October 1, 2011 from Ranger Patrick's mother, Pansy Greer; (2) a letter dated October 2, 2011 from Bryant C. Watkins, a retired FBI agent; (3) a letter dated October 3, 2011 from Tomie Patrick Lee, Ranger Patrick's widow; (4) a letter dated October 10, 2011 from David Margolis of the Department of Justice; (5) a letter dated October 13, 2011 from Jonathan B. Jarvis, Director of the National Park Service; and (6) a letter dated October 14, 2011 from Chuck Canterbury, National President of the Fraternal Order of Police. These letters largely restate previously expressed opposition to Bowers's release.

*Letter from Bowers's attorneys*

In an October 14, 2011 letter, Bowers's attorneys object to the Commission's re-vote. The following analysis is an earlier, and shorter, version of a draft reply I prepared for the use of the U.S. Attorney's Office in Bowers's continuing litigation in the Northern District of Georgia. The draft is available for the Commission's review.

The attorneys first claim that the Eleventh Circuit's order does not permit the re-vote because the order requires the Commission to return the case to the status of proceedings as of May 17, 2005, and at that time the Commission had determined that there was insufficient new adverse information to reopen the grant of mandatory parole to Bowers. In their view, the vote in April and May 2005 was not a vote on the substantive merits of granting or denying parole to Bowers and they argue that the Commission must adhere to the mandatory parole grant issued in January 2005. This claim is unfounded. The court of appeals clearly gave the Commission the option of initiating new proceedings within 60 days of its order to determine whether Bowers should be granted parole, without restricting the Commission to an earlier decision. In granting Bowers partial relief, the court stated that "we are not deciding that the Parole Commission is barred from reconsidering its May 2005 original jurisdiction decision." The court added a footnote to this sentence noting that the Commission had revised its rules to permit a re-vote to resolve a tie vote or other impasse in making a parole decision. *Bowers v. Keller, supra,* at 1296, n. 21. The court's order required Bowers's release only if the Commission did nothing to initiate the reconsideration of the case within 60 days of the order. The Commission has ordered a re-vote.

The prisoner's representatives next assert that the re-vote regulation does not apply here, and that if it does apply, the regulation cannot apply retroactively to Bowers without violating the constitutional ban against ex post facto laws. They argue that former Commissioner Spagnoli's vote against parole in April 2005 cannot be counted because of her bias toward Bowers. Without Spagnoli's vote, the Commission vote in April-May 2005 is now 2-1 in favor of paroling Bowers. A tie vote no longer exists and there is no basis on which to order a re-vote. But the persuasive value of this argument depends on an event that occurred 6 years after the initial vote, i.e., the court's

determination that Spagn⋯ ⋯id not exercise impartial judgment i⋯ ⋯ting on the second reopening of Bowers's case in June 2005. Using the same logic, another vote in May 2005 that favored parole for Bowers, made by former Chairman Reilly, now cannot be counted because of developments after this vote. Chairman Reilly retired from the Commission in November 2009. Of those Commissioners remaining from the April-May 2005, they are equally split in their votes on granting parole to Bowers. It is also worth noting here that the court of appeals only found that former Commissioner Spagnoli acted without impartiality in voting to reopen Bowers's case on June 14, 2005, and made no finding regarding her vote on April 19, 2005.

On the ex post facto claim, the attorneys argue that the use of the re-vote regulation creates a significant risk of prolonging Bowers's incarceration. In their view, the re-vote rule inexorably leads to a parole denial for a prisoner who is being considered for mandatory parole and whose case first results in a tie vote. But Bowers's constitutional claim depends on his ability at the time of his crime to invoke the statutory command of 18 U.S.C. § 4206(d) that he must be paroled in the absence of finding of one of the disqualifying criteria. This he cannot do because the mandatory parole statute was not in existence when he committed his murder in August 1973. Second, courts have been reluctant to apply the ex post facto prohibition to changes in commutation or parole voting procedures. E.g., Pennsylvania Prison Society v. Cortes, 622 F.3d 215, 246-47 (3ʳᵈ Cir. 2010); Roller v. Gunn, 107 F.3d 227, 236-37 (4ᵗʰ Cir. 1997). Third, with or without the rule change at 28 C.F.R. § 2.63(b)(3), the Commission members could have agreed to a re-vote in May 2005 to resolve the tie vote. The new rule on a re-vote only sought to make the Commission's authority to choose this option "explicit." 75 FR 81458 (Dec. 28, 2010). Finally, the Commission's rules at the time Bowers committed his crime in August 1973 stated that "the Board [U.S. Board of Parole] may, on its own motion, reconsider any case prior to [the prisoner's] release and may reopen and advance, postpone, or deny a parole which has been granted." 28 C.F.R. § 2.20 (1973). This rule placed no restriction on the Board's authority to reconsider a parole grant and Bowers cannot claim that the re-vote rule somehow substantially risk an increase in his punishment.

Bowers's representatives also contend that in a re-vote the Commission is restricted to consideration of the administrative record as it existed on May 17, 2005 and may not consider any documents submitted after that date, with the possible exception of reports on new disciplinary rule violations. They argue that the Eleventh Circuit order, the re-vote rule and the Administrative Procedure Act all prohibit the Commission's use of information sent in after that date. The court order does state that the district court shall return the case to the Parole Commission "in its posture as of May 17, 2005, the date of the last Parole Commission action taken before Commissioner Spagnoli's unlawful actions." Bowers v. Keller, supra at 1295. As I advised in my September 22, 2011 memorandum, I do not believe that the court of appeals intended to freeze the administrative record as of May 17, 2005, since such an action would violate the limited standard of judicial review of agency actions that the court otherwise espoused in its opinion. The court only wanted to wind back the Commission's votes and resulting actions to a point before Commissioner Spagnoli sent her memorandum to the Justice Department recommending that the Attorney General appeal the mandatory parole grant to Bowers.

The Commission's rule on re-votes does not limit the information that may be considered at the subsequent vote. The attorneys argue that permitting the review of information sent in after May 2005 somehow converts the re-vote rule from a procedural rule (which does not require notice and comment under the APA) to a rule affecting substantive rights (which does require notice and comment). But it is hard to imagine a rule that is more associated with the internal workings and organization of an administrative agency than a rule on the voting process used by its members. Use of the procedural rule may have a significant consequence for a person, organization or segment of the general public

but that does not transform the rule into a substantive rule that requires notice and comment in the rulemaking process. JEM Broadcasting Co., Inc. v. FCC, 22 F.3d 320, 327 (D.C. Cir. 1994). The rule on resolving tie votes and on re-votes did not change the substantive standards for granting or denying parole, and this is the critical fact for determining whether the Commission was required to give notice and allow public comment before promulgating the new rule. Id.

The attorneys next object that the re-vote rule makes no provision for Bowers to receive disclosure of new information submitted in the re-vote process. In most cases when a re-vote is ordered, it is expected that little time will pass between the first and second round of votes and the second round will be based on the same record that existed in the initial voting. Of course, in Bowers's case 6 years have passed since the last parole consideration so it seemed appropriate to give Bowers's representatives and those persons opposing his parole the opportunity to again give their views and recommendations on the parole decision. The submissions of those persons opposing parole largely mirror the same comments made in 2005 against releasing the prisoner. None of the submissions provide any new facts on the attempted escape in 1979. We forwarded copies of the letters to Bowers's attorneys for their comments. We withheld one letter and portions of another to protect the confidentiality of the submission. The attorneys submitted responsive comments in a letter dated November 21 along with a copy of their opposition to the government's motion to dismiss the Georgia litigation.

Finally, the representatives contend that if a re-vote is held, the Commission must take "affirmative steps" to purge the taint of former Commissioner Spagnoli's actions and ensure that Bowers's parole determination is conducted by fair and impartial decision-makers. However, the court of appeals did not find that the other voting Commissioners in 2005 were tainted by the actions of former Commissioner Spagnoli and did not accept Bowers's claim that he could not receive a fair and impartial determination from the Commission if the case were remanded to the Commission: "Finally, contrary to Bowers' claim, we believe Bowers will receive a fair and impartial hearing if any further action is, in fact, taken by the Parole Commission. Commissioner Spagnoli resigned in 2007, and there is no evidence any of the current Parole Commissioners would act outside the confines of the Parole Act or the Parole Commission's rules and regulations." Bowers v. Keller, supra, at 1296. The court did not order that the Commission take any extraordinary procedural steps to isolate the former Commissioner's analyses from the present Commissioners on a re-vote. Nonetheless, I have removed from the file several memoranda that Commissioner Spagnoli prepared after the initial reopening of the case in February 2005, including her memoranda of April 19, 2005, June 1, 2005 (to the Deputy Attorney General) and October 5, 2005. There is no need, in my view, to disqualify from the re-voting process any Commissioner or staff member who may have agreed with one or more of Commissioner Spagnoli's reasons for denying Bowers parole in 2005. This drastic step would only be justified if the court of appeals had found that Commissioners other than Ms. Spagnoli could not exercise fair and impartial judgment on a re-vote.

## Recommendation

I recommend that the Commission find that Bowers committed a serious institutional rule violation in 1979 when he attempted to escape from a secure institution. For this reason, he should be denied mandatory parole. I do not recommend a finding that Bowers committed any other serious rule infraction, or that he has frequently violated prison rules. Finally, I recommend that the Commission refrain from making any decision on the criterion on whether there is a reasonable probability that Bowers would re-engage in criminal behavior if he were paroled. A decision on this ground should only be made after a hearing with the prisoner and affording him the opportunity to discuss his current

attitudes toward the United States and its officials and any other matters that are relevant to determining the likelihood of recidivism.

## ORIGINAL JURISDICTION APPEAL SUMMARY

Name ....................:Bowers, Veronza

Reg No .................:35316-136

Date of Birth ........:02/04/1946

Sentence ...............:life and 6 months

Sentence Began ....:04/26/1974

MR Date...............:none

Full Term Date.....:none

Offense .................:murder, attempted escape

Appeal Received ..:1/13/2012

Months at Release ......:none

Months at Appeal .......:457

Jail Time Credit..........:140

Inoperable Days .........:0

Parole Eligibility Date:12/06/1983

Two-Thirds Date ........:04/07/2004

Offense Severity.........:Eight

Guideline Range.........:100+

Salient Factor Score ...:10

**Last Commission Action:**

Deny mandatory parole and continue to expiration.

**Recommended Action:**

Affirm the previous decision.

**Exhibit 108**

**Recommended Reasons:**

The Commission has reconsidered the procedural objections you have raised concerning the re-vote in your case and finds that the decision to deny you mandatory parole should be affirmed. The Commission did not violate the mandate of the U.S. Court of Appeals for the Eleventh Circuit by considering information that entered the administrative record after May 17, 2005, or by interpreting the statute at 18 U.S.C. § 4206(d) to deny you parole due to its finding that you committed a serious rule violation in 1979.

First, the Court of Appeals did not limit the scope of the Commission's re-examination of your case, if the Commission elected to reconsider your case. The court did not order the Commission to restrict any further agency review to whether there was new adverse information to reopen your case. The court approved the Commission's first reopening of your case in February 2005. Bowers v. Keller, 651 F.3d 1277, 1292 (11th Cir. 2011). As stated in 28 C.F.R. § 2.28(f), this reopening vacated the previous parole decision. Nothing in the Commission's statutes and rules prohibited a full reconsideration of your case after your case was reopened.

Second, the court's opinion did not place any limit on the information that the Commission could review if it decided to review your case again. The decision only instructed the Commission to commence its review as the case existed in its posture on May 17, 2005, when there was an impasse in the voting on granting or denying parole. The decision did not prohibit the Commission from considering documents that were made part of the record after May 17, 2005 or from soliciting more views and recommendations on your case after the court's decision. Even so, a review of the administrative record shows that a critical conclusion underlying the parole denial under review, i.e., that the passage of time did not diminish the severity of your 1979 rule violation, was suggested in the letters submitted by Ranger Patrick's widow and another source before your special

reconsideration hearing in March 2005. See 651 F.3d at 1285. The Commission's statutes and rules did not restrict the Commission from using information submitted after May 17, 2005 if it undertook a re-vote.

Third, the Court of Appeals refrained from ruling on the disputed interpretation of § 4206(d). Therefore, the Commission did not violate the court's mandate in considering any arguments supporting this interpretation. The proper interpretation of § 4206(d) was an open question even after the August 26, 2011 opinion and the Commission was free to review any arguments and information that would assist the Commission in resolving the issue. Again, the Commission's statutes and rules did not prohibit the Commission from considering arguments regarding the proper interpretation of § 4206(d) if these arguments were submitted after May 17, 2005.

Finally, the court's mandate did not require that the Commission employ any extraordinary measures to ensure that any reconsideration of your case would be insulated from the allegedly prejudicial effects of the actions of former Commissioner Spagnoli. The Court of Appeals rejected your claim that the actions of Commissioner Spagnoli affected the impartiality of the other voting Commissioners such that they could not be entrusted with fairly and impartially deciding your case after a remand to the agency. 651 F.3d at 1296.

In your petition, you assert that the Commission's interpretation of § 4206(d) is inconsistent with the plain language of the statute, the statute "taken as a whole" and the Court of Appeals holding. You claim that the plain language of the statute requires that the Commission must point to more than a single violation of institutional rules to justify a parole denial. The phrase "institutional rules and regulations" only describes those guidelines for conduct that a prisoner must follow; this phrase is the object of the verb "violated." The phrase does not modify the verb "violated" in the last sentence of § 4206(d) and does not require that the Commission find more than one serious rule violation before denying parole under § 4206(d).

You do not explain in the petition why the statute "taken as a whole" or the statute's structure requires the Commission to adopt a different interpretation of § 4206(d). Your argument that your institutional record should be looked at in its entirety does not explain how the Commission should interpret the statute in its entirety. As noted above, the Court of Appeals did not render any "holding" regarding an interpretation of § 4206(d).

Finally, you ask that the Commission reconsider its decision to withhold a finding on whether your release would pose a reasonable probability of further criminal conduct and claim that any decision that your release would still pose such a risk would be arbitrary and capricious. In the Commission's view, it would be premature for the Commission to proceed with a finding on this issue without conducting a hearing with you. During the votes in April and May 2005, the issue of your criminal recidivism was an important consideration for one of the Commissioners who remain from the group of Commissioners who participated in that vote. The Commissioner's concern was based, in part, on your apparent hostility toward the United States government and its officers. A decision on the continuing risk your release may pose to the public should not be made without hearing from you on this and other related topics. You have waived a parole hearing since December 2008. If you reapply for parole consideration and have a hearing, then the Commission will be better able to make a finding on the risk of criminal recidivism in your case, considering both your former and more current statements on your attitude toward government and its officers.

## Notes:

In the petition for reconsideration, Bowers reiterates many of the same points he raised in letters submitted before the December 2011 revote. He attaches copies of the letters to his petition. From Bowers's viewpoint the Court of Appeals placed very narrow limits on the both the scope of the Commission's review

following the remand and the information that the Commission could consider after remand.  But considering the opinion's express endorsement of the limits of judicial review of parole decision-making, it makes little sense to interpret the mandate to simply require the Commission to perform the ministerial function of issuing an order to parole Bowers based on the split vote of April-May 2005.  As long as the Commission followed its statute and its rules, the Commission was permitted by the Court of Appeals to conduct a full re-examination of Bowers's case.  Neither the parole statutes nor the rules, including the rule at 28 C.F.R. § 2.63, limited the Commission's review in the manner Bowers suggests in the petition and his attachments.

RJC

February 13, 2012